IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID M. CLAPPER, Individually, et al., | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:14-CV-2970-D |
| VS. | § § | |
| AMERICAN REALTY INVESTORS, INC., et al., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs David M. Clapper ("Clapper"), Atlantic Midwest, LLC ("Atlantic Midwest"), and Atlantic XIII, LLC ("Atlantic XIII") (collectively, "plaintiffs")[1] move for a preliminary injunction freezing assets that they allege were fraudulently conveyed by defendant American Realty Trust, Inc. ("ART") to avoid paying a multimillion dollar judgment entered in their favor. Concluding that plaintiffs have an adequate remedy at law and therefore have failed to establish a substantial threat that they will suffer irreparable injury if the injunction is not granted, the court denies the motion and a motion for temporary restraining order that the court carried with the preliminary injunction motion.[2]

---

[1]For clarity, the court primarily refers to plaintiffs as "Clapper, Atlantic Midwest, and Atlantic XIII" when discussing *ART Midwest, Inc. v. Clapper*, No. 3:99-CV-2355-N (the "Original Action")—because they are defendants-counterplaintiffs in that action—and as "plaintiffs" in the present case, because they are plaintiffs here.

[2]The court is deciding the preliminary injunction motion on the papers, without conducting an evidentiary hearing, as permitted by Fed. R. Civ. P. 43(c). *See, e.g., Wireless*

I

In 1999 ART and ART Midwest, Inc. ("ART Midwest") brought this lawsuit against Clapper, Atlantic Midwest, and Atlantic XIII in Texas state court. The case was removed to this court, *see ART Midwest, Inc. v. Clapper*, No. 3:99-CV-2355-N (the "Original Action"),[3] and Clapper, Atlantic Midwest, and Atlantic XIII counterclaimed. Following extensive litigation before Judge Buchmeyer and an appeal to the Fifth Circuit, the Fifth Circuit reversed and remanded. *See ART Midwest, Inc. v. Clapper*, 242 Fed. Appx. 130 (5th Cir. June 11, 2007) (per curiam). On remand, the case was reassigned to Judge Godbey.

Following extensive pretrial proceedings, including two summary judgment rulings partially in favor of Clapper, Atlantic Midwest, and Atlantic XIII, the parties tried the case to a jury (the "January 2011 Trial"). After the jury returned its verdict and the parties engaged in extensive post-verdict proceedings, Judge Godbey filed on October 11, 2011 a Rule 54(b) final judgment based on his summary judgment rulings and the jury verdict. The judgment awarded relief in various sums, according to the parties involved. As pertinent here, Clapper, Atlantic Midwest, Atlantic XIII, and/or affiliated entities were awarded more than $73 million in damages against ART and ART Midwest.

---

*Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006). Pursuant to Rule 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

[3]The case was designated by the letter suffix "R" until it was transferred to Judge Godbey's docket, after which it was designated by the letter suffix "N."

Following the entry of judgment, Clapper, Atlantic Midwest, and Atlantic XIII moved for relief to set aside transfers as fraudulent conveyances and to turn over assets and for other relief in collecting the judgment. All post-judgment discovery and enforcement motions were referred to Judge Stickney. Before Judge Stickney heard the motions, however, ART and ART Midwest jointly filed a suggestion of bankruptcy. Although ART and ART Midwest initially filed for bankruptcy elsewhere, ART's bankruptcy (ART Midwest's was dismissed) was eventually transferred to the United States Bankruptcy Court for the Northern District of Texas in September 2013, and assigned to Judge Hale.

Clapper, Atlantic Midwest, and Atlantic XIII learned during the bankruptcy proceedings that, on January 21, 2011, just three days before the January 2011 Trial commenced, ART transferred 922,737 shares of stock in the publicly traded company, defendant Transcontinental Realty Investors, Inc. ("TCI"),[4] to its wholly owned subsidiary, defendant EQK Holdings, Inc. ("EQK"). Additionally, on January 14, 2011 defendant Basic Capital Management ("BCM"), a wholly owned subsidiary of ART, transferred to EQK as a "dividend" 920,507 shares of TCI stock that it held. After all of ART's TCI stock (5.2 million shares) was transferred to EQK, ART then transferred EQK, allegedly for no consideration, to ART's then parent, defendant American Realty Investors, Inc. ("ARI").

_____

[4]Immediately prior to the January 2011 Trial, ART owned 70% and a controlling interest in TCI, a publicly traded company with $2 billion in assets. As the majority holder of TCI's stock, ART controlled Income Opportunity Realty Investors, Inc. ("IOT"), a publicly traded company. Accordingly, when ART transferred its TCI stock to ARI, via the transfer of its wholly-owned subsidiary EQK Holdings, Inc., ART no longer owned any TCI stock or IOT stock.

ARI then transferred its ownership of ART to another affiliated entity, OneRealco, for $10 million in the form of financing provided by ARI with a five-year note receivable at 3% interest.[5]

On March 5, 2014 Judge Hale concluded that ART's bankruptcy must be dismissed as a bad faith filing. He found, *inter alia*, several badges of fraud, and that the transfer of TCI stock to EQK was "suspect and at least potentially fraudulent." Ps. App. 17. Following the dismissal of ART's bankruptcy, the automatic stay in the Original Action was lifted, and the turn over motion and motion to set aside transfers as fraudulent conveyances that had been pending before Judge Stickney were again set for hearing. While these motions were pending, on April 29, 2014 defendants transferred the TCI stock held by EQK directly to ARI.[6] As a result, ARI is now the holder of record for ART's more than 5.2 million shares of TCI stock.

Before ART's bankruptcy was dismissed, the Fifth Circuit decided the appeal from the October 11, 2011 final judgment. The Fifth Circuit largely affirmed, although it vacated part of the damages award against ART and remanded for that amount to be recalculated. *ART Midwest, Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206, 219 (5th Cir. 2014).

On July 31, 2014 Judge Godbey entered a final judgment that awards relief in various

---

[5]Clapper, Atlantic Midwest, and Atlantic XIII allege that, in December 2010, ART transferred its ownership interests in at least 15 entities, with the intent to defraud ART's creditors, by placing ART's assets out of reach of its creditors.

[6]Specifically, defendants caused EQK to declare a dividend of over 5.6 million shares of TCI for a value of $93 million, directly to ARI, ART's former parent.

- 4 -

sums, according to the parties involved.  As pertinent here, the judgment awards Clapper, Atlantic Midwest, Atlantic XIII, and/or affiliated entities relief against ART for sums in excess of $62 million.[7]  On November 14, 2014 Judge Godbey awarded Clapper, Atlantic Midwest, and Atlantic XIII attorney's fees and costs totaling just under $2,575,000.

On October 27, 2014 Clapper, Atlantic Midwest, Atlantic XIII filed in the Original Action a motion for an immediate hearing on a motion for a turnover order and for a temporary and permanent injunction and a motion for a turnover order that they had filed in April 2014.  Judge Stickney convened the hearing on those and another motion on November 17, 2014.  On November 4, 2014 Clapper, Atlantic Midwest, and Atlantic XIII filed a motion for turnover order, for appointment of receiver, and for temporary and permanent injunctive relief.  That motion has been briefed and is pending.

Clapper, Atlantic Midwest, and Atlantic XIII contend that they have also recently learned that defendant Gene Phillips ("Phillips") is causing the winding down of ARI's operations in what appears to be an effort to liquidate ARI's assets, including the TCI stock that belongs to ART.  They maintain that, in the past five years, ARI has sold over $800 million worth of real estate, and, in July 2014, defendants caused the conversion of ARI preferred stock into 2.5 million shares of common stock, which plaintiffs contend demonstrates defendants' intent to liquidate ARI.

On August 19, 2014 plaintiffs (i.e., Clapper, Atlantic Midwest, and Atlantic XIII) filed

---

[7]This judgment has been appealed. *See ART Midwest, Inc. v. Clapper*, No. 14-10973 (5th Cir. Sept. 2, 2014).

this suit alleging claims for fraudulent conveyance, in violation of the Texas Uniform Fraudulent Transfer Act, ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2009); unjust enrichment/constructive trust; alter ego, civil conspiracy to commit fraudulent conveyances; and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  Plaintiffs moved for a temporary restraining order on October 7, 2014.  After Judge Solis recused, the case was transferred to the undersigned's docket on October 31, 2014.  On November 3, 2014 the court ordered that the motion be carried with consideration of plaintiffs' motion for a preliminary injunction.  Plaintiffs filed that motion on November 26, 2014, seeking, *inter alia*, injunctive relief preventing defendants, their agents, attorneys, representatives, affiliates, or anyone acting in concert with them from transferring, assigning, selling, encumbering, converting, pledging, liquidating, destroying, rescinding, cancelling, disposing of, or otherwise secreting the 922,737 shares of TCI stock that ART transferred to EQK on January 14, 2011, or the shares of TCI or Income Opportunity Realty Investors, Inc. ("IOT") stock held by EQK prior to the January 21, 2011 transfer by ART of its interest in EQK to ARI.  Defendants oppose the motion.

## II

To obtain a preliminary injunction, plaintiffs must establish the following: (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest.  *E.g., Jones v. Bush*, 122

F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (unpublished table decision).  Plaintiffs must satisfy all four requirements.  "A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.'"  *Id.* (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)).  "The decision to grant a preliminary injunction 'is to be treated as the exception rather than the rule.'"  *Id.* (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (stating that movant must "clearly carr[y] the burden of persuasion")).  "'The decision whether to grant a preliminary injunction is within the discretion of the court, but it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden.'"  *John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, 861 F.Supp.2d 792, 794 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *TGI Friday's, Inc. v. Great Nw. Rest., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.)).

III

The court need only decide whether plaintiffs have established a substantial threat that they will suffer irreparable injury if the injunction is not granted.  This question turns on whether they have an adequate remedy at law.

A

To satisfy this element, plaintiffs contend, or rely on evidence, that, fewer than three weeks before the January 2011 Trial, ART owned more than 5.2 million shares in TCI stock, but since then, the shares have been transferred at least four times; between December 2010

- 7 -

and ART's bankruptcy filing, ART went from being the 100% owner of at least 30 subsidiary companies to owning but four of these entities, each of which ART described in its bankruptcy as having little or no value; ART filed for bankruptcy in bad faith and offered testimony in the bankruptcy court that contradicted sworn statements submitted to the Securities and Exchange Commission ("SEC"); Phillips is causing the winding down of ARI's operations in what appears to be an effort to liquidate ARI's assets, including the TCI stock, by selling real estate worth over $800 million and by causing the conversion of ARI preferred stock into 2.5 million shares of ARI common stock; and that Phillips and the other defendants have significant dealings with entities in other countries, including Germany and Bulgaria, and "[w]ithout the requested injunctive relief, there is no telling where ART's TCI and IOT stock will end up, in whose hands and in what country."  Ps. Br. 22-23 (bold font omitted).

Defendants respond that the conduct of which plaintiffs complain is traceable through legitimate SEC filings detailing each transfer of the assets from 2011 through 2014, and that defendants have not hidden any assets or shipped them to a foreign country, outside the reach of a United States District Court.  Defendants also maintain that the TCI and IOT stock is in no greater danger of liquidation now than it was before this suit was filed, or the year before that, and that despite plaintiffs' hunch that the assets might be transferred to a foreign jurisdiction, plaintiffs have presented no evidence to support their speculative assertion.

B

"Irreparable harm requires a showing that: (1) the harm to plaintiff is imminent; (2) the injury would be irreparable; and (3) that plaintiff has no other adequate legal remedy." *Criterion Brock, Inc. v. Aguirre*, 2011 WL 2517319, at \*3 (S.D. Tex. June 23, 2011) (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975)).  As one court has explained in the analogous context of collecting on a judgment:

> it is a well-settled principle that injunctions are inherently equitable in nature and equitable relief is available only in the absence of an adequate remedy at law.  Plaintiff has available to it here numerous more-than-adequate remedies at law to collect on its judgment, and each of those remedies fall under the umbrella of Rule 69(a).  A quick look at the Court's docket confirms that Plaintiff has actively pursued its remedies under Rule 69.  The fact that Plaintiff has not successfully collected the full judgment does not mean that Plaintiff has no remedy at law.  The critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another.

*Papadopoulos v. Sidi*, 547 F.Supp.2d 1262, 1268-69 (S.D. Fla. 2008) (footnotes, citations, and internal quotation marks omitted).

In this case, plaintiffs have a money judgment against ART and ART Midwest.  Under Rule 69(a), Judge Godbey or Judge Stickney can in the Original Action enforce the judgment in accordance with the practice and procedure of the state in which the district court is held.  For example, "[u]nder Texas law, a judgment creditor may, on court order, levy execution on an asset which was fraudulently transferred by the judgment debtor."  *McClane Foodservice, Inc. v. Wolverine Pizza, L.L.C.*, 2005 U.S. Dist. Lexis 12110, at \*4 (N.D. Tex.

June 21, 2005) (Fish, C.J.) (citing Tex. Bus. & Com. Code Ann. §§ 24.006(a), 24.008(b)) (ordering that defendants' transfer of promissory notes to a non-party be set aside as a fraudulent transfer under TUFTA and ordering that plaintiff is entitled to a writ of execution upon the promissory notes); *see also In re Harman*, 243 B.R. 671, 674-75 (Bankr. N.D. Tex. 1999) ("Under current Texas law, procedurally, the judgment creditor may either bring an avoidance action, Tex. Bus. & Com. Code § 24.008(a)(1), or request that the court order execution on an asset transferred or its proceeds. § 24.008(b)."); *Kennedy v. Hudnall*, 249 S.W.3d 520, 526 n.12 (Tex. App. 2008, no pet.) ("It appears that a judgment creditor may seek execution against an allegedly fraudulent transfer under subsection (b) without filing a separate suit or first having the question of fraud determined."). [8] Plaintiffs have failed to establish that the procedures available to them in the Original Action, including those under Rule 69, do not provide an adequate remedy at law.  In fact, they have already sought in the Original Action relief in the form of an order setting aside fraudulent conveyances. [9] Because they have an adequate remedy at law in the Original Action, they cannot establish a substantial threat of irreparable injury if a preliminary injunction is not entered.

---

[8]Tex. Bus. & Com. Code Ann. § 24.008(b) (West 2009) provides: "If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."

[9]Because plaintiffs do not argue that the procedures available to them in the Original Action are inadequate, the court need not decide whether under Rule 69 and Texas law they can levy execution on allegedly fraudulently transferred assets.  It would only be necessary to address this question if plaintiffs argued that they could *not* levy execution and therefore lacked an adequate remedy at law.

- 10 -

C

Additionally, plaintiffs are seeking an injunction freezing certain assets held by ARI—against whom they do not have a judgment—on the theory that defendants might liquidate ARI's assets, including the TCI stock.  Setting aside the absence of sufficient evidence that defendants are "causing the winding down of ARI's operations in what appears to be an effort to liquidate ARI's assets, including the TCI stock that belongs to ART," Ps. Br. 14,[10] plaintiffs neither contend nor have shown that, if ARI sells all or a portion of the TCI stock that it now holds, this would render ARI or any of the other named defendants insolvent or unable to satisfy a judgment against them.  *Cf. Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*, 2011 WL 6091807, at *7 (S.D. Tex. Dec. 7, 2011) (granting motion for preliminary injunction where "Amegy has shown a reasonable likelihood that, at the end of the litigation, Johnson's equity in his assets will be far less than the amount Amegy seeks to recover under the promissory note.").  Tex. Bus. & Com. Code Ann. § 24.009(b) provides that "to the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1) of this code, the creditor may recover judgment for the value of the asset transferred, . . . or the amount necessary to satisfy the creditor's claim, whichever is less."  Tex. Bus. & Com. Code Ann. § 24.009(b) (West 2009).  Accordingly, if plaintiffs prevail on their TUFTA

_____

[10]Based on two predicate facts, plaintiffs speculate that defendants are winding down ARI's operations "in what appears to be an effort to liquidate ARI's assets," Ps. Br. 14: (1) over the past five years, ARI has sold over $800 million worth of real estate, and (2) in July 2014, defendants caused the conversion of ARI preferred stock into 2.5 million shares of common stock.

claim, they will be entitled to recover the amount necessary to satisfy their claim, even if, by that point, the allegedly fraudulently transferred assets (i.e., the TCI and IOT stock) are no longer in defendants' possession. *See, e.g., Janvey v. Suarez*, 978 F.Supp.2d 685, 695 (N.D. Tex. 2013) (Godbey, J.) ("Nor does it matter that the transferee no longer possesses the funds giving rise to the TUFTA claim. A TUFTA plaintiff seeks to recover 'judgment for the value of the asset transferred,' Tex. Bus. & Com. Code § 24.009(b), not the specific asset itself, which in many cases left the defendant's possession long ago. Thus, spending Ponzi scheme proceeds does not shield a recipient of fraudulently-transferred funds from liability." (quoting *Janvey v. Alguire*, 846 F.Supp.2d 662, 672 (N.D. Tex. 2011) (Godbey, J.))). "It is . . . well-established that an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)). The existence of a remedy in the form of money damages also precludes plaintiffs from satisfying the requirement that they establish a substantial threat of irreparable injury.

D

"Showing irreparable harm is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.'" *Amegy Bank*, 2011 WL 6091807, at *6 (alteration in original; citation omitted). "[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief

- 12 -

as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. Plaintiffs have failed to establish a substantial threat of irreparable injury.

## IV

Because the parties seeking a preliminary injunction must carry the burden of persuasion on all four factors, and because plaintiffs have failed to carry their burden of showing a substantial threat of irreparable injury if the preliminary injunction is not granted, the court need not address the remaining three factors. *See, e.g., TRAVELHOST, Inc. v. Figg*, 2011 WL 6009096, at *5 (N.D. Tex. Nov. 22, 2011) (Fitzwater, C.J.) (citing *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (per curiam) (affirming denial of preliminary injunctive relief on ground that movant had failed to show irreparable injury, and pretermitting discussion of other three factors)).

\*   \*   \*

For the reasons explained, plaintiffs' November 26, 2014 motion for a preliminary injunction, and their October 7, 2014 motion for a temporary restraining order, which the court carried with consideration of the motion for a preliminary injunction, are denied.

**SO ORDERED**.

January 21, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE