IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAVID M. CLAPPER, Individually,     §
et al.,                             §
                                    §
                Plaintiffs,         §
                                    §  Civil Action No. 3:14-CV-2970-D
VS.                                 §
                                    §
AMERICAN REALTY INVESTORS,          §
INC., et al.,                       §
                                    §
                Defendants.         §

MEMORANDUM OPINION
AND ORDER

In a prior opinion in this case— *Clapper v. American Realty Investors, Inc.*, 2015 WL

3504856 (N.D. Tex. June 3, 2015) (Fitzwater, J.) ("*Clapper II*")—the court granted in part

and denied in part defendants' motions to dismiss under Fed. R. Civ. P. 9(b) and 12(b)(6),

but it also granted plaintiffs leave to replead.  Plaintiffs have filed a second amended

complaint, and several defendants move anew to dismiss.  For the reasons that follow, the

court grants the motions in part and denies them in part.

I

Because this case is the subject of two prior memorandum opinions and orders, *see*

*Clapper v. American Realty Investors, Inc.*, 2015 WL 264711 (N.D. Tex. Jan. 21, 2015)

(Fitzwater, J.) ("*Clapper I*"), and *Clapper II*, the court will recount only the background facts

and procedural history that are pertinent to this decision.

Plaintiffs David M. Clapper ("Clapper"), Atlantic Midwest, LLC ("Atlantic

Midwest"), and Atlantic XIII, LLC ("Atlantic XIII") sue several defendants seeking to recover against some or all them on claims for fraudulent conveyance, in violation of the Texas Uniform Fraudulent Transfer Act, ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2015); unjust enrichment/constructive trust; single enterprise; alter ego; and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.[1]

In their second amended complaint, plaintiffs allege a claim for fraudulent conveyance, in violation of TUFTA, against defendants American Realty Trust, Inc. ("ART"), American Realty Investors, Inc. ("ARI"), EQK Holdings, Inc. ("EQK"), Basic Capital Management ("BCM"), the Martin Trust, the May Trust, Ryan Phillips ("Ryan"), Mickey Phillips ("Mickey") and Gene Phillips ("Gene"); a claim for unjust enrichment/constructive trust against defendants ARI, EQK, BCM, Ryan, Gene, Mickey, the Martin Trust, and the May Trust; a claim for single enterprise against defendants ART, ARI, BCM, EQK, Pillar Income Asset Management, Inc. ("Pillar"), Prime Income Asset Management, Inc. ("Prime"), and Prime Income Asset Management, LLC ("Prime LLC"); a claim for alter ego against Gene; and a civil RICO claim against all defendants.

In nine separate motions, the following defendants, individually or in these combinations, move to dismiss under Rules 9(b) and 12(b)(6): (1) defendants Danny Moos

---

[1]The counts of the second amended complaint are misnumbered. There are two counts designated as count IV, and no counts designated as V and VI. If it is necessary to refer to a count by number, the court will use the number reflected in the second amended complaint.

("Moos"), Louis Corna ("Corna"), and Gene Bertcher ("Bertcher"); (2) ART; (3) Pillar, Prime, and Prime LLC; (4) defendants Transcontinental Realty Investors, Inc. ("TCI") and Income Opportunity Realty Investors, Inc. ("IOT"); (5) the May Trust and the Martin Trust; (6) Gene; (7) defendant Donald Phillips ("Donald"); (8) Ryan and Mickey; and (9) ARI, BCM, and EQK.  With the exception of ART—who does not move to dismiss plaintiffs' TUFTA claim[2]—each defendant moves to dismiss all claims against it.[3]  Plaintiffs oppose the motions.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]."  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and brackets omitted).  To survive the motions to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the

---

[2]Accordingly, the court will not address whether plaintiffs have pleaded a plausible TUFTA claim against ART.

[3]Defendants Syntek West, Inc., Realty Advisors, LLC, Realty Advisors, Inc., Realty Advisors Management, Inc., Henry Butler, Robert Jakuszewski, Sharon Hunt, and Ted R. Munselle have neither filed nor joined motions to dismiss the second amended complaint.

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S.

at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a

right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at

679 (brackets omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678

(citation omitted).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that

a party state with particularity facts supporting each element of fraud."  *Turner v.

AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.)

(citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*,

514 Fed. Appx. 513 (5th Cir. 2013).  "[Rule] 9(b) applies to . . . RICO claims resting on

allegations of fraud."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)

(citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)); *see*

*also Tel-Phonic Servs.*, 975 F.2d at 1138 ("[Rule 9(b)] applies to the pleading of fraud as a

predicate act in a RICO claim[.]").  "At a minimum, Rule 9(b) requires allegations of the

particulars of time, place, and contents of the false representations, as well as the identity of

the person making the misrepresentation and what he obtained thereby."  *Turner*, 2011 WL

3606688, at *2 (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted).  More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud.  *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).  Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required.  *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)) (internal quotation marks omitted).  "The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs."  *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (citation omitted).

## III

The court turns first to plaintiffs' alter ego claim, which they assert only against Gene. The court assumes that either Georgia or Texas law governs this claim.[4]

---

[4]In *Clapper II* the court explained:

> [b]ecause the laws of Texas, Nevada, and Georgia do not appear to conflict concerning the piercing the corporate veil doctrine, because neither side has thoroughly briefed the choice-of-law issue, and because both sides cite Texas and Nevada law, the court will assume *arguendo* that the law of Texas or Nevada applies to plaintiffs' alter ego claim.  The court notes, however,

A

"Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused." *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005).  Under Texas law, "'[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.'" *SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)).

Under Georgia law,

> it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.  The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility. . . .  Plaintiff must show that the defendant

---

> that ART was incorporated in Georgia and that courts have held that the law of the state of incorporation for the entity whose corporate form is at issue applies to determine whether to pierce the corporate veil.

*Clapper II*, 2015 WL 3504856, at *9 n.15 (quoting *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 195 (S.D. Tex. 2008)) (internal quotation marks omitted).  In his motion to dismiss, Gene relies on Georgia law.  Plaintiffs rely on Texas law.  Because neither side has adequately briefed the choice-of-law issue, and because Georgia and Texas law do not appear to conflict, the court will assume *arguendo* that either Georgia or Texas law applies to plaintiffs' alter ego claim against Gene.

> disregarded the separateness of legal entities by commingling on
> an interchangeable or joint basis or confusing the otherwise
> separate properties, records or control.

*Baillie Lumber Co.*, 612 S.E.2d at 299 (citations and internal quotation marks omitted).

To recover under an alter ego theory under Texas law, a plaintiff must prove two elements: (1) "such unity between corporation and individual that the separateness of the corporation has ceased," and (2) a finding that "holding only the corporation liable would result in injustice." *Castleberry*, 721 S.W.2d at 271-72; *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) (stating that "[u]nder the alter ego theory, courts disregard the corporate entity when there exists such unity between corporation and individual that the corporation ceases to be separate and when holding only the corporation liable would promote injustice."). Factors to be considered include "the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry*, 721 S.W.2d at 272.

B

Gene maintains that the court should dismiss the alter ego claim against him because plaintiffs' second amended complaint contains only general, conclusory allegations that are unsupported by fact and are merely a recitation of the elements or factors for establishing alter ego liability. He posits that plaintiffs rely on the alleged lack of separateness between, and the commingling of assets among, ART, BCM, ARI, and EQK; that plaintiffs fail to

- 7 -

make factual allegations regarding the commingling of Gene's assets with any of the assets of other defendants, or any of the other pertinent factors to pierce the corporate veil, and instead focus on Gene's alleged control over the entities and the transactions by other defendants; that, under Georgia law, a person's use and control of an entity to promote his own ends is not a factor in piercing the corporate veil; that Georgia law requires that a person be the owner or shareholder of the entity to impose alter ego liability, but plaintiffs do not allege that Gene is the owner or shareholder of the entities for which they seek to hold him liable; and that plaintiffs do not plead actual fraud, a requisite for imposing alter ego liability, with the specificity that Rule 9(b) requires.

Plaintiffs respond that, in contending that they have failed to make factual allegations that would support an alter ego claim, Gene's motion refers to but a few paragraphs of the second amended complaint; Gene's contention that the claim fails because there is no allegation that he commingled his personal accounts with those of the defendants disregards that commingling is but one factor to be considered, and ignores the fact that a court of competent jurisdiction has found that Gene in fact controls the entities involved; concerning the allegation that no transaction was completed without Gene's approval, this assertion is supported by extensive evidence; and the pleading standard is whether a cognizable claim has been alleged, assuming the allegations of the complaint are true, and plaintiffs have met this standard. Relying on Texas law, plaintiffs argue that alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased, and holding only the corporation liable would result in injustice; this is shown from the total

dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes; the corporate veil may be pierced on an alter ego theory where a corporation is organized and operated as a mere tool or business conduit of another; and that to pierce the corporate veil and impose liability under an alter ego theory of liability, a plaintiff must show that the persons or entities on whom he seeks to impose liability are alter egos of the corporation, and that the corporate fiction was used for an illegitimate purpose, in satisfaction of the requirements of § 21.223(a) and (b) of the Texas Business Organizations Code.  Citing various allegations in the second amended complaint, plaintiffs contend that they have pleaded a plausible alter ego claim against Gene, regardless whether Texas or Georgia law applies.  And they maintain that Gene's contention that no "actual fraud" has been pleaded is without basis, considering the allegations of the second amended complaint concerning fraudulent transfers and the fraud committed in conjunction with plaintiffs' RICO claims. Plaintiffs posit that they have adequately pleaded the elements required under Rule 9(b).

C

In support of their alter ego claim, plaintiffs allege the following:

> At all relevant times, the unity of business interests that is EQK, BCM, ART, ARI, Prime, Prime, LLC and Pillar, were/are controlled entirely by and therefore have a unity of interest with Defendant Gene Phillips.

> The assets of ARI, EQK, BCM, ART, Pillar, Prime, Prime, LLC are controlled by Gene Phillips.

> Gene Phillips directs all business activities of ARI, EQK, BCM, ART, Pillar, Prime, Prime, LLC.

> Defendant Gene Phillips controls all decisions and exercise[s] dominion and control over all assets as it pertains to the unity of interest among ARI, EQK, BCM, ART, Pillar, Prime[,] and Prime[] LLC.

> Based on information and belief, at all relevant times, Defendant Gene Phillips uses the assets of ARI, EQK, BCM, ART, Pillar, Prime and Prime, LLC to secure financing for himself personally, for his family, and for his personal projects, including but not limited to Port Olepentz, as well as various oil and gas interests held by [Gene] or other entities he controls.

> Based on information and belief, at all relevant times Defendant Gene Philips directed and caused the assets of Debtor ART, Defendant BCM and EQK to be transferred from ART to avoid collection of those assets specifically to avoid significant personal tax liabilities for Gene Phillips and the entities with which he has a unity of interest, including BCM, EQK, Pillar, Prime, Prime, LLC and ARI.

> Those who work at Pillar, Prime, Prime, LLC and the Officers and Directors of BCM, ARI, EQK and ART are lead to believe and confirmed their belief that the assets of ART, ARI, BCM, EQK, Prime, Prime, LLC and Pillar, as well as those of the May Trust and the Martin Trust, belong and are controlled by Gene Phillips and consider the assets Gene Phillips' "family's

money[."]

> Based on information and belief, Gene Phillips decides and controls what attorneys will be used for any work associated with unity of business interests among Pillar, Prime, Prime, LLC, ARI, BCM, EQK and ART and all outside counsel are directed that Gene Phillips must personally approve any business transactions or major decisions in any litigation.

> Based on information and belief, Gene Phillips decides and controls what bills will actually be paid and the amounts to be paid with regard to the unity of business interests among Pillar, Prime, Prime, LLC, BCM, ARI, EQK, Art, the May Trust and the Martin Trust.

> Gene Phillips approves and controls all payments to be made [by] all entities which he shares a unity of interest, including EQK, BCM, ARI, ART, Prime, Prime, LLC and Pillar.

> Based on information and belief, Gene Phillips decides and controls what assets of ARI, EQK, ART, BCM, Prime, Prime, LLC or Pillar will or will not be pledged, encumbered or otherwise used to secure financing for his personal projects or to fund projects for the entities in which he has a unity of interest.

2d Am. Compl. ¶¶ 87-97 (paragraph numbers omitted).

The court concludes that the pertinent allegations of plaintiffs' second amended complaint, taken as true, are sufficient to plead a plausible alter ego claim against Gene and to satisfy the requirements of Rule 9(b).[5] Plaintiffs allege that Gene has undisclosed interests

---

[5]Because the court holds that plaintiffs have satisfied the pleading requirements of Rule 9(b), it need not decide whether plaintiffs must comply with Rule 9(b) when alleging an alter ego theory of liability.

in the Entity Defendants (2d Am. Compl. ¶ 17)[6]; that Gene is the controlling decisionmaker for the Entity Defendants (*id.*); that EQK, BCM, ART, ARI, Prime, Prime LLC, and Pillar have a unity of interest with Gene (*id.* ¶ 87); that Gene controls the assets, business activities, and transactions for ARI, BCM, EQK, ART, ARI, Prime, Prime LLC, and Pillar (*id.* ¶¶ 88-89, 94); that Gene uses the assets of ARI, EQK, BCM, ART, Pillar, Prime, and Prime LLC for himself and his family, and that the entities' assets are considered Gene's "family's money" (*id.* ¶¶ 91, 93); that Gene directed the allegedly fraudulent transfers of assets from ART to other Entity Defendants (*id.* ¶ 92); and that the assets and accounting records of the Entity Defendants are commingled and not kept separately (*id.* ¶¶ 98-101).  Taken together, these allegations sufficiently state a plausible claim that Gene is the alter ego of one or more of the Entity Defendants.  *See, e.g., Ralls Corp. v. Huerfano River Wind, LLC*, 27 F.Supp. 3d 1303, 1328-29 (N.D. Ga. 2014).  Accordingly, the court denies Gene's motion to dismiss the alter ego claim asserted against him.

IV

The court turns next to plaintiffs' single business enterprise[7] claim, asserted against ART, ARI, BCM, EQK, Pillar, Prime, and Prime LLC.  Plaintiffs allege that ART, ARI, EQK, BCM, Pillar, Prime, and Prime LLC are a single enterprise, responsible for the debts

---

[6]As noted in *Clapper II*, the term "Entity Defendants" refers to ARI, ART, EQK, and BCM.

[7]In their second amended complaint, plaintiffs refer to this claim as their "single enterprise claim." 2d Am. Compl. ¶ 164.

- 12 -

and obligations of ART, and that the court should enter a judgment against each of these defendants in the amount due and owing by ART under the $73 million judgment entered by Judge Godbey in *ART Midwest, Inc. v. Clapper*, No. 3:99-cv-2355-N.

## A

Defendants move to dismiss plaintiffs' single business enterprise theory of liability, contending that the Supreme Court of Texas abolished the theory in *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008).[8]

Plaintiffs respond that the court in *SSP Partners* did not entirely eliminate the single business enterprise theory of liability, but instead held that there must be a showing of actual fraud to succeed on such a claim.  They contend that under Tex. Bus. Orgs. Code Ann. § 21.223 (West 2016), the single business enterprise theory may still be raised and liability found where actual fraud is shown; that they have alleged that the defendants named in Count II of their second amended complaint used their "single enterprise" to perpetrate fraud; and that, because they have alleged actual fraud, defendants' motions to dismiss should be denied.

Defendants contend in reply[9] that courts, including the Fifth Circuit, have consistently adhered to *SSP Partners*' holding that the single business enterprise theory is not a valid basis in Texas for disregarding a corporation's separate existence; that the existence of fraud

---

[8]Because both sides assume that Texas law applies to plaintiffs' single business enterprise claim, the court will as well.

[9]ARI, BCM, and EQK incorporate the arguments in ART's reply.

is "of no consequence," ART Reply Br. at 3; and that the statute (Tex. Bus. Orgs. Code Ann. § 21.223) and caselaw that plaintiffs cite govern the liability of parties under an alter ego theory and have nothing to do with the abrogated single business enterprise theory.

B

Before the Supreme Court of Texas decided *SSP Partners*, various Texas courts of appeals recognized the "single business enterprise" theory of liability. This theory operated as an "equitable veil piercing theor[y]," *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 116 (Tex. App. 2001, pet. denied), if a plaintiff was able to demonstrate that two or more "corporations [were] not operated as separate entities but rather integrate[d] their resources to achieve a common business purpose," *Paramount Petroleum Corp. v. Taylor Rental Center*, 712 S.W.2d 534, 536 (Tex. App. 1986, writ ref'd n.r.e.), *abrogated by SSP Partners*, 275 S.W.3d 444. "Unlike other equitable corporate doctrines, however, such as 'alter ego,' proof of fraud [was] not required" to recover under the single business enterprise theory. *Acceptance Indem. Ins. Co. v. Maltez*, 2009 WL 2748201, at *5 (5th Cir. June 30, 2009) (per curiam) (citation omitted); *see also N. Am. Van Lines, Inc.*, 50 S.W.3d at 120 ("To recover under a finding of a single business enterprise, no proof of fraud is required; instead, the single business enterprise theory relies on equity analogies to partnership principles of liability." (citing *Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex. App. 2000, no pet))).

In *SSP Partners* the Supreme Court of Texas held that, for liability purposes, the corporate fiction should be disregarded only "when the corporate form has been used as part

of a basically unfair device to achieve an inequitable result." *SSP Partners*, 275 S.W.3d at

454.  The court explained:

> [t]he "single business enterprise" liability theory on which SSP
> relies does not entail the level of agreement required for joint
> enterprise liability or the abuse required before the law
> disregards the corporate structure to impose liability.  The
> theory SSP advocates applies whenever two corporations
> coordinate operations and combine resources in pursuit of the
> same business purpose.  We have never approved of imposing
> joint liability on separate entities merely because they were part
> of a single business enterprise, and we have pointed out that an
> issue exists whether a theory of single business enterprise is a
> necessary addition to Texas law regarding the theory of alter ego
> for disregarding corporate structure.

*Id.* at 452 (citations omitted) (some internal quotation marks omitted).  The court further

explained that "[a]buse and injustice are not components of the single business enterprise

theory[,] . . . [which] applies to corporations that engage in any sharing of names, offices,

accounting, employees, services, and finances," *id.* at 454, and noted it had "never held

corporations liable for each other's obligations merely because of centralized control, mutual

purposes, and shared finances," *id.* at 455.  Accordingly, the court held that "the single

business enterprise liability theory . . . will not support the imposition of one corporation's

obligations on another."  *Id.* at 456.[10]

---

[10]Cases decided after *SSP Partners* have consistently recognized that "[t]he Texas
Supreme Court has rejected the single business enterprise theory."  *Harding Co. v. Sendero
Res., Inc.*, 365 S.W.3d 732, 745 n.27 (Tex. App. 2012, pet. denied); *see also In re Carmelita,
Inc.*, 2009 WL 2356488, at *5 (S.D. Tex. July 29, 2009) ("[A]t present, Texas does not
recognize the common law doctrine of single business enterprise.  Therefore to the extent that
claimants rely on that doctrine to pierce the corporate veil, those claims must fail as a matter
of law[.]" (citations omitted)); *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 2009 WL

In response to defendants' motions to dismiss this claim, plaintiffs rely on *Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App. 2013, no pet.), and Tex. Bus. Orgs. Code Ann. § 21.223[11] to argue that a single enterprise theory of liability still exists where a party alleges actual fraud. In *Tryco Enterprises*, however, the plaintiffs sought to

---

1174641, at *4 (N.D. Tex. Apr. 29, 2009) (Boyle, J.) ("The Court agrees that any claims based upon the single business enterprise doctrine fail as a matter of law."); *Burchinal v. PJ Trailers-Seminole Mgmt. Co.*, 372 S.W.3d 200, 218 (Tex. App. 2012, no pet.) ("The Texas Supreme Court completely rejected the single-business entity doctrine as a valid mechanism for piercing the corporate veil and imposing liability in Texas in *SSP Partners*[.]"); *Big Easy Cajun Corp. v. Dall. Galleria Ltd.*, 293 S.W.3d 345, 347 (Tex. App. 2009, pet. denied) ("[In *SSP Partners* t]he supreme court held the single business enterprise liability theory will not support the imposition of one corporation's obligations on another [, and b]ecause the theory on which Galleria secured its judgment[—i.e., the single business enterprise theory—]has been rejected by the Texas Supreme court, the judgment must be reversed.").

[11]Tex. Bus. Orgs. Code Ann. § 21.223 provides, in pertinent part:

> (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to . . .
> (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory[.] . . .
> (b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

"pierce the corporate veil and impose liability under an alter ego theory of liability." *Tryco Enters.*, 390 S.W.3d at 508.  In their second amended complaint, plaintiffs do not seek to impose liability on ART, ARI, BCM, EQK, Pillar, Prime, or Prime LLC based on theories of alter ego, piercing the corporate veil, or under Tex. Bus. Orgs. Code Ann. § 21.223.  In fact, although they pleaded an alter ego claim in their first amended complaint, after the court dismissed the claim in *Clapper II*, 2015 WL 3504856, at *11, plaintiffs did not replead this theory against any defendant other than Gene, electing instead to assert only their "single enterprise" claim against ART, ARI, BCM, EQK, Pillar, Prime, and Prime LLC.

Accordingly, the court dismisses plaintiffs' single business enterprise claim against ART, ARI, BCM, EQK, Pillar, Prime, and Prime LLC.

V

The court now turns to plaintiffs' civil RICO claim.

A

As the court explained in *Clapper II*:

> RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c).  "'Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"  *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL

- 17 -

32130462 (N.D. Tex. Sept. 17, 2002) (Fitzwater, J.)).

*Clapper II*, 2015 WL 3504856, at *11.

"Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under several specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud]." *TruGreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). "To establish a pattern of racketeering activity, [plaintiffs] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex*, 2012 WL 2864510, at * 2 (citing *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)). A pattern of racketeering activity includes two or more acts of racketeering activity. *See* 18 U.S.C. § 1961(5). "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742. "It is this factor of continuity plus relationship which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. Continuity requires that the related acts "constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 742 (citing *H.J. Inc.*, 492 U.S. at 239). Continuity can be proved by "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. "A closed period of conduct may be demonstrated 'by proving a series of related predicates extending over a substantial period of time,'" while

"[a]n open period of conduct involves the establishment of 'a threat of continued racketeering activity.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J. Inc.*, 492 U.S. at 242).

B

Defendants contend that plaintiffs have failed to plead a plausible civil RICO claim because they have not alleged a pattern of racketeering activity.[12] They maintain that plaintiffs have alleged a single scheme, a single victim, and a single injury, which is wholly outside the scope of RICO; have failed to plead "closed-ended" continuity, because the first alleged transfer of assets occurred in January 2011, and the predicate acts would have to have occurred prior to October 2011, and, as a matter of law, eleven months is insufficient to establish closed-ended continuity; and have also failed to plead "open-ended" continuity because their allegation that defendants' defrauding of bankruptcy courts, creditors, and the Securities and Exchange Commission ("SEC") are the regular way defendants do business is entirely conclusory, and plaintiffs do not plausibly allege that defendants' conduct poses a threat of future fraud. In sum, defendants argue that

> Plaintiffs' allegations are limited to the contention that, over the span of less than a year, Defendants conspired to fraudulently transfer assets to prevent Plaintiffs from collecting under the judgment and then conspired to conceal the transfers. Plaintiffs do not plead any plausible racketeering activity that occurred

---

[12]Defendants assert that plaintiffs' civil RICO claim is so deficient as to warrant the imposition of sanctions, but they do not actually request that the court award sanctions or specify any basis for the court to do so. Absent a motion seeking sanctions, the court declines to address whether sanctions should be imposed.

> after 2011, do not allege that there were victims of defendants'
> alleged criminal acts other than Plaintiffs themselves, and do not
> assert any facts that would suggest any threat of continued
> criminal activity. . . . At most, Plaintiffs plead[] a single scheme
> and a single injury, with no alleged victims other than Plaintiffs
> themselves.    As such, Plaintiffs fail to plead a "pattern of
> racketeering activity."

Pillar, et al., Mot. to Dis. at 18.

Plaintiffs respond that they have pleaded at least 15 separate transactions that occurred in which false notaries were used, and that the false documents were transmitted via mail or wire; that over a course of years, false and fraudulent financial records and reports were transmitted by wire or mail to the SEC, and false documents were submitted to bankruptcy courts, and that this practice continues today; that the predicate acts the court has already found to have been sufficiently pleaded have been repeated in separate transactions over the course of not fewer than six years, and that they are the regular manner in which defendants' association-in-fact and/or enterprises regularly operate; and that plaintiffs have alleged that hundreds of predicate acts have occurred. In response to defendants' arguments regarding continuity, plaintiffs contend that they have alleged that the entities that form the association-in-fact and the individuals and entities directing them have regularly and systematically performed the predicate acts of racketeering activities alleged over at least six years, and that it is believed to have been occurring for a longer period of time and will continue to occur; that plaintiffs have alleged that the predicate acts are used as defendants' regular means of operation, and that the victims are not just plaintiffs but numerous others to whom the entities in the association-in-fact/enterprises owe debts; and that at the pleading stage, plaintiffs are

only required to allege that the predicate acts were conducted over a period of time and make up the regular means of operation for these defendants.

C

The court concludes that the second amended complaint does not adequately plead a pattern of racketeering activity because the pleaded predicate acts lack continuity.

"Continuity cannot be established by multiple acts of fraud that are part of a single transaction." *Orthoflex*, 2012 WL 2864510, at *3 (citing *Word of Faith*, 90 F.3d at 123); *see also Burzynski*, 989 F.2d at 734 ("All of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended. . . .  The conduct did not constitute or threaten long-term criminal activity."); *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) ("there is no threat here of continued criminal acts.  [Defendant's] acts which were alleged to have deprived [plaintiff] of a property interest were, when completed, without threat of repetition."); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate [merger].").  When this is the case, "[t]he conduct d[oes] not constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 743; *see also Calcasieu*, 943 F.2d at 1464 ("Short-term criminal conduct is not the concern of RICO.").

Although the second amended complaint alleges generally that "[t]he predicate acts committed by these Defendants occurred regularly over a period of time beginning at least from 2008, and believed to be before that time, and continuing today," 2d Am. Compl. ¶ 188,

- 21 -

plaintiffs have failed to plead specific dates on which many of the alleged predicate acts

occurred.[13]   Of the predicate acts for which plaintiffs have provided dates,[14] all occurred

---

[13]*See, e.g.,* 2d Am. Compl. ¶ 128 ("In filings with the SEC, Defendant TCI submitted false and untrue documentation regarding transfers of its shares that were in furtherance of the conspiracy to defraud ART's creditors and which were intended to aid and abet the fraudulent conveyances of the TCI stock.  TCI further participated in the conspiracy by modifying its books and records to reflect the fraudulent transfers of its stock that are described herein.").

[14]Plaintiffs allege in general terms, without specifying dates or linking any of defendants' conduct with a specific provision of title 18 or other defined "racketeering activity," *see Clapper II*, 2015 WL 3504856, at *13, the following predicate acts in support of their RICO claim:

> a.   Creating a scheme to defraud the Plaintiffs by creating false and fraudulent pretenses, transactions, loans and documents, all of which were executed in violation of law and transmitted by U.S. mail and/or wire to the Securities and Exchange Commission, attorneys and others in violation of one or more of the following statutes: 18 [U.S.C. §] 1028[,] 18 [U.S.C. §] 1341, 18 [U.S.C. §] 1343, 18 [U.S.C. §] 1348, 18 [U.S.C. §] 1350. . . .
>
> b.   Through the fraudulent concealment of assets, the intentional filing of false or incomplete forms with U.S. Bankruptcy Courts and/or the filing of false information in several states with respective bankruptcy courts. . . .
>
> c.   By fraudulently preparing and executing transactional documents to defraud the Plaintiffs and others for their own benefit and the benefit of other related affiliates through violations of 18 [U.S.C. §] 1028[,] 18 [U.S.C. §] 1341, 18 [U.S.C. §] 1343, 18 [U.S.C. §] 1348, 18 [U.S.C. §] 1350. . . .
>
> d.   By violating the Wire Fraud Act via emails, telephone calls through transmission and dissemination of false and fraudulent information, including via U.S. Mail.

2d Am. Compl. ¶ 186.  The court is unable to discern from these allegations, however, which

between January 2011 and August 2012.  The alleged predicate acts consist of the following: defendants fraudulently transferred TCI stock in order to hinder and delay creditors, and, in connection with this transfer, defendants EQK, TCI, ARI, Moos, Bertcher, and Corna filed false reports with the SEC regarding the transaction; sometime between January 2011 and the October 11, 2011 entry of a final judgment, ART fraudulently conveyed its property and backdated and included false notaries on the documentation associated with the transactions; defendants ARI, TCI, IOT, Bertcher, and Moos submitted false documents under oath to the SEC in March 2011; and ART twice filed for bankruptcy on the eve of hearings on plaintiffs' post-judgment enforcement motions—first in January 2012 and again in August 2012—in order to hinder and delay creditors.  Plaintiffs do not plausibly allege any specific act of racketeering activity that occurred after August 2012.  In other words, plaintiffs' allegations are effectively limited to the assertion that, over the span of approximately 19 months, ending in August 2012, defendants committed various acts of fraud and other criminal activity in order to render ART judgment proof and to cover up their actions.

In *Calcasieu Marine National Bank* the Fifth Circuit held that the plaintiff's RICO claim should not have been submitted to the jury where there was no threat "of continued criminal acts.  [Defendant]'s acts which were alleged to have deprived [plaintiff] of a property interest were, when completed, without threat of repetition."  *Calcasieu Marine Nat'l Bank*, 943 F.2d at 1464.  Similarly, in *Orthoflex* this court explained that "[c]ontinuity

---

defendants committed predicate acts of racketeering activity or when such acts occurred.

cannot be established by multiple acts of fraud that are part of a single transaction."

*Orthoflex*, 2012 WL 2864510, at *3.  In the present case, plaintiffs have pleaded multiple acts

of fraud and other criminal acts that together enabled defendants to defraud plaintiffs by

rendering ART judgment proof.  In fact, plaintiffs specifically allege that, as a result of

defendants' fraudulent and criminal activity, ART has been rendered insolvent and unable

to pay the judgment entered against it in the underlying litigation.  *See* 2d Am. Compl. ¶ 121.

Accordingly, as in *Calcasieu Marine National Bank* and *Orthoflex*, defendants' acts are all

part of their alleged fraudulent scheme to avoid payment of the judgment entered against

ART, and, once completed, do not threaten repetition.  In other words, accepting the

allegations of plaintiffs' second amended complaint as true, the predicate acts were part of

a transaction—the transfer of assets between related entities, the related filing of documents

with the SEC, and the resulting filing for bankruptcy of an insolvent company—that has

since ended.  Because the assets in which plaintiffs claim an interest have already been

transferred to ART's parent and related entities, there is no threat of continued criminal

activity regarding ART's assets, and plaintiffs have failed otherwise to plead conduct that

constitutes or threatens long-term criminal activity.  *See Auto-Opt Networks, Inc. v. GTL*

*USA, Inc.*, 2014 WL 2719219, at *7 (N.D. Tex. June 16, 2014) (Fitzwater, C.J.) (dismissing

civil RICO claim where agreement under which money was owed had been terminated, and

funds allegedly due had already been transferred to defendant's parent companies, allegedly

to avoid payment under the agreement).

    Plaintiffs' conclusory and unsupported allegation that the predicate acts described "are

the regular way that Defendants do business and provides evidence of a distinct threat of long term racketeering activity anticipated to continue well into the future to further defraud other victims," does not plausibly plead continuity.   2d Am. Compl. ¶ 195. Plaintiffs do not plausibly allege any predicate act of racketeering activity that occurred after August 2012, when ART filed for bankruptcy.   And there is no pleaded factual basis from which the court can reasonably infer that there is a threat that defendants will commit acts of racketeering activity in the future.  *See Burzynski*, 989 F.2d at 744 (dismissing RICO claim because, *inter alia*, "[t]o permit [the plaintiff to rely on general, speculative, and unsupported pleading] would allow conclusory pleading to erode the substance of the 'continuity,' 'enterprise,' and 'pattern' requirements" of RICO).

Nor are plaintiffs' allegations that defendants "conspired to hide assets and defraud Plaintiffs *and other third parties*," 2d Am. Compl. ¶ 196 (emphasis added), or that defendants' fraudulent transfers were made with the intent to "hinder and delay creditors," *id.* ¶¶ 50; *see also, e.g., id.* at ¶¶ 55, 56, 57, 108, 120, 123, 127, and 144, sufficient to plausibly plead continuity.  Plaintiffs have failed to specify any other creditor that defendants have defrauded or attempted to defraud, and their allegations are therefore speculative, conclusory, and insufficient to state a claim on which relief can be granted.

Accordingly, the court dismisses plaintiffs' civil RICO claim because the allegations in the second amended complaint do not allow the court to draw the reasonable inference that

defendants engaged in a pattern of racketeering activity.[15]

D

Plaintiffs also appear to allege a RICO conspiracy claim under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of [RICO]."  "To prove a RICO conspiracy, [plaintiffs] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense."  *TruGreen Landcare*, 512 F.Supp.2d at 625 n.11 (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)).  "A RICO conspiracy thus has RICO-specific requirements—such as an agreement by at least two conspirators to engage in a pattern of racketeering activity [.]"  *Id.*  If the second amended complaint is insufficient to enable the court to draw the reasonable inference that there has been a pattern of racketeering activity, the same allegations cannot be the basis for a RICO conspiracy claim because there can be no agreement to engage in a substantive RICO offense that does not exist.

Because the court concludes that plaintiffs have failed to plead a plausible civil RICO claim, the court dismisses their RICO conspiracy claim for failure to state a claim on which

---

[15]Because the second amended complaint fails to adequately plead continuity, the court need not reach defendants' contentions that plaintiffs have failed to plead a valid enterprise or association-in-fact under RICO, that plaintiffs have failed to plead any cognizable "racketeering activity," that plaintiffs lack standing to pursue a RICO cause of action against defendants because the only harm that can be inferred from the complaint is harm to the debtor itself, that plaintiffs have failed to plead sufficient facts to demonstrate proximate causation, or that plaintiffs have failed to properly allege a cognizable RICO injury.

relief can be granted. *See Orthoflex*, 2012 WL 2864510, at \*4 (citing *Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at \*6 (N.D. Tex. Dec. 14, 2010) (Boyle, J.) ("Because all other RICO claims have been dismissed, the RICO conspiracy claim must also be dismissed.")).

VI

The court now considers plaintiffs' TUFTA claim, which they assert against defendants ART, ARI, EQK, BCM, the Martin Trust, the May Trust, Ryan, Mickey, and Gene.

A

In *Clapper II* the court granted in part and denied in part defendants' motions to dismiss plaintiffs' TUFTA claim. It held that because plaintiffs had alleged that Ryan "is a director of Defendant BCM, a beneficiary of Defendant May Trust and Defendant Martin Trust and as a result, now controls, received, or otherwise has possession of assets that were fraudulently transferred from ART," and that the May Trust and the Martin Trust "are, in the chain of title, the ultimate owners and controllers of the shares fraudulently conveyed," plaintiffs may be able to recover under TUFTA against these defendants. *Clapper II*, 2015 WL 3504856, at \*6 (citations omitted). The court also held that the first amended complaint sufficiently pleaded, under Rule 9(b)'s heightened pleading standard, a TUFTA claim against defendants ARI, ART, BCM, and EQK.

In the second amended complaint, plaintiffs have omitted the allegation that the May Trust and the Martin Trust are "the ultimate owners and controllers of the shares fraudulently

- 27 -

conveyed." *Id.* They contend instead that the May Trust and the Martin Trust "receive a benefit from the TCI stock and other ART assets that were fraudulently transferred and are, in the chain of title, of the assets fraudulently conveyed." 2d Am. Compl. ¶ 132. Plaintiffs also allege that EQK, BCM, ARI, Ryan, Gene, Donald, Mickey, the May Trust and the Martin Trust "are all recipients in the chain of title of assets that were fraudulently transferred by Judgment Debtor ART." *Id.* at ¶ 137.

B

Ryan, Gene, Mickey, the May Trust, the Martin Trust, and BCM move to dismiss plaintiffs' TUFTA claim under Rules 12(b)(6),[16] arguing that plaintiffs have failed to plausibly allege any facts demonstrating that defendants are transferees of an asset of ART or persons for whose benefits transfers were made. Ryan and Mickey also maintain that, because plaintiffs have omitted from the second amended complaint their allegation that the May Trust or the Martin Trust are the ultimate owners of the stock, there is no factual basis for plaintiffs' assertion that Ryan and Mickey "now control[], received, or otherwise [have] possession" of the stock as beneficiaries of the trusts. ARI and EQK also generally move to dismiss plaintiffs' TUFTA claim asserted against them, but their joint motion with BCM is limited to why they maintain that plaintiffs' TUFTA claim against BCM fails.

Plaintiffs respond that they have satisfied the pleading standards of Rules 12(b)(6) and

---

[16]These defendants also move to dismiss plaintiffs' TUFTA claim against them under Rule 9(b). Because the court concludes that plaintiffs have failed to state a TUFTA claim against these defendants on which relief can be granted, it need not address whether the claims should be dismissed for failing to comply with the pleading requirements of Rule 9(b).

9(b) by alleging that defendants are "recipients in the chain of title of the fraudulently transferred assets," and that the transfers were made for the benefit of each defendant. They allege in support of their TUFTA claim:

> Defendants EQK, BCM and ARI, and based on information and belief, The Martin Trust, and the May Trust, R. Phillips, G. Phillips and M. Phillips, are all recipients in the chain of title of assets that were fraudulently transferred by Judgment Debtor ART.

> The fraudulent transfers by ART were made for the benefit of Defendants R. Phillips, G. Phillips and M. Phillips, the Martin Trust, the May Trust, ARI, EQK and BCM, so that loans owed by or guaranteed by these Defendants would not be deemed due as a result of collection efforts taken against ART's assets.

> The fraudulent transfers by ART were made for the benefit of Defendants R. Phillips, G. Phillips and M. Phillips, the Martin Trust, the May Trust, ARI, EQK and BCM, to avoid significant tax liabilities that would occur as a result of collection efforts taken against ART's assets.

> The fraudulent transfers by ART were made for the benefit of Defendants R. Phillips, G. Phillips and M. Phillips, the Martin Trust, the May Trust, ARI, EQK and BCM, so that these Defendants could cause ART to file bankruptcy to further hinder and delay creditors and ART's assets would be available to these Defendants and not tied up in bankruptcy so that these Defendants could continue to use ART's assets as collateral to obtain financing from lenders to fund their own business and personal endeavors.

2d Am. Compl. ¶¶ 137-140 (paragraph numbers omitted). Plaintiffs also allege several transfers of assets to EQK and ARI, including stock in TCI, IOT, BCM, and EQK, and real

property.[17]

C

To establish a claim under TUFTA, a plaintiff must prove that (1) it is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. 2013, pet. denied)).  TUFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made. *See* Tex. Bus. & Com. Code Ann. 24.008, 24.009; *Mack*, 737 F.3d at 1361 (discussing TUFTA's predecessor, the Uniform Fraudulent Conveyance Act, and noting that the statute "does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient thereof.").

Plaintiffs appear to allege fraudulent transfers of stock in TCI, stock in IOT, stock in EQK, stock in BCM, and real property.  *See* 2d Am. Compl. ¶¶ 110-117.  With respect to BCM, the May Trust, the Martin Trust, and Gene, plaintiffs allege only that these defendants are "recipients in the chain of title of assets that were fraudulently transferred[.]" *Id.* at ¶ 137.  This allegation is conclusory, and plaintiffs fail to allege any facts demonstrating that

---

[17]The alleged chain of title and current ownership of each asset is unclear, but plaintiffs allege that ARI and EQK currently own TCI and IOT stock. *See* 2d Am. Compl. ¶¶ 108-113.

- 30 -

the assets were directly transferred to, and are currently in the possession of, BCM, the May Trust, the Martin Trust, or Gene.

Plaintiffs allege that Ryan and Mickey, as beneficiaries of the May Trust and Martin Trust and as directors of BCM, each "controls, received, or otherwise has possession of assets that were fraudulently transferred from ART, including but likely not limited to the TCI and IOT stock[.]" *Id.* at ¶¶ 130-131. But plaintiffs do not plead any facts that enable the court to draw the reasonable inference that BCM, the May Trust, or the Martin Trust are the transferees of any particular asset or that they are currently in possession of any asset. Likewise, plaintiffs have not alleged any facts demonstrating that Ryan and Mickey, as beneficiaries of the May Trust and Martin Trust and as directors of BCM, are transferees or owners of any of the assets.

Alternatively, plaintiffs argue that they can recover under TUFTA against Ryan, Gene, Mickey, the May Trust, the Martin Trust, and BCM because the allegedly fraudulent transfers were made for the benefit of these defendants "so that loans owed by or guaranteed by these Defendants would not be deemed due as a result of collection efforts taken against ART's assets," *id.* at ¶ 138; "to avoid significant tax liabilities that would occur as a result of collection efforts taken against ART's assets," *id.* at ¶ 139; and "so that these Defendants could cause ART to file bankruptcy to further hinder and delay creditors and ART's assets would be available to these Defendants and not tied up in bankruptcy," *id.* at 140, thereby enabling these defendants to "continue to use ART's assets as collateral to obtain financing from lenders to fund their own business and personal endeavors," *id.*

These allegations are conclusory and unsupported by the alleged facts.  For example, the second amended complaint does not allege any facts that enable the court to draw the reasonable inference that defendants owned or guaranteed any loans; that any loans were forgiven or not "deemed due"; that any defendant avoided tax liability by the asset transfers; or that any defendant used ART's financing as collateral to obtain financing.  Moreover, the second amended complaint does not plead facts that explain how the alleged fraudulent transfers resulted in these benefits to any defendant.  In sum, plaintiffs have failed to identify any benefit that BCM, the May Trust, the Martin Trust, Ryan, Gene, or Mickey received as a result of the alleged fraudulent transfers.

Plaintiffs have, however, sufficiently alleged a TUFTA claim against ARI and EQK.  Plaintiffs allege that ART fraudulently transferred BCM stock to ARI; that ART fraudulently transferred EQK stock to ARI; that ART fraudulently transferred TCI stock to EQK; that EQK fraudulently transferred TCI and IOT stock to ARI; and that EQK and ARI currently possess at least some TCI and IOT stock.  2d Am. Compl. ¶¶ 107-113.[18]  Plaintiffs also allege December 2010 transfers of real property and interests in other entities to EQK.  *Id.* ¶ 117.  In their joint motion with BCM, neither EQK nor ARI explains how plaintiffs' allegations

---

[18]EQK and ARI urge the court to disregard ¶¶ 111 and 113 of the second amended complaint, contending that they contradict ¶ 112.  Paragraph 111 alleges that EQK currently holds TCI and IOT stock; ¶ 112 asserts that EQK transferred TCI and IOT stock to ARI in 2014; and ¶ 113 pleads that EQK still holds the fraudulently transferred assets.  2d Am. Compl. ¶¶ 111-113.  Plaintiffs respond that "EQK" in ¶ 113 is a typographical error and should be "ARI," and that, read together, these allegations allege that EQK and ARI each hold TCI and IOT stock today.  The court agrees.

fail to plausibly state a TUFTA claim against them.  Plaintiffs have plausibly alleged that EQK and ARI have ownership interests in at least some of ART's fraudulently transferred assets.

Accordingly, the court grants the motions to dismiss plaintiffs' TUFTA claims against the May Trust, the Martin Trust, BCM, Ryan, Mickey, and Gene and denies the motion to dismiss plaintiffs' TUFTA claims against EQK and ARI.

## VII

Finally, the court considers plaintiffs' claim for unjust enrichment/constructive trust.

## A

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992).  "A key element of unjust enrichment is that the person sought to be charged wrongly secured or passively received a benefit."  *Ahmed v. Shah*, 2015 WL 222171, at *5 (Tex. App. Jan.15, 2015, no pet.) (mem. op.) (citing *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App. 2004, pet. denied)).  "Unjust enrichment is not a proper remedy 'merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant[.]'"  *Baxter v. PNC Bank Nat'l Ass'n*, 541 Fed. Appx. 395, 398 (5th Cir. 2013) (per curiam) (quoting *Heldenfels Bros.*, 832 S.W.2d at 40).  "It is not enough that the person sought to be charged received some incidental benefit."  *Ahmed*, 2015 WL 222171, at *5.

- 33 -

"A constructive trust is not a cause of action under Texas law." *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010).  Rather, "[a] constructive trust is an equitable remedy used to prevent unjust enrichment." *Baxter*, 541 Fed. Appx. at 398 (citing *Everett v. TK–Taito, LLC*, 178 S.W.3d 844, 859 (Tex. App. 2005, no pet.)); *see also Messier v. Messier*, 458 S.W.3d 155, 164 (Tex. App. 2015, no pet.) ("A constructive trust [may be] imposed when one party holds property that legally belongs to the other." (citing *In re Marriage of Harrison*, 310 S.W.3d 209, 214 (Tex. App.2010, pet. denied))).  "In order to establish a constructive trust, the proponent must prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and, (3) tracing to an identifiable res." *Baxter*, 541 Fed. Appx. at 398.

B

Defendants ARI, EQK, BCM, the Martin Trust, the May Trust, Ryan, Gene, and Mickey move to dismiss plaintiffs' claim for unjust enrichment/constructive trust.  They contend that plaintiffs have failed to plead that they currently possess any fraudulently transferred asset, or plead any facts demonstrating that they obtained a benefit from plaintiffs. Plaintiffs respond that they have alleged that defendants currently possess fraudulently transferred assets and that they have otherwise benefitted from the fraudulent transfers: "so that loans owned by or guaranteed by these Defendants would not be deemed due as a result of collection efforts taken against ART's assets"; "to avoid significant tax liabilities that would occur as a result of collection efforts taken against ART's assets"; and "so that these Defendants could cause ART to file bankruptcy to further hinder and delay creditors and

ART's assets would be available to these Defendants and not tied up in bankruptcy so that these Defendants could continue to use ART's assets as collateral to obtain financing from lenders to fund their own business and personal endeavors."  2d Am. Compl. ¶¶ 152-54.

The court holds that plaintiffs have failed to plausibly allege an unjust enrichment/constructive trust claim against BCM, Gene, Ryan, Mickey, the May Trust, and the Martin Trust.  Plaintiffs do not allege facts that enable the court to draw the reasonable inference that BCM or Gene possesses any of the fraudulently transferred assets.  Plaintiffs assert that the May Trust and the Martin Trust "receive a benefit from the TCI stock and the other ART assets that were fraudulently transferred," 2d Am. Compl. ¶ 132, but plaintiffs no longer allege that the May Trust and the Martin Trust currently possess the transferred stock. Plaintiffs argue that Ryan and Mickey, as beneficiaries of the May Trust and the Martin Trust, receive any benefit enjoyed by the Trusts.  Because plaintiffs have not plausibly alleged any benefit to the Trusts, they have not alleged any benefit to Ryan and Mickey as beneficiaries of the Trusts.

Plaintiffs maintain that, even if defendants do not currently possess a fraudulently transferred asset, plaintiffs can recover any benefit that defendants unjustly received.  But as the court explained *supra* at § VI(C), plaintiffs have not alleged any facts supporting their allegation that defendants have avoided tax liability because of the fraudulent transfers; that defendants have used ART's assets as collateral because of the fraudulent transfers; or that defendants have been forgiven a debt because of the fraudulent transfers.  Accordingly, the court grants defendants' motions to dismiss plaintiffs' unjust enrichment/constructive trust

claim against BCM, the May Trust, the Martin Trust, Ryan, Mickey, and Gene.

Plaintiffs allege that EQK and ARI currently possess at least some TCI and IOT stock, and that EQK currently owns fraudulently-transferred real property.  2d Am. Compl. ¶¶ 107-113. Accordingly, the court denies defendants' motion to dismiss plaintiffs' unjust enrichment/constructive trust claim asserted against EQK and ARI.

*   *   *

For the foregoing reasons, the court grants in part and denies in part defendants' motions to dismiss.

**SO ORDERED**.

January 25, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE