IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID M. CLAPPER, Individually, et al., | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:14-CV-2970-D |
| VS. | § § | |
| AMERICAN REALTY INVESTORS, INC., et al., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs move for leave to file a third amended complaint after the deadline has expired for moving for leave to amend pleadings, contending that the amendment is justified by new information obtained in discovery. For the reasons that follow, the court grants the motion to the extent that plaintiffs seek leave to add an alter ego claim against one defendant, and supporting factual allegations, and otherwise denies the motion.

I

Because this case is the subject of three prior memorandum opinions and orders, *see Clapper v. American Realty Investors, Inc.*, 2016 WL 302313, at *1 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.); *Clapper v. American Realty Investors, Inc.*, 2015 WL 3504856, at *1-2 (N.D. Tex. June 3, 2015) (Fitzwater, J.); and *Clapper v. American Realty Investors, Inc.*, 2015 WL 264711, at *1-2 (N.D. Tex. Jan. 21, 2015) (Fitzwater, J.), the court will recount only the background facts and procedural history that are pertinent to this decision.

Plaintiffs David M. Clapper ("Clapper"), Atlantic Midwest, LLC ("Atlantic Midwest"), and Atlantic XIII, LLC ("Atlantic XIII"), who are judgment creditors of defendant American Realty Trust, Inc. ("ART"), allege that ART unlawfully transferred assets to its parent, defendant American Realty Investors, Inc. ("ARI"), and other entities and persons.  Plaintiffs seek relief based on these transfers.  After the court ruled on motions to dismiss plaintiffs' second amended complaint, the following claims remain: fraudulent conveyance, in violation of the Texas Uniform Fraudulent Transfer Act, ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2015), against defendants ART, ARI, and EQK Holdings, Inc. ("EQK"); unjust enrichment/constructive trust against ARI and EQK; and alter ego against defendant Gene Phillips ("Gene").

Since the court ruled on motions to dismiss the second amended complaint in January 2016, plaintiffs have engaged in document and deposition discovery.  Plaintiffs received over 400,000 pages of documents in February 2016, and obtained ARI securities filings in December 2016.  Plaintiffs also twice deposed ARI's corporate representative, Gene Bertcher ("Bertcher"), during this period.   At his initial deposition in July 2016, Bertcher was unprepared to answer plaintiffs' questions; accordingly, the magistrate judge granted a motion for sanctions and required Bertcher to appear for a second deposition.

At his second deposition, conducted in December 2016, Bertcher testified that ARI exercised a great degree of control over some of its subsidiaries, including ART and EQK. In particular, Bertcher testified that subsidiary ART "didn't have any books," P. App. 71, "didn't have a bank account," *id.* at 121, and was reduced to a "shell," *id.* at 122.  Bertcher

also testified about particular transactions within ARI's holdings, such as a $200 million cash transfer from ART to ARI, which he called a "deemed dividend"; a $105 million debt owed by EQK to ART; and what he characterized as a "mistake" that transformed a $41 million ART payable into a $41 million ART receivable.

Bertcher's depositions in this case were not the first time he was questioned by plaintiffs' attorneys.  Plaintiffs' counsel also represented Clapper, Atlantic Midwest, and Atlantic XIII in ART's bankruptcy proceeding, which took place from 2012-2014.  At least one of the same attorneys who deposed Bertcher in this case, Andrew Mychalowych, Esquire, also questioned him about similar subjects in the course of the bankruptcy proceeding.  During the bankruptcy proceeding Bertcher testified that ART did not have separate books and records, and that ART gave its assets away to ARI.

Based on information obtained in discovery, plaintiffs now move for leave to file a third amended complaint, with a new alter ego claim against ARI and various new factual allegations.  The deadline for moving for leave to file an amended pleading has elapsed.  The current scheduling order sets May 1, 2016 as the deadline to file a motion for leave to amend a pleading; April 30, 2017 as the deadline to complete discovery; and May 31, 2017 as the deadline to file summary judgment motions.  This case is set for trial on the two-week docket beginning October 30, 2017.  Defendants ARI, EQK, ART, and Gene oppose plaintiffs' motion.

II

Fed. R. Civ. P. 16(b)(3)(A) provides that the court's "scheduling order must limit the time to . . . amend the pleadings[.]"  When, as here, the deadline for seeking leave to amend pleadings has expired, a court considering a motion to amend must first determine under the good cause standard of Rule 16(b)(4) whether to modify the scheduling order.  *See, e.g., S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.). To meet this standard, the moving party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline.  *See S & W Enters.*, 315 F.3d at 535. Only if the movant first satisfies the requirements of Rule 16(b)(4) must the court next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires."  *See S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).

"The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order."  *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.).  Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause."  *Id.*; *Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb. 2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).  Instead, the movant must show that, despite its diligence, it could not reasonably

-4-

have met the scheduling deadline. *See S & W Enters.*, 315 F.3d at 535; *Am. Tourmaline Fields*, 1998 WL 874825, at *1 (citing 6A Wright, et al., *Federal Practice & Procedure*, § 1522.1 at 231 (2d ed. 1990)); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters.*, 315 F.3d at 535).

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (citation, internal quotation marks, and brackets omitted). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps., Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012). When applying this multi-factor test, the court usually denies motions to amend the scheduling order when the moving party fails to demonstrate that, despite its diligence, it could not have reasonably met the scheduling deadline. *See, e.g., Serv. Temps.*, 2009 WL 3294863, at *3 (stating that court "remember[ed] at all times that the good cause inquiry focuse[d] on the diligence of the party seeking to modify the scheduling order," and finding that movant had failed to satisfy good cause standard of Rule 16(b)(4) where it had not provided plausible explanation for its delay, and that this failure to provide plausible explanation outweighed the other factors in the court's analysis).

III

As a threshold matter, plaintiffs' proposed third amended complaint repleads verbatim some claims that the court has previously dismissed under Rule 12(b)(6). Plaintiffs acknowledge that no good cause exists to revive these claims, but they contend that they must replead them to preserve the right to appeal the dismissal. Ps. Reply to ARI, EQK Br. 2.

Plaintiffs are mistaken in their belief that they must continue to replead, in identical form, claims that the court has dismissed in order to preserve error. *See Williams v. Wynne*, 533 F.3d 360, 365 (5th Cir. 2008). Plaintiffs may omit dismissed claims from subsequent pleadings without prejudicing their right to appeal. *See id.* Accordingly, the court denies plaintiffs' motion for leave to the extent they seek to replead their TUFTA claim against the May Trust, the Martin Trust, Basic Capital Management ("BCM"), Ryan Phillips ("Ryan"), Mickey Phillips ("Mickey"), and Gene; their unjust enrichment/constructive trust claim against the May Trust, the Martin Trust, BCM, Ryan, Mickey, and Gene; their single business enterprise claim; and their RICO claim.

IV

The court next considers whether plaintiffs have shown good cause to modify the scheduling order to permit them to add an alter ego claim against ARI, as well as various factual allegations.

A

1

Regarding the first factor of the good cause standard, plaintiffs contend that their explanation for not timely moving to amend—that they only recently obtained facts necessary to allege a valid alter ego claim against ARI—supports granting relief.  They maintain that the court previously dismissed their alter ego claim because it lacked facts sufficient to state a claim on which relief could be granted, and that the necessary facts have only come to light as a result of Bertcher's December 2016 deposition.  In their brief, plaintiffs point to parts of Bertcher's deposition testimony indicating that ART had no books or bank accounts, was a shell, and distributed money to ARI that was treated as a dividend without ever having been formally approved as one.

Defendants respond that the information in question has in fact been in plaintiffs' possession at least since the ART bankruptcy proceeding, which took place in 2012-2014.  Defendants point to Bertcher's testimony in the bankruptcy proceeding and his first deposition in this case, taken in July 2016, as evidence that plaintiffs and their counsel have long known of the ART-ARI transactions and ART's lack of corporate formalities.  And defendants maintain that plaintiffs' late action on this information shows that they failed to exercise diligence.

In reply, plaintiffs point to specific transactions that they contend only came to light because of Bertcher's December 2016 deposition.  They posit that only Bertcher's most recent deposition establishes that ARI withdrew $200 million in cash from ART, and that

what defendants once called a $41 million ART payable is now being characterized as a $41 million ART receivable.  Plaintiffs also maintain that defendants hid a $105 million debt owed by EQK to ART during the bankruptcy proceeding.

2

The court concludes that plaintiffs have exercised reasonable diligence in pursuing their alter ego claim against ARI.  Their identification of specific transactions that were only disclosed in Bertcher's December 2016 deposition supports the finding that some of the reasons why plaintiffs are only now raising the claim were outside their control.  But as defendants point out, other facts that plaintiffs emphasize in their motion—those related to ART's lack of corporate formalities—are not new.  Accordingly, the court holds that plaintiffs have met their burden to show diligence, but the first factor of the good cause standard is in equipoise.  *See, e.g.*, *S & W Enters.*, 315 F.3d at 535-36.

B

With respect to the second factor of the good cause standard, plaintiffs contend that their proposed amendment is important because it affects their ability to satisfy the judgment against ART in the underlying case.  They posit that transfers out of ART have left it a shell with no discernible assets.  Plaintiffs therefore maintain that they should be able to pursue ARI's assets because it was unlawfully using ART as an alter ego.  Defendants respond that this is an insufficient basis for granting leave.

The court concludes that the proposed amendment, which adds a claim on which plaintiffs may be able to recover, is an important addition to plaintiffs' case.  Accordingly,

the second factor of the good cause standard weighs in favor of amending the scheduling order. *See Serv. Temps.*, 2009 WL 3294863, at *3.

## C

The court next considers together the prejudice and continuance factors of the good cause standard.

### 1

Plaintiffs contend that the proposed new alter ego claim against ARI is similar to their other claims, and that any prejudice would be manageable. They posit that they originally pleaded an alter ego claim against ARI and others in their first amended complaint, before opting to omit it from their second amended complaint. They have also asserted an alter ego claim against Gene throughout the case. And plaintiffs contend that denying leave to amend would permit defendants to benefit from their own misconduct, as set out in the sanctions order relating to Bertcher's deposition. Finally, plaintiffs posit that discovery is ongoing, defendants have in any event requested little discovery in this case, and the summary judgment deadline has not yet expired.

Defendants respond that the April 30, 2017 discovery deadline is quickly approaching, and that delays in the case are undesirable. As one form of prejudice, defendants point to the expense and delay of another round of motions to dismiss. And defendants contend that, if leave is granted, they will be obligated to conduct additional discovery, incurring further costs. Defendants also maintain that these negative effects would not be mitigated by a

continuance.[1]

### 2

The court concludes that the risk of prejudice and the possibility of granting a continuance weigh in favor of modifying the scheduling order. Plaintiffs' proposed new alter ego claim against ARI appears to share many factual predicates with their existing claims of fraudulent conveyance under TUFTA, unjust enrichment/constructive trust, and alter ego (against Gene). And the evidence relating to plaintiffs' new alter ego claim is presumably in defendants' possession. Although the April 30, 2017 deadline to complete discovery is fewer than two months away, defendants have an available remedy in the form of requesting an appropriate modification of the discovery period. Accordingly, the third and fourth factors of the good cause standard weigh in favor of modifying the scheduling order. *See id.*

### D

Considering the factors of the Rule 16(b) good cause standard holistically, and considering that the good cause inquiry focuses on the diligence of the moving party, the court concludes that plaintiffs have demonstrated good cause to modify the scheduling order. *See id.* Plaintiffs discovered specific facts in Bertcher's December 2016 deposition that added to the plausibility of an alter ego claim against ARI. And granting leave to amend now, before the close of discovery and before the summary judgment deadline, will not

---

[1]In their briefs, defendants set out the prejudice grounds for denying plaintiffs' attempt to replead verbatim their dismissed claims. Because the court agrees that plaintiffs are not entitled to replead these claims, the court focuses only on defendants' arguments against plaintiffs' proposed new alter ego claim.

materially impede the progress of the case.  *Cf., e.g.*, *Valcho*, 658 F.Supp.2d at 815 (denying motion for leave to amend filed after summary judgment motion and pretrial materials had been filed).

V

The court now decides under the Rule 15(a) standard whether leave to amend should be granted.  *See S & W Enters.*, 315 F.3d at 536.  Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981)).  The court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.  *Id.* (citing cases).

Having considered under the Rule 15(a)(2) standard the grounds for and against granting leave to amend, the court finds that leave should be granted in part.  Accordingly, the court concludes that plaintiffs should be granted leave to amend to the extent they seek leave to add an alter ego claim against ARI, and supporting factual allegations.  They must file their third amended complaint within 14 days of the date this memorandum opinion and order is filed.

\* \* \*

Because plaintiffs have shown good cause under Rule 16(b) to modify the scheduling order, and because Rule 15(a)(2) directs the court to freely grant leave to amend when justice so requires, the court grants plaintiffs' January 12, 2017 motion for leave to file third amended complaint to the extent they seek leave to add an alter ego claim against ARI, and supporting factual allegations, and otherwise denies the motion.

**SO ORDERED**.

March 14, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

-12-