## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DAVID M. CLAPPER and** | § | |
| **ATLANTIC MIDWEST L.L.C.,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **CASE NO: 3:14-cv-02970-D** |
| | § | |
| **AMERICAN REALTY INVESTORS, INC.,** | § | |
| **et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## FOURTH AMENDED COMPLAINT

NOW COME PLAINTIFFS, David M. Clapper and Atlantic Midwest, LLC, by and through their attorneys, Siciliano Mychalowych and Van Dusen, PLC, and for their Fourth Amended Complaint against Defendants American Realty Trust, Inc., American Realty Investors, Inc., EQK Holdings, Inc., and Gene Phillips, hereby state:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 USC §1332.  Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and fees.

2.  Venue is proper in the Northern District of Texas, as this is the location where the Defendants' principal places of business are located and the location where the events giving rise to the causes of action stated herein occurred.

### THE PARTIES

3.  Plaintiff David M. Clapper was a citizen of the State of Florida at the time the original Complaint in this matter was filed.  David M. Clapper is a citizen of the State of Michigan on the date of the filing of this Fourth Amended Complaint.

4.      Plaintiff Atlantic Midwest, LLC is a Michigan Limited Liability Company whose principal place of business is in Farmington Hills, Michigan.   Atlantic Midwest, LLC is a citizen of Michigan.

5.      The sole member of Atlantic Midwest, LLC is David M. Clapper.  David M. Clapper was a citizen of the State of Florida at the time the original Complaint in this matter was filed.  Mr. Clapper is a citizen of the State of Michigan on the date of the filing of this Fourth Amended Complaint.

6.      American Realty Investors, Inc. ("ARI") is a Nevada Corporation, with its principal place of business in Dallas, Texas.  ARI is a citizen of Nevada and Texas.

7.      American Realty Trust, Inc. ("ART"), is a Georgia Corporation, with its principal place of business in Dallas, Texas.  ART is a citizen of Georgia and Texas.

8.      Transcontinental Realty Investors, Inc. ("TCI") is a Nevada Corporation, with its principal place of business in Dallas, Texas.  TCI is a citizen of Nevada and Texas.

9.      Income Opportunity Realty Investors, Inc. ("IOT") is a Nevada Corporation, with its principal place of business in Dallas, Texas.  IOT is a citizen of Nevada and Texas.

10.      Pillar Income Asset Management, Inc. ("Pillar"), is a Nevada Corporation, with its principal place of business in Dallas, Texas.  Pillar is a citizen of Nevada and Texas.

11.      Prime Income Asset Management, Inc. ("Prime, Inc."), is a Nevada Corporation, with its principal place of business in Dallas, Texas.  Prime, Inc. is a citizen of Nevada and Texas.

12.      Prime Income Asset Management, LLC ("Prime, LLC"), is a Nevada Limited Liability Company, with its principal place of business in Dallas, Texas.  Prime, LLC is a citizen of Nevada and Texas.

13.      At the time the original Complaint in this matter was filed, the sole member of Prime, LLC was Prime, Inc.  Prime, Inc. is a Nevada Corporation with its principal place of business in Dallas,

Texas.  On the the date of the filing of this Fourth Amended Complaint, the sole member of Prime, LLC is Prime, Inc.  Prime, Inc. is a citizen of Nevada and Texas.  Plaintiffs' claims against Prime, LLC were dismissed by the Court in its Order dated January 25, 2016 (DE 209).

14.     EQK Holdings, Inc., ("EQK") is a Nevada Corporation, with its principal place of business in Dallas, Texas.  EQK is a citizen of Nevada and Texas.

15.     Basic Capital Management, Inc. ("BCM") is a Nevada corporation, with its principal place of business in Dallas, Texas.  BCM is a citizen of Nevada and Texas.

16.     Gene E. Phillips is an individual who has varying disclosed and undisclosed interests in the Defendant entities and he is the alter ego and controlling decision maker of the Defendant entities.  Gene E. Phillips was a citizen of the State of Texas at the time the original Complaint in this matter was filed, and is a citizen of the State of Texas on the date of the filing of this Fourth Amended Complaint.

## FACTUAL BACKGROUND

17.     In 1999, litigation commenced in the United States District Court for the Northern District of Texas, Case No:  99-2355, between Plaintiffs (along with other entities) on the one side, and American Realty Trust, Inc., ("ART") an entity affiliated with each Defendant in this case, along with another ART related entity, ART Midwest, Inc. on the other side.

18.     After the first trial concluded and a judgment was entered in 2004, the Plaintiffs appealed to the Fifth Circuit Court of Appeals.

19.     In 2007, the Fifth Circuit overturned the 2004 Judgment and remanded the case for assignment to a new judge and to determine liability and damages consistent with the findings of the Fifth Circuit.

20.     Upon remand, the District Court directed that the parties file summary judgment motions. Two rounds of Motions for Summary Judgment were filed by the Parties and the District Court largely granted summary judgment to Plaintiffs David M. Clapper and Atlantic Midwest, LLC.

21.     On August 15, 2008, the District Court granted summary judgment to Plaintiffs as to a number of counts in Plaintiffs' Complaint and awarded damages not less than $10 million at the time.

22.     As of September, 2008, Judgment Debtor ART and the other Defendants herein became aware that ART was indebted to Plaintiffs in an amount not less than $10 million.

23.     On September 22, 2009, the District Court issued its second order on summary judgment granting additional claims in favor of Plaintiffs and awarding additional damages.

24.     As of September 22, 2009, ART and the other Defendants herein were aware that ART was indebted to Plaintiffs in an amount of not less than $17 million.

25.     The District Court scheduled a trial of the only claim that remained in dispute, as well as those claims that the District Court had granted summary judgment to Plaintiffs on liability, but left the issue of damages to be decided by the Jury.

26.     The trial between Plaintiffs and ART commenced on January 24, 2011, and concluded on January 28, 2011. The Jury reached a verdict in favor of Plaintiffs David M. Clapper and Atlantic Midwest, LLC.

27.     On October 11, 2011, the Honorable David C. Godbey of the Northern District of Texas entered judgment in favor of the Plaintiffs in that action for an amount exceeding $73 million dollars in damages against ART and ART Midwest, Inc.

28.     ART filed an Appeal with the Fifth Circuit Court of Appeals.

29.     ART's request to stay execution was denied both by the District Court and the Fifth Circuit Court of Appeals.

30.     ART failed and/or refused to post a supersedeas bond to stay collection efforts by the Plaintiffs during the pendency of its appeal.

31.     The Plaintiffs filed post judgment motions to aid in collection of the judgment entered in their favor, including a Turnover Motion pursuant to Texas law.  The hearing on those post judgment collection motions was scheduled to proceed on January 20, 2012.

32.     ART requested an "emergency" adjournment of the motion hearing, which was granted. The hearing on the post judgment enforcement motions was rescheduled for January 30, 2012.

33.     The day before the fraudulent transfer and turnover motions were to be heard, ART and ART Midwest, Inc. filed a Notice of Bankruptcy with the District Court.  As a result of the automatic stay imposed by the bankruptcy filing, the hearings to enforcement the judgment in case 99-2355 were adjourned.

34.     Initially, ART and ART Midwest, Inc. first filed bankruptcy in Nevada.  On August 1, 2012, the Nevada Bankruptcy Court dismissed ART's bankruptcy for improper venue.

35.     Upon dismissal of ART's Nevada bankruptcy, the automatic stay was lifted and the District Court for the Northern District of Texas rescheduled the hearing on Plaintiffs' post judgment enforcement motions to proceed on August 30, 2012.

36.     As it had previously done, on the eve of the hearing on Plaintiffs' post judgment collection motions, ART filed bankruptcy.  This time, ART filed in the U.S. Bankruptcy Court for the Southern District of Georgia.

37.     The Plaintiffs, as creditors, appeared before the Georgia Bankruptcy Court and sought to cause ART's bankruptcy to be transferred to Texas.  The request was granted and ART's bankruptcy was transferred to the U.S. Bankruptcy Court for the Northern District of Texas on or about September 27, 2013, where it was assigned to Judge Harlan Hale.

38.     It was during ART's bankruptcy proceeding that the Plaintiffs learned that the hundreds of millions of assets that had been owned by ART immediately before the trial with Plaintiffs (and thereafter) had been transferred, divested, or otherwise disposed of in furtherance of ART's fraudulent intent to avoid the judgment entered against it in favor of Plaintiffs.

39.     On February 10, 2016, the Honorable David C. Godbey of the Northern District of Texas entered a final judgment in favor of David Clapper in the amount of $19,138,453.75 plus post-judgment interest against ART and ART Midwest Inc., and in favor of Atlantic Midwest, LLC in the amount of $42,339,039.13 plus post-judgment interest against ART and ART Midwest, Inc.

40.     Since 2002, ART historically owned, directly or indirectly, through ownership of its wholly owned subsidiaries Defendants EQK and BCM, no less than 64% of all outstanding shares of TCI and accordingly, based on that ownership, owned controlling shares of IOT.

41.     On the eve of the January, 2011 trial between ART and the Plaintiffs (at which time ART and Defendants were aware of amounts exceeding $17 million awarded to Plaintiffs since September, 2009), ART fraudulently transferred its directly owned TCI stock to its then wholly owned subsidiary, Defendant EQK.

42.     The transfer was made by ART to EQK with the intent to divest Defendant ART of assets to hinder and delay creditors, in particular, the Plaintiffs, from looking to ART's TCI stock in satisfaction of the judgment against ART entered in favor of the Plaintiffs.

43.     The fraudulent transfer by ART to Defendant EQK of ART's TCI stock was for little or no value, was to an insider, was completed immediately before the trial between ART and Plaintiff, and as found by Judge Hale, presented numerous badges of fraud pursuant to TUFTA.

44.     Defendants EQK and ARI participated in a conspiracy to defraud ART's creditors by filing false reports with the SEC regarding the transaction and by recording the fraudulent transfer in the books and records of the companies.

45.     On or about January 14, 2011, immediately before the trial before Judge Godbey in Case 99-2355, BCM, which was a then wholly owned subsidiary of Defendant EQK (a wholly owned subsidiary of ART) transferred 920,507 shares of TCI stock to Defendant EQK as a so-called "dividend".

46.     Defendant EQK Holdings, Inc. and BCM caused the dividend to be issued by BCM in violation of Nevada law regarding distributions to stockholders; See NRS 78.288.

47.     The dividend issued by BCM in the form of TCI shares, completed to hinder and delay creditors, is a predicate act that was undertaken by the association among EQK, ART, ARI and Gene Phillips as a part of the regular, ongoing pattern and practice of defrauding creditors.

48.     The fraudulent transfer in the form of a "dividend" of TCI stock to EQK was for the purpose and with the intent to hinder and delay creditors, in particular the Plaintiffs, in violation of TUFTA and other laws.

49.     The backdating of documents and use of false notaries are regular ongoing practices of the Defendants and is intended to defraud creditors, to hinder or delay creditors, and based on information and belief, will continue to be the regular practice of the Defendants.

50.     Judgment Debtor ART owned real property in Texas, Florida and Tennessee.

51.     After the Judgment was entered against ART, the Judgment Creditors caused liens to be filed against the real properties that were owned by ART as indicated in the 2011 Annual Report of ARI filed with the SEC, with the Register of Deeds for Dallas County, Texas, Marion County, Florida and Davidson County, Tennessee.

52.     Notwithstanding the liens, ARI, ART, EQK and Gene Phillips caused the real properties to be fraudulently transferred to avoid, hinder, and otherwise prevent Judgment Creditors from enforcing their lien.

53.     Debtor ART has no employees.

54.     Defendant ARI has no employees.

55.     Defendant EQK has no employees.

56.     BCM has no employees.

57.     Officers among Debtor ART, its parent Defendant ARI, Defendant EQK, and their management companies (Prime, Inc., Prime, LLC and Pillar) at the relevant times were/are shared.

58.     Common directors were/are also shared by Debtor ART, its parent Defendant ARI, Defendant EQK, and their management companies (Prime, Inc., Prime, LLC and Pillar) at the relevant times.

59.     All business of ART, ARI, and EQK, at all relevant times, was/is operated out of the same office.

60.     All the tax returns of Defendants ARI, EQK, and Judgment Debtor ART were consolidated during the relevant periods.

61.     All financial statements and accounting records for Defendants ARI, EQK, and Judgment Debtor ART were consolidated during the relevant periods.

62.     According to Defendants, Judgment Debtor ART's expenses and costs were paid by ARI during the relevant times.

63.     The ongoing operations of ART, ARI, and EQK were not kept separate, and were treated collectively as though undertaken by a single entity.

64.     ARI took and used Judgment Debtor's property as though it was its own, including using Debtor ART's property and assets to secure financing and/or to make accommodation pledges for its benefit.

65.     Since August of 2000, ARI treated ART and ART's subsidiaries' property as owned directly by ARI, and simply took and kept all cash, property, and assets of ART, a separate legal entity, with no accounting or reconciliation of records and amounts owed, or any formal legal

action, including by ART's or ARI's Board of Directors. ART stopped having formal Board of Director meetings, stopped documenting any transactions between ART and ARI, and ARI simply treated all ART's assets as its own, without any formal documentation, which ARI described as a "deemed dividend," but without any formal legal action by ART's or ARI's Board of Directors or officers, and without any formal legal documentation, resolutions, or minutes, and without even any accounting entry records. Notwithstanding, ART continued to be a separate legal entity while ARI systematically stripped ART of all of its assets, all while the underlying 1999 case between Plaintiff Judgment Creditors and ART was pending. ARI simply discontinued ART's operations, and despite ART's continued legal existence, ART was caused to "disappear" into ARI.

66.    No separate board meetings were held for Judgment Debtor ART, Defendant EQK, or Defendant ARI.

67.    ART, EQK, and ARI were/are operated with such a unity of interest among them that the separateness of ART from ARI has ceased.

68.    At all relevant times, ARI controlled the daily operations and all activities of the unified business interests comprised of ARI, EQK, and ART.

69.    ARI had and has common officers with ART and EQK.

70.    All business of ART, ARI, and EQK at all relevant times was operated out of the same offices where ARI operates.

71.    At all relevant times, ARI used the property of Judgment Debtor ART and Defendant EQK to benefit ARI.

72.    The daily operations and books and records of ARI were/are not kept separate from those of EQK and Debtor ART.  Since 2000, ARI has caused ART (and its subsidiaries) to cease having its own books and records, and has simply absorbed all assets and liabilities as its own.

73.     At all relevant times, ARI commingled its own funds with those of ART and Defendant EQK and caused the commingling of funds among ART, EQK, ARI, and their respective subsidiaries, to occur.

74.     ARI exercised total domination and control over Defendant EQK and Judgment Debtor ART to the extent that EQK and ART function solely to achieve the purposes that ARI sought to achieve.

75.     Judgment Debtor ART was undercapitalized at all relevant times.

76.     ARI, through its domination and control of Defendant ART, caused the unauthorized diversion of funds and assets away from ART (which ARI kept), treating the assets of Judgment Debtor ART as though they belonged to ARI during the relevant periods.

77.     Proper and independent corporate formalities were not adhered to by ARI, EQK, and ART.

78.     ARI, in its control and unity of interest over ART, ARI and EQK, caused ART's assets to be pledged and encumbered to benefit ARI and EQK.

79.     A unity of interest among EQK and ART with ARI exists such that they should be considered a single business association or entity.

80.     At all relevant times, the unity of business interests that is EQK, ART, and ARI were/are controlled entirely by, and therefore have a unity of interest with, Defendant Gene Phillips.

81.     The assets of ARI, EQK, and ART are controlled by Gene Phillips.

82.     Gene Phillips directs all business activities of ARI, EQK, and ART.

83.     Defendant Gene Phillips controls all decisions and exercises dominion and control over all assets as they pertain to the unity of interest among ARI, EQK, and ART.

84.     Based on information and belief, at all relevant times, Defendant Gene Phillips used the assets of ARI, EQK, and ART to secure financing for himself personally, for his family, and for

his personal projects, including, but not limited to, Port Olpentiz, as well as various oil and gas interests held by Mr. Phillips or other entities he controls.

85.     Based on information and belief, at all relevant times Defendants ARI and Gene Phillips directed and caused the assets of Debtor ART and Defendant EQK to be transferred from ART to avoid collection of those assets, and specifically to avoid significant personal tax liabilities for Gene Phillips and the entities with which he has a unity of interest, including EQK and ARI.

86.     Those who work at Pillar, Prime, Inc., Prime, LLC and the Officers and Directors of BCM, ARI, EQK and ART are lead to believe and confirmed their belief that the assets of ART, ARI, and EQK belong to and are controlled by Gene Phillips and consider the assets Gene Phillips' "family's money."

87.     Based on information and belief, Gene Phillips decides and controls what attorneys will be used for any work associated with the unity of business interests among ARI, EQK, and ART and all outside counsel are directed that Gene Phillips must personally approve any business transactions or major decisions in any litigation.

88.     Based on information and belief, Gene Phillips decides and controls what bills will actually be paid and the amounts to be paid with regard to the unity of business interests among ARI, EQK, and ART.

89.     Gene Phillips approves and controls all payments to be made all entities with which he shares a unity of interest, including EQK, ARI, and ART.

90.     Based on information and belief, Gene Phillips decides and controls what assets of ARI, EQK, and ART will or will not be pledged, encumbered or otherwise used to secure financing for his personal projects or to fund projects for the entities with which he has a unity of interest.

91.     Gene Phillips and ARI failed to maintain separate records for the operational assets and intangible assets of ART, ARI, and EQK, and caused the assets to be commingled such that there

11

is such a unity of interest among ART, ARI, and EQK so that at all relevant times, it was impossible to determine which entity actually owned which assets.

92.      Because of the commingling of the assets of ARI, EQK, and ART during the relevant time periods, ARI and Gene Phillips failed to attribute profits or losses appropriately to each entity, thereby causing confusion over which assets belonged to which legal entity and which legal entity should receive profits or payments.

93.      As a result of the commingling of the assets of ARI, EQK, and ART by ARI and Gene Phillips, it has rendered it impossible to distinguish the accounting of ART from the accounting of ARI and EQK.

94.      The accounting books and records of ART are the same as the books and records of ARI and were not maintained separately by ARI during all relevant periods.

95.      Gene Phillips and ARI caused/directed fraudulent conveyances to be made through the transfer of ART's assets to EQK and ARI.

96.      Gene Phillips and ARI participated in and directed that these fraudulent conveyances occur to defraud ART's creditors or otherwise, hinder and delay ART's creditors, to avoid collection against ART of the Plaintiffs' judgment against it, and ARI and Gene Phillips did so for their own personal benefit, including to prevent tax obligations from being incurred and to obtain financing for projects or projects related to other entities with which they have a unity of interest.

97.      The transactions whereby ART was divested of its ownership interest by transfer to insiders, on the eve of trial and since it became a subsidiary of ARI, and for inadequate consideration, were done so in violation of TUFTA or as unlawful dividends or were otherwise intended to prevent Plaintiffs from looking to the EQK, BCM, TCI and IOT stock and ART's other assets to satisfy the judgment against ART.

98.     Gene Phillips has expressly stated that it his intent to never permit that David Clapper nor Atlantic Midwest, LLC ever collect upon any judgment entered against ART in favor of the Plaintiffs.

99.     Gene Phillips controls ART, ARI, and EQK and their subsidiaries and directs, decides and controls whether their bills, judgments and obligations will be paid.

100.    ARI controls ART and EQK and their subsidiaries and directs, decides and controls whether their bills, judgments and obligations will be paid.

101.    On or about January 21, 2011, at ARI and Gene Phillips's direction and/or knowledge, on the eve of the trial between ART and Plaintiffs (in Case 99-2355), ART fraudulently transferred the shares it owned in EQK's stock for no or inadequate value, to Defendant ARI, with the intent to hinder and delay ART's creditors in violation of TUFTA and other laws.

102.    On or about January 21, 2011, on the eve of the trial between ART and Plaintiffs (in Case 99-2355), at ARI and Gene Phillips's direction and/or knowledge, ART fraudulently transferred the shares it owned in BCM for no or inadequate value to Defendant ARI, with the intent to hinder and delay ART's creditors in violation of TUFTA and other laws.

103.    ARI was a recipient of ART's fraudulently transferred assets, and ARI continues to hold title in ART's stock of EQK.

104.    At ARI's direction, ARI was a recipient of ART's fraudulently transferred assets, and based on information and belief, ARI continues to hold title to ART's BCM and EQK stock through ARI's ownership of ART's EQK stock, and through further transfers of TCI and IOT stock by EQK.

105.    EQK was a recipient of ART's fraudulently transferred assets, including real property, stock in subsidiaries, and TCI and IOT stock.  Based on information and belief, EQK still holds these fraudulently transferred assets today.

106.    ART's TCI and IOT stock was again fraudulently transferred from EQK to Defendant ARI in 2014.

107.    ARI was a recipient of ART's fraudulently transferred assets, including, but not limited to, EQK stock, TCI stock, and IOT stock and ARI stills holds those fraudulently transferred assets today.

108.    The transactions whereby ART's stock in TCI, IOT, EQK and BCM were fraudulently transferred were transactions made between ART and insiders (ART's parent, ARI, and subsidiaries), for little or no consideration and at a time when ART was already indebted to Plaintiffs for at least $17 million and on the eve of a trial where ART could be found liable for tens of millions more to the Plaintiffs.

109.    After Gene Phillips, ART, ARI and EQK fraudulently transferred ART's assets, Defendant ARI caused ART to be transferred to another affiliated entity, OneRealco, so that ART could file bankruptcy and its assets, having been fraudulently transferred, could be protected from collection or bankruptcy proceedings.

110.    In 2014, ART's bankruptcy was dismissed as a bad faith filing.

111.    Additional fraudulent conveyances of ART's property are as follows:

| | |
|---|---|
| a. | ART causes its wholly owned subsidiary ART Collection, Inc. to transfer a 97.28 acre parcel of land to Fenton Real Estate, Inc., an affiliated entity |
| b. | ART causes ART Palm, LLC to transfer 3.976 acres of land to Fenton Real Estate, Inc., an affiliated entity |
| c. | ART transfers its 100% interest in its wholly owned subsidiary ART Elm Fork, Inc. to EQK |
| d. | ART transfers its 99% Limited Partnership Interest in Elm Fork Ranch Limited Partners, Ltd. to EQK |
| e. | ART transfers its 100% interest in ART Florentina, Inc. to EQK |
| f. | ART transfers its 100% interest in Denver Merchandise Mart, Inc. to EQK |
| g. | ART transfers its 100% interest in its wholly owned subsidiary ART Hotel Equities, Inc. to EQK |
| h. | ART transfers its 100% interest in ART Lake Chateau, Inc. to EQK |
| i. | ART transfers all of its stock (100%) interest in ART Hawthorn, Inc to EQK |
| j. | ART transfers all of its 99% class B Limited Partnership interest in Hawthorn Lakes Associates, Ltd. to EQK |

| k. | ART transfers 99% of its Limited Partnership interest in Edina Park Plaza to EQK |
|----|----------------------------------------------------------------------------------|
| l. | ART transfers its 100% interest in ART GNB, Inc. to EQK |
| m. | ART transfers all interest held in its wholly owned subsidiary ART Edina, Inc. to EQK |
| n. | ART transfers its 100% interest in wholly owned subsidiary ART Westwood Florida, Inc. to First Equity Properties (a related entity by ART's own admissions) |
| o. | ART transfers 2.585 acres of land in Grapevine Texas to ART Westwood FL, Inc., an affiliated entity |
| p. | Since 2000, ART's cash and interest in properties and at least 218 subsidiaries were taken by ARI, and deposited in ARI's own bank account, without any accounting, documentation, or formal approval by either ART's or ARI's Board of Directors |

112.    ARI, EQK and ART claimed the transactions listed in Paragraph 111 a-o occurred on 12/23/10 or 12/31/10.  The transactions listed in Paragraph 111p occurred since 2000.

113.    Based on information and belief, many of the transactions described in Paragraph 111 were not completed until much later and after the trial between ART and Plaintiffs was completed and ART was indebted for more than $25 million to Plaintiffs.

114.    The documentation associated with the transactions set forth in Paragraph 111 was back dated, included false notaries and was completed to place ART's assets out of the reach of ART's creditors and to hinder and delay ART's creditors.

115.    Each transaction described in Paragraph 111 was between insiders, for insufficient or illusory and non-existent consideration, rendered ART insolvent and unable to pay its obligations, and was a fraudulent conveyance in violation of TUFTA and other laws protecting creditors.

116.    Defendant EQK continues to hold title in the assets fraudulently transferred to it pursuant to the transactions described in Paragraph 111 above, and assets taken from ART, including $105 million in cash or assets.

117.     Defendant ARI continues to hold title in the assets fraudulently transferred to it pursuant to the transactions described in Paragraphs 101, 102, and 111 above, and assets taken and not paid for from EQK and its subsidiaries, when EQK was a wholly owned subsidiary of ART.

118.     Gene Phillips, EQK, ART and ARI conspired and acted in association to defraud ART's creditors through the back dating of documents and use of false notaries, which are predicate acts and a regular business practice of this association of Defendants and which are likely to continue.

119.     ARI submitted false documents under oath to the Securities and Exchange Commission for year end 2011 in March of 2011 that reported to the SEC that Judgment Debtor ART remained the owner of all of the assets it claimed to have transferred in December of 2010 in the transactions described in Paragraph 111 above.

120.     According to testimony obtained during ART's bankruptcy, TCI is a publicly-traded company that owns real estate worth "at least a billion" dollars.

121.     ART, ARI, EQK, and Gene Phillips have a pattern and practice over the course of a decade or longer of regularly transferring assets, entities and interests, of altering parent/subsidiary and ART entity/affiliate relationships, and of taking positions in pleadings filed under oath with various Courts that are contrary to positions they previously took under oath with the SEC, IRS and various State agencies.

122.     This conduct is based on a conspiracy among the Defendants to defraud creditors, to render it virtually impossible (if not all together impossible) to determine what assets are owned by what entities or individuals, to determine what assets were transferred and when from any entity to another, and to determine what equities exist in an entity, for the intended purpose of delaying, hindering or otherwise preventing creditors, including Plaintiffs, from collecting on amounts due and owing.

123.     In filings with the SEC, ARI and TCI submitted false and untrue documentation regarding transfers of their shares that were in furtherance of the conspiracy to defraud ART's creditors and which were intended to aid and abet the fraudulent conveyances of the EQK and TCI stock. ARI and TCI further participated in the conspiracy by modifying their books and records to reflect the fraudulent transfers of the stock described herein.

124.     In filings with the SEC, IOT submitted false and untrue documentation regarding transfers of its shares that were in furtherance of the conspiracy to defraud ART's creditors and which were intended to aid and abet the fraudulent conveyances of IOT stock.  IOT further participated in the conspiracy by modifying its books and records to reflect the fraudulent transfers of its stock described herein.

125.     ARI controls, received, or otherwise has possession of assets that were fraudulently transferred from ART, including but not limited to the EQK, TCI, and IOT stock that ART once owned directly or indirectly through its wholly owned subsidiaries, EQK and BCM, and the cash and assets that were transferred directly from the ART subsidiaries and EQK to ARI's bank account since 2000.

126.     Based on information and belief, Gene Phillips was the recipient and/or beneficiary of ART's fraudulently transferred assets.

127.     Based on information and belief, Gene Phillips directly benefitted from the fraudulent conveyances, as if ART's assets been levied to satisfy the judgment against it, he would have personally suffered significant tax consequences, as various personal loan obligations and guaranties would have become due and owing and the fraudulent conveyances prevented detrimental action being taken against him by third parties.

128.     At all relevant times, it has been admitted in filings with the SEC that Gene Phillips is involved in the daily consultation with officers of Prime, Inc., Prime, LLC and Pillar and has

significant influence over the conduct of Prime, Inc., Prime, LLC and Pillar's business, which in turn, controls all of the day to day operations of ART, ARI, and EQK.

## COUNT I
## FRAUDULENT CONVEYANCE
## DEFENDANTS ART, ARI, AND EQK

129.     The facts and allegations set forth in Paragraphs 1-128 are incorporated by reference as though fully stated herein.

130.     Defendants EQK, ARI, and Gene Phillips are all recipients in the chain of title of assets that were fraudulently transferred by Judgment Debtor ART.

131.     The fraudulent transfers by ART were made for the benefit of Defendants G. Phillips, ARI, and EQK so that loans owed by or guaranteed by these Defendants would not be deemed due as a result of collection efforts taken against ART's assets.

132.     The fraudulent transfers by ART were made for the benefit of Defendants Gene Phillips, ARI, and EQK to avoid significant tax liabilities that would occur as a result of collection efforts taken against ART's assets.

133.     The fraudulent transfers by ART were made for the benefit of Defendants G. Phillips, ARI, and EQK, so that these Defendants could cause ART to file bankruptcy to further hinder and delay creditors and ART's assets would be available to these Defendants and not tied up in bankruptcy so that these Defendants could continue to use ART's assets as collateral to obtain financing from lenders to fund their own business and personal endeavors.

134.     The fraudulent transfers of ART's assets, including the transfers of stock held in TCI, IOT, EQK, BCM, and their subsidiaries, as well as the stock held by ART in all of its subsidiaries in the transactions specifically referenced in Paragraph 111 (and those not yet disclosed by Defendant ART) were completed for no or insufficient consideration.

135.    The fraudulent transfers of ART's assets, including the transfers of stock held in TCI, IOT, EQK and BCM, as well as the stock held by ART in all of its subsidiaries in the transactions specifically referenced in Paragraph 111 (and those not yet disclosed by Defendant ART) were between insiders.

136.    The fraudulent transfers of ART's assets, including the transfers of stock held in TCI, IOT, EQK and BCM, as well as the stock held by ART in all of its subsidiaries in the transactions specifically referenced in Paragraph 111 (and those not yet disclosed by Defendant ART) rendered Defendant ART unable to pay its obligations or otherwise rendered ART insolvent.

137.    The fraudulent transfers of ART's assets, including the transfers of stock held in TCI, IOT, EQK and BCM, as well as the stock held by ART in all of its subsidiaries in the transactions specifically referenced in Paragraph 111 (and those not yet disclosed by Defendant ART) were made with the intent to hinder and delay ART's creditors and to prevent Plaintiffs from seeking to look to ART's fraudulently transferred assets to satisfy the judgment against ART in favor of Plaintiffs.

138.    The fraudulent transfers of ART's assets, including the transfers of stock held in TCI, IOT, EQK and BCM, as well as the stock held by ART in all of its subsidiaries in the transactions specifically referenced in Paragraph 111 (and those not yet disclosed by Defendant ART) were concealed by the Defendants.

139.    Judge Hale of the US Bankruptcy Court for the Northern District of Texas has ruled that as it pertains to the transfers of ART's assets to EQK and to ARI, that numerous badges of fraud exist as to these specific transactions.

140.    The findings made by Judge Hale are binding upon EQK, ARI, ART, and Gene Phillips based on collateral estoppel/issue preclusion as these parties had counsel and participated in the bankruptcy trial before Judge Hale.

19

141.     The findings by Judge Hale are themselves sufficient evidence for the Court to find that the transfers of ART's assets to ARI, EQK, and/or Gene Phillips were completed with the intent to hinder and delay and place ART's assets out of reach of ART's creditors, namely Plaintiffs.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a Judgment in their favor, deem the transactions completed by ART described in this Fourth Amended Complaint and those discovered during the course of discovery fraudulent conveyances, set the transactions aside and deem same null and void to the extent possible, turnover the transferred assets to Plaintiffs and/or otherwise grant a judgment against the Defendant(s) to whom the asset was transferred, i.e. EQK, ARI, and Gene Phillips,  in an amount equivalent to the value of the assets on the date of the fraudulent transfer or at the time of judgment, whichever is greater, and award all other damages, including punitive damages, pre-judgment interest, costs, fees and all other relief the Court deems just under the circumstances.

## COUNT II
## UNJUST ENRICHMENT/CONSTRUCTIVE TRUST
## DEFENDANTS EQK & ARI

142.    The matters set forth in Paragraphs 1-141 are incorporated by reference as though fully stated herein.

143.    EQK and ARI are recipients of assets that were fraudulently transferred by Judgment Debtor ART.

144.    Defendants EQK and ARI are recipients in the chain of title of assets that were fraudulently transferred by Judgment Debtor ART.

145.    The fraudulent transfers by ART were made for the benefit of ARI and EQK so that loans owed by or guaranteed by these Defendants would not be deemed due as a result of collection efforts taken against ART's assets.

146.    The fraudulent transfers by ART were made for the benefit of ARI and EQK to avoid significant tax liabilities that would occur as a result of collection efforts taken against ART's assets.

147.    The fraudulent transfers by ART were made for the benefit of ARI and EQK so that these parties could cause ART to file bankruptcy to further hinder and delay creditors and ART's assets would be available to these Defendants and not tied up in bankruptcy so that these parties could continue to use ART's assets as collateral to obtain financing from lenders to fund their own business and personal endeavors.

148.    ARI and EQK did not pay any or adequate consideration for their receipt of ART's assets that were fraudulently transferred and they fraudulently received the assets in violation of TUFTA and other laws.

149.    It would be unjust to allow ARI and EQK to keep ART's assets that were fraudulently transferred to them.

150.    The benefits received by ARI and EQK were material and not incidental.

151.    As a result of the unjust enrichment of  ARI and EQK, based on the actual fraud committed by these Defendants via the fraudulent transfers of ART's property as well as the backdating of documents and other predicate acts described in this Fourth Amended Complaint, the Plaintiffs are entitled to a constructive trust as to ART's assets fraudulently transferred.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a Judgment in their favor of Plaintiffs on their unjust enrichment claim and order a constructive trust over all of ART's assets that were fraudulently transferred to ARI and EQK,  including, but not limited to, the following:  ART's shares of IOT and TCI stock, ART's shares of EQK stock, ART's shares of BCM stock, ART's shares and partnership interests in all of the subsidiaries that were transferred by ART to EQK as set forth in Paragraph 111, incorporated by reference, the cash and assets transferred or taken by ARI and EQK from ART and its subsidiaries since 2000, and award all other damages, including punitive damages, all costs, fees and all other relief the Court deems just under the circumstances.

### COUNT III
### ALTER EGO
### DEFENDANT AMERICAN REALTY INVESTORS, INC.

152.    The matters set forth in Paragraph 1-151 are incorporated by reference as though fully stated herein.

153.    ARI influences and controls the entity Defendants, and in particular, ART, BCM, EQK, TCI, and IOT.

154.    ARI has such a unity of interest with Defendant ART, BCM, and EQK, that there is no separation between ARI and these entity Defendants.

155.    ARI decides, directs, approves, and controls all decisions for these entity Defendants as to which attorneys, consultants, and professionals will be hired, used by, or relied on upon by these

Defendants. ARI decides, directs, approves, and controls all decisions for these entities Defendants as to what bills will or will not be paid on behalf of any of the entity Defendants. ARI directs, decides, approves, and controls what payments will be made by any of these entity Defendants to any vendors or third parties.

156.    ARI decides, approves, and controls all decisions as it pertains to financing, agreements, loans, pledges of collateral, and other issues related to debts and obligations of each of the entity Defendants and provides personal guarantees in many cases to obtain the required financing on behalf of the entity Defendants.

157.    ARI decides, approves, and controls all decisions as to whether the stock of TCI, IOT, or ARI will be encumbered or not and which Defendant or related entity the encumbrance will benefit.

158.    ARI exercises such dominion and control over ART, EQK, and their subsidiaries that the corporations cease to exist separate from ARI such that either piercing the veil of ARI or reverse piercing the corporate veil is warranted such that ARI should be held liable for the debts and obligations of ART and EQK, and in particular for the Judgment entered against ART in favor of the Plaintiffs, as well as any judgment subsequently entered against any other entity Defendant that is found responsible for payment of the obligations of ART.

159.    Adherence to the fiction of separate entity status between and among ARI, ART, and EQK would sanction fraud or promote of injustice.

160.    ARI has abused the corporate form of ART and EQK for illegitimate purposes. ARI's disregard of the corporate entity of ART, including, but not limited to, the comingling of assets, common officers, common directors, common accounting, failure to maintain separate books and records, undocumented and fraudulent transfers, failure to allocate losses/profit and costs/expenses render ART and EQK mere instrumentalities for the transactions of ARI.

161.    ART has been influenced and governed by ARI and it has such a unity of interest in ownership that one is inseparable from the other.

162.    ARI has comingled funds and assets with ART, has caused ART to be undercapitalized, has caused an unauthorized diversion of funds from ART, has treated ART's assets as ARI's own, and ARI has failed to observe all corporate formalities associated with ART.

163.    ARI has taken, controlled, and continues to possess all assets of ART from 2000 to the present, including all of ART's subsidiaries, cash, and other assets as a result of the sale or refinancing of ART and its subsidiaries, and all of ART's stock held in its subsidiaries, including EQK, BCM, TCI and IOT stock.

164.    ARI has caused ART to not have any books or records and has failed to maintain any books and records associated with ART.

165.    ARI has caused ART to be without a bank account, or keep any record of any ledger, as it has taken and continues to possess all of ART's assets, including its cash, subsidiaries, real estate, and stock, including EQK, BCM, TCI, and IOT stock.

166.    ARI has failed to keep ART's assets separate, or has created confusion between separate properties, records, and control.

167.    There is such a unity of interest of ownership, particularly among ARI, EQK, and ART, that one is inseparable from the other.

168.    Other examples of improper actions taken by ARI with respect to the assets of ART, EQK, BCM, and their respective subsidiaries and other assets include:

    a.    ARI failed to maintain and cause there not to be any books of ART, so there are no accounting entries for ART, including any that reflect any transfers from EQK, BCM to ARI.

    b.    All subsidiaries and assets of ART and their intercompany accounts were simply treated as owned by ARI, ignoring all legal and formal corporate formalities.

    c.    ARI, without any formal action by its or ART's Board of Directors, simply treated all of ART and ART's subsidiaries, cash, and assets as a "deemed dividend" and took and kept those assets as its own, and in doing so ignored that ARI, ART, EQK,

24

and BCM were separate legal entities, simply taking without consideration all of ART's assets.

169.    ARI reduced ART to a shell, which was rendered uncollectable and has no ability to pay its creditors, including the Plaintiffs.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter a Judgment in their favor and find that ARI acted as the alter ego of Defendants ART and EQK, such that ARI should be found responsible for any obligations of Defendants ART and EQK, including Plaintiffs' judgments against ART and any judgment entered against obligations of these Defendants as a result of the claims herein, as well as other damages, including punitive damages, pre-judgment interest, costs, fees and all other relief the Court deems just under the circumstances against all of the Defendants.

### COUNT IV
### ALTER EGO
### DEFENDANT GENE PHILLIPS

170.    The matters set forth in Paragraphs 1-169 are incorporated by reference as though fully stated herein.

171.    Gene Phillips influences and controls the entity Defendants ART, ARI, and EQK.

172.    Gene Phillips has such a unity of interest with Defendants ART, ARI, and EQK that there is no separation between Gene Phillips and these entity Defendants.

173.    Gene Phillips decides, directs, approves and controls all decisions for these entity Defendants as to which attorneys, consultants or other professionals will be hired, used by or relied upon by these Defendants.

174.    Gene Phillips decides, directs, approves and controls all decisions for these entity Defendants as to what bills will or will not be paid on behalf of any of the entity Defendants.

175.    Outside counsel for all of the entity Defendants are informed that all business transactions, distributions and litigation strategy decisions are made by Gene Phillips and must receive his approval to proceed.

176.    No transaction by any of the entity Defendants has ever been completed if Gene Phillips did not grant his approval.

177.    Gene Phillips directs, decides, approves and control what payments will be made by any of these entity Defendants to any vendors or third parties.

178.    The United States Bankruptcy Court for the Northern District of Texas has affirmatively found that at all relevant times, Gene Phillips controlled the entity Defendants.

179.    Gene Phillips and the entity Defendants are bound by the factual findings of the Bankruptcy Court that were made by Judge Harlan Hale as to Gene Phillips' control over the entity Defendants based on collateral estoppel/issue preclusion, as Gene Phillips and the entity Defendants had counsel and participated in the trial before the Bankruptcy Court that resulted in the finding that Gene Phillips exercises dominion and control over the Defendant entities.

180.    Defendant Gene Phillips, decides, approves and controls all decisions as it pertains to financing agreements, loans, pledges of collateral and other issues related to debts and obligations of each of the entity Defendants and provides personal guaranties in many cases to obtain the required financing on behalf of the entity Defendants.

181.    Defendant Gene Phillips, decides, approves and controls all decisions regarding whether the stock of the entity Defendants will be encumbered or not and which Defendant or other Phillips' related entity the encumbrance will benefit.

182.    Officers and Directors of ART, ARI, and EQK are advised and do in fact believe that all of the assets of these Defendants belong to and are controlled by Gene Phillips for the benefit of him and his family.

183.    Defendant Gene Phillips exercises such dominion and control over ARI, ART, and EQK that the corporations cease to exist separate from Gene Phillips such that either piercing the veil of ART or reverse piercing the corporate veil is warranted so that Defendant Gene Phillips should be held liable for the debts and obligations of Defendants ARI, ART, and EQK, and in particular, for the judgment entered against ART in favor of Plaintiffs as well as any judgment subsequently entered against any other entity Defendant that is found responsible for payment of the obligations of ART.

184.    Adherence to the fiction of separate entity status between and among Gene Phillips, ART, ARI, and EQK would sanction a fraud or promote an injustice.

185.    Gene Phillips, ART, ARI, and EQK have abused the corporate forms of American Realty Trust, Inc. and the other entity Defendants for illegitimate purposes.

186.    Gene Phillips, ART, ARI, and EQK's disregard of the corporate entity, including, but not limited to, the commingling of assets, common officers, common directors, common accounting, undocumented transfers, failure to allocate losses/profits, and failure to allocate costs and expenses, render ART, ARI, and EQK the mere instrumentalities for the transactions of Gene Phillips.

187.    Gene Phillips personally benefits from the disregard of the corporate entity and the use of ART, ARI, and EQK as his mere instrumentalities, because by doing so, among other benefits, Gene Phillips has and continues to avoid the collection of amounts due and owing under guaranties he has provided, and has prevented significant tax liabilities that would become due if ART's assets were levied or collected by enforcement of the judgments against it.

    WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter a Judgment in their favor and find that Gene Phillips acted as the alter ego of Defendants ART, ARI and EQK, such that Gene Phillips should be found responsible for any obligations of Defendants ART, ARI

and EQK, including Plaintiffs' judgments against ART and any judgment entered against obligations of these Defendants as a result of the claims herein, as well as other damages, including punitive damages, pre-judgment interest, costs, fees and all other relief the Court deems just under the circumstances against all of the Defendants.

**COUNT V**
**PUNITIVE DAMAGES**
**ALL DEFENDANTS**

188.    The facts alleged in Paragraphs 1-187 are hereby incorporated by reference as though fully stated herein.

189.    Defendants Gene Phillips, ARI, EQK, and ART, individually and in concert, committed a fraud and perpetrated a scheme to defraud the Plaintiffs and others.

190.    Defendants Gene Phillips, ARI, EQK, and ART's conduct, including, but not limited to, causing fraudulent bankruptcies to be filed, falsifying notarized signatures and otherwise committing acts of fraud to avoid creditors, as more particularly described in Paragraphs 1-197 incorporated herein, is sufficiently extreme and outrageous and malicious to warrant the imposition of punitive damages.

191.    The acts of Defendants Gene Phillips, ARI, EQK, and ART described herein were intentionally committed.

192.    The conduct of Defendants Gene Phillips, ARI, EQK, and ART was such that Plaintiffs are entitled to punitive damages against each of them.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a Judgment in favor of the Plaintiffs and against Defendants Gene Phillips, ARI, EQK, and ART for damages, pre-judgment interest, punitive damages, costs, attorneys' fees and any other relief the Court deems just under the circumstances.

## COUNT VI
## INJUNCTIVE RELIEF

193. The facts alleged in Paragraphs 1-192 are hereby incorporated by reference as though fully stated herein.

194. By virtue of Plaintiffs' Judgments against Defendant ART, Plaintiffs have a property interest in any cash, property or assets of any kind that any of the Defendants named herein caused or aided and abetted in causing to be fraudulently transferred as described in Paragraphs 1-201.

195. A threat of irreparable harm to the Plaintiffs' property rights exists if the Defendants in possession of ART's fraudulently transferred assets, (i.e. ARI, EQK, or Gene Phillips) are allowed to remain in possession and control of these assets.

196. If not enjoined, the Defendants may further transfer, sell or otherwise dispose of those assets that were fraudulently transferred.

197. Plaintiffs require injunctive relief to prevent Defendants from selling, transferring, reallocating, encumbering or abandoning assets that may otherwise be available to satisfy the amounts owed to Plaintiffs pursuant to the judgments entered against Defendant ART.

198. Plaintiffs have a likelihood of success on the merits of their fraudulent conveyance, unjust enrichment/constructive trust and alter ego claims.

199. The Plaintiffs will suffer imminent, irreparable harm without Court intervention, and there is no adequate remedy at law.

200. As a direct and proximate result of Defendants' wrongful actions as alleged in this Complaint and in particular, paragraphs 1-199, the Plaintiffs have suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of injunctive relief.

201. The only adequate, effective, and complete relief available to the Plaintiffs is to restrain the Defendants from further engaging in certain proscribed activities, as set forth below.

202.     Pursuant to Tex. R. Civ. P. §680 *et seq.* and Tex. Civ. Prac. & Rem. Code §65.001 *et seq.*, in order to preserve the status quo during the pendency of this action, the Plaintiffs seek an injunction ordering and immediately restraining Defendants, including Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the "Restrained Parties"), as follows:

a.    Enjoining Defendants from selling, transferring, reallocating, encumbering or abandoning their causes of action in any lawsuit, including, but not limited to, the Dynex lawsuit, the Andrews Kurth, LLP lawsuit, and any other actions in which ART is a Plaintiff/Cross Plaintiff;

b.    Enjoining Defendants from any further transfer, disposition, pledging, or encumbering of any shares held by any Defendant or their subsidiaries, in any publicly traded company, including, but not limited to, shares of IOT, ARI and TCI and any nonpublic company that was once an asset of ART, including the entities whose stocks were transferred as described in Paragraph 111 herein;

c.    Enjoining the Defendants from issuing any dividends to any shareholders of any of the Defendant entities;

d.    Enjoining Defendants from transferring any interest held by any Defendants or their wholly owned subsidiaries in any real estate once held by ART or any of its wholly owned subsidiaries;

e.    Enjoining Defendants from transferring any ownership or stock interest held by any Defendant in any of the Defendant entities or their wholly owned subsidiaries;

f.    Enjoining Defendants from the destruction or deletion of any documents, evidence or record, electronic or otherwise, that relates to any of the transactions or transfers described herein or otherwise which occurred involving any assets or interest held in the last ten years by American Realty Trust, Inc. directly or indirectly, including but not limited to all hard drives, backups, archives, and other possible sources of stored metadata or information.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a preliminary injunction for the relief requested above and render a judgment against the Defendants in favor of David Clapper in the amount of $19,138,453.75 plus post-judgment interest, render a judgment in favor of Atlantic Midwest, LLC in the amount of $42,339,039.13 plus post-judgment interest, and award all other damages that Plaintiffs are entitled to, including pre-judgment interest, punitive damages, costs, attorneys' fees and any other relief the Court deems just under the circumstances.

Respectfully submitted,

SICILIANO MYCHALOWYCH AND VAN DUSEN, PLC

By:    /s/ Andrew W. Mychalowych
        Andrew W. Mychalowych
        Cora L. Morgan
        Attorneys for Plaintiffs
        40950 Woodward Ave., Ste. 350
        Bloomfield Hills, MI 48304
        (248) 442-0510/(248) 442-0518
        AMychalowych@smv-law.com
        CMorgan@smv-law.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 26, 2017, he caused the foregoing document to be filed using the electronic case files system of the court, which will provide notification of this filing to all attorneys of this case who are registered ECF users.

/s/ Andrew W. Mychalowych