**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DAVID M. CLAPPER, et al.,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| **v.** | § | **CASE NO. 3:14-CV-02970-D** |
| | § | |
| **AMERICAN REALTY INVESTORS, INC.,** | § | |
| **et al.,** | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND**
**RULE 19, AND**
**MOTION TO STRIKE PLAINTIFFS' FOURTH AMENDED COMPLAINT PURSUANT**
**TO RULE 41 AND BRIEF IN SUPPORT**

COME NOW Defendants American Realty Investors, Inc. ("ARI"), EQK Holdings, Inc. ("EQK"), and American Realty Trust, Inc. ("ART"), (hereinafter collectively referred to as "Defendants"), and file their Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 19(b) of the Federal Rules of Civil Procedure ("FRCP"), and Defendants' Motion to Strike Plaintiffs' Fourth Amended Complaint pursuant to Rule 41 FRCP. The Defendants file these Motions, together with their brief in support.

## TABLE OF CONTENTS

I.   SUMMARY ..................................................................................................................... 1

II.  FACTS AND ARGUMENTS ......................................................................................... 3

    A.   Atlantic XIII is an indispensable party whose presence in this action would
        defeat diversity ........................................................................................................ 3

    B.   This case should be dismissed because complete diversity was not established
        at the commencement of this action ........................................................................ 8

    C.   The Partnership is not a party to this action, nor have claims been asserted for
        and/or on its behalf .............................................................................................. 11

    D.   A Rule 19(b) analysis requires that this entire case be dismissed ........................... 18

    E.   The Court should strike all pleadings in the Fourth Amended Complaint
        wherein Plaintiffs exceeded the scope of prior court orders ......................................... 19

III. CONCLUSION AND PRAYER ..................................................................................... 23

## Index of Authorities

**Cases**                                                                          **Page(s)**

*Aetna Cas. & Sur. Co. v. Hillman,*
  796 F.2d 770 (5th Cir.1986) ................................................................................ 9

*Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc.,*
  149 F.3d 794 (8th Cir. 1998) ............................................................................... 9

*August v. Boyd Gaming Corp.,*
  135 Fed. Appx. 731 (5th Cir. 2005) ..................................................................... 5

*BAC Home Loans Servicing v. Texas Realty Holdings,* LLC.,
  901 F.Supp. 2d 884, (S.D.Tex. 2012) ................................................................ 13

*Broussard v. Columbia Gulf Transmission Co.,*
  398 F. 2d 885 (5th Cir. 1968) ............................................................................ 19

*Brown v. Pac. Life Ins. Co.,*
  462 F.3d 384 (5th Cir. 2006) ............................................................................... 6

*Bry-Man's Inc. v. Stute,*
  312 F.2d 585 (5th Cir. 1963) ............................................................................... 7

*Cates v. Int'l Tel. & Tel. Corp.,*
  756 F.2d 1161 (5th Cir. 1985) ........................................................................... 14

*Data Discovery, Inc. v. HiEnergy Technologies, Inc.,*
  2005 WL 1544791 (N.D. Tex. 2005) .................................................................. 15

*Ex parte McCardle,*
  74 U.S. 506 (1868) .............................................................................................. 9

*Farrell ConstrCo. v. Jefferson Parish LA.,*
  896 F.2d 136 (5th Cir. 1990) ............................................................................. 13

*Freeport-McMoRan, Inc. v. K N Energy, Inc.,*
  498 U.S. 426 (1991) ............................................................................................ 9

*Haas v. Jefferson Nat'l Bank of Miami Beach,*
  442 F.2d 394 (5th Cir. 1971) ............................................................................... 4

*Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.,*
  546 F.2d 1227 (5th Cir. 1977) ............................................................................. 7

*HEI Res. E. OMG Joint Venture v. S. Lavon Evans, Jr. Operating Co.*,
  No. 5:07-CV-62, 2009 WL 1942538 (S.D. Tex. July 6, 2009) ................................................. 22

*Hood ex rel. Miss. v. City of Memphis, Tenn.*,
  570 F.3d 625 (5th Cir. 2009) ................................................................................................ 4

*HS Res., Inc. v. Wingate*,
  327 F.3d 432 (5th Cir. 2003) ................................................................................................ 5

*In re Allcat Claims Serv., L.P.*,
  356 S.W.3d 455 (Tex. 2011) ........................................................................................... 13, 14

*In re Signal Intern., LLC*,
  579 F.3d 478 (5th Cir. 2009) ................................................................................................ 13

*Lakhani v. Switzer Petroleum Prod., Inc.*,
  No. 05-97-01621-CV, 2001 WL 840781 (Tex. App.—Dallas July 26, 2001, no pet.) ............. 15

*Lone Star Indus., Inc. v. Redwine*,
  757 F.2d 1544 (5th Cir. 1985) .............................................................................................. 14

*MacLean v. McCarroll*,
  No. 4:08-CV-059, 2009 WL 1882838 (E.D. Tex. June 30, 2009) ........................................... 14

*In re Davis*,
  194 Fed 3d 570 (5th Cir. 1999) ............................................................................................ 13

*Newman–Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989) ............................................................................................................ 10

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
  390 U.S. 102 (1968) ............................................................................................................ 14

*Riley v. Goodblatt*,
  No. 6:09-CV-646-ORL-28GJK, 2009 WL 1531012 (M.D. Fla. May 29, 2009) ...................... 21

*Sta–Rite Indus., Inc. v. Allstate Ins. Co.*,
  96 F.3d 281 (7th Cir. 1996) ................................................................................................. 9

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .............................................................................................................. 9

*Wieburg v. GTE Sw. Inc.*,
  272 F.3d 302 (5th Cir. 2001) ............................................................................................... 13

*STATUTES*

28 U.S.C. § 1653 ................................................................................................................. 10

28 U.S.C. § 1927 ................................................................................................................. 22

*RULES*

FED. R. CIV. P. 15(a)(2) ...................................................................................................... 21

FED. R. CIV. P. 17(a)(1) ...................................................................................................... 13

FED. R. CIV. P. 19(a)(1) ........................................................................................................ 5

FED. R. CIV. P. 19(b) ............................................................................................................ 6

FED. R. CIV. P. 21 .............................................................................................................. 10

TEX. BUS. ORGS. CODE § 11.052 ...................................................................................... 16

TEX. BUS. ORGS. CODE § 152.056 .................................................................................... 14

TEX. BUS. ORGS. CODE § 152.101 .................................................................................... 14

TEX. BUS. ORGS. CODE §152.703 ..................................................................................... 16

TEX. BUS. ORGS. CODE § 153.003(a) ............................................................................... 14

TEX. BUS. ORGS. CODE § 154.001 ............................................................................... 14, 15

*TREATISES*

3A Moore's Federal Practice,
   P 1911 (1974) ................................................................................................................... 7

5C Charles Allan Wright & Arthur R. Miller,
   Federal Practice and Procedure (3d ed.2010) ................................................................ 5

# I.
# SUMMARY

This case must be dismissed because the Court lacks subject matter jurisdiction. With Plaintiffs RICO claim now dismissed, jurisdiction depends solely on diversity of citizenship. Plaintiffs failed to establish diversity under 28 U.S.C. §1332(a)(i) upon the commencement of this action and such failure still exists. Atlantic XIII, LLC (hereinafter "Atlantic XIII"), a named Plaintiff herein, destroys diversity, as Plaintiffs now concede.

The damages sought by each Plaintiff in this alleged fraudulent conveyance case relate to judgment amounts awarded to the Plaintiffs as against American Realty Trust, Inc., (hereinafter "ART") and others, in Case No. 3:99-CV-2355-R, styled *ART Midwest, Inc., et al. v. David M. Clapper, et al*. (hereinafter "the 1999 case"). The Final Judgment of the Court in the 1999 case (hereinafter "the 1999 Judgment") makes numerous awards to numerous parties, some awarded individually and some awarded jointly. (*See* Ex. 7, App. 000100-000103).

In the 1999 Judgment, Atlantic XIII is a joint judgment creditor or co-obligee with Atlantic Midwest, LLC (hereinafter "Atlantic Midwest") and David Clapper, individually (hereinafter "Clapper"), relating to damages awarded against ART. (*Id*.). Atlantic Midwest and Clapper in their own right, also sue to recover amounts jointly awarded to them. As a consequence, Atlantic XIII is an indispensable party as a matter of law, and cannot be dropped from this case.

Further, the 1999 Judgment awards $35,730,652.70 (hereinafter "the $35M") as damages owned and recovered by, and on behalf of, ART Midwest L.P. (hereinafter "the Partnership"). (*Id*. at 000101-000102). The $35M represents almost sixty (60%) percent of the total judgment amount.

However, the Partnership is not a party to this lawsuit. Plaintiffs have failed to name the Partnership or disclose the Partnership's interests in this case. Nor has any party sought to bring an action for and in behalf, or in the name of, the Partnership. Therefore, the Partnership is not before this Court and is not permitted to recover any amounts herein.

Up until the filing of the Fourth Amended Complaint (hereinafter "FAC") on December 26, 2017, the Plaintiffs have attempted to conceal the recovery of the Partnership's claims in this case. Plaintiffs prayed, on the final pleadings page of the FAC, that the Court should "**render a judgment in favor of Atlantic Midwest, LLC, in the amount of $42,339,039.13**" (hereinafter "$42M").[1] This scant prayer still does not advise that $35M of the $42M consists of the award to the Partnership. Nor does it advise the parties or this Court that Atlantic Midwest is seeking to recover the same for and in behalf of the Partnership.

The reason that Plaintiffs are cryptic and conceal the Partnership's interest in this matter is obvious: the Partnership's presence would destroy diversity, due to Atlantic XIII being a limited partner of the Partnership. In any action seeking damages for the Partnership, the Partnership would be the real party in interest, and a named party in such action. As a consequence, pleading the citizenship of each partner of the Partnership would be required in order to establish diversity. This, the Plaintiffs have always known, they cannot do.

Finally, Defendants move to strike the FAC in the areas where Plaintiffs exceeded the scope of the Court's order at DE 643. Additionally, Defendants filed a motion to dismiss

---

[1] As will be shown *infra*, this change in the prayer, along with other impermissible changes, exceeds the scope and leave granted by the Court in DE 643 and should be stricken. The Court only ordered the Plaintiffs to allege diversity of citizenship in conformity with 28 U.S.C. § 1332.

and to strike Plaintiffs' Third Amended Complaint ("TAC") due to the Plaintiffs pleadings that far exceeded the leave and scope ordered by the Court. To the extent that Plaintiffs have included the same impermissible pleadings in the FAC, the Defendants re-urge all of the same objections here, as were made/filed to the TAC.

## II.
## FACTS AND ARGUMENTS

**A.      Atlantic XIII is an indispensable party whose presence in this action defeats diversity**

1.      In DE 643, this Court ordered Plaintiffs to file a fourth amended complaint in which Plaintiffs **"must properly plead the citizenship of each member of Atlantic XIII, Atlantic Midwest, and Prime."** (Ex. 1, App. 000002-000003). In response, Plaintiffs filed the FAC, in which Plaintiffs purposefully failed to comply with DE 643. (*See* Ex. 2, App. 000005-000034). Instead of properly pleading the citizenship of each member of Atlantic XIII, Plaintiffs admitted that Atlantic XIII defeats diversity in this action, and attempted to drop Atlantic XIII as a party. (Ex. 3, App. 000038). Despite the issuance of this Court's additional order in DE 653 (Ex. 4, App. 000043-000044), which rebuked the Plaintiffs' tactic and reiterated the requirement to properly plead the citizenship of Atlantic XIII, Plaintiffs have failed and refused to file such pleadings.[2]

2.      Instead, Plaintiffs attempt to persuade the Court that Atlantic XIII may be dropped from this case, due to being dispensable, and that this case may then proceed to conclusion because complete diversity will have been established. To support this notion, Plaintiffs claim that FRCP 19 would not require Atlantic XIII to be joined in this lawsuit, as

---

[2] Plaintiffs should be ordered to fully plead diversity facts as ordered in DE 643, and be sanctioned for their failure to do so.

it has its own judgment in the 1999 case "separate and apart from the amounts awarded to Atlantic Midwest and David Clapper" and that "separate judgments were entered as to each Plaintiff." (Ex. 3, App. 000040). Plaintiffs further argue that "Defendants would not be prejudiced by the removal of Atlantic XIII from this lawsuit, particularly since the judgment amounts claimed by Atlantic XIII have been removed from the relief requested in the [FAC]." (*Id*. at 000041). **These assertions are made in bad faith and are categorically false.**

3.      Despite Plaintiffs' assertions, Atlantic XIII is indispensable to this litigation because it seeks to recover damages in its singular right, and also as a joint judgment creditor or co-obligee with Atlantic Midwest and Clapper, particularly as to joint awards of damages in the 1999 Judgment. As a consequence, Atlantic XIII's presence is necessary to afford full and complete relief to the Defendants, and so as not to otherwise expose Defendants to the substantial risk of prejudice, conflicting determinations and/or double liability.

4.       According to the Fifth Circuit, an indispensable party is defined as one "who not only [has] an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 396 (5th Cir. 1971). Said another way, a party is indispensable if litigation cannot be properly pursued without them. *Hood ex rel. Miss. v. City of Memphis, Tenn.*, 570 F.3d 625, 629 (5th Cir. 2009).

5.      Federal Rule of Civil Procedure 19 provides relevant factors to determine if a party is indispensable to litigation. In applying the Rule 19 analysis, courts first look to Rule

19(a) to determine whether a party should be joined. *Id.* at 628 ("Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry. First, the district court must determine whether the party should be added under the requirements of Rule 19(a)."). Rule 19(a)(1) provides:

> A person subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). Following the Rule 19(a) analysis, if the Court determines that the party is necessary, that party must be joined, unless joinder would defeat subject-matter jurisdiction. *See August v. Boyd Gaming Corp.*, 135 F. App'x 731, 732 (5th Cir. 2005); *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438–39 (5th Cir. 2003); 5C Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed. 2010).

6.     Next, if the party cannot be joined because such joinder would destroy subject-matter jurisdiction, a court must then determine if the party is indispensable, that is, "whether litigation can be properly pursued without the absent party under Federal Rule of Civil Procedure 19(b)." *August*, 135 F. App'x at 732. Rule 19(b) continues the analysis and provides a list of factors to determine if a party is indispensable to the litigation:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or

(C) other measures;

    (3) whether a judgment rendered in the person's absence would be adequate; and

    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b). "When assessing these factors, the relevant inquiry is whether 'in equity and good conscience the action shall proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.'" *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006) (citing FED. R. CIV. P. 19(b)).

    7.    Such a Rule 19 analysis reveals that Atlantic XIII is an indispensable party and cannot be dropped from the lawsuit. Atlantic XIII is a joint creditor with both Clapper and Atlantic Midwest. The 1999 Judgment, under which all Plaintiffs seek and compute their damages, sets out the damages awarded to each party. (Ex. 7, App. 000100-000103). Notably, Atlantic XIII is awarded judgments with, and is listed almost entirely as, a joint creditor with Clapper and Atlantic Midwest. **In fact, in only one paragraph of the Final Judgment is Atlantic XIII listed as a creditor separate and apart from any other creditor**. (*See id.*). While the entire 1999 Judgment is attached for completeness, the judgments with respect to Atlantic XIII are as follows:

    3.    **Defendant/Counter-Plaintiffs Clapper individually and Atlantic XIII have judgment on their claim** for breach of the Assumption Agreement against ART in the amount of $134,000, together with prejudgment interest at the rate of 5% per annum from October 14, 1999 through October 11, 2011, in the amount of $106,550.56, for a total award of $240,550.56 which shall bear post judgment interest at the rate of 0.11%, compounded annually, beginning October 12, 2011 until paid in full.

    7.    **Atlantic Midwest and Atlantic XIII have judgment** against ART and ART Midwest, jointly and severally, in the amount of $2,113,616, together with prejudgment interest at the rate of 5% from October 14, 1999 through October 11, 2011 in the amount of $1,680,649.05 for a total award of $3,794,265.05 which shall bear post judgment interest at the rate of 0.11%, compounded annually, beginning October 12, 2011 until paid in full.

8.     **Atlantic XIII has judgment** against ART in the amount of $197,212.23, together with prejudgment interest at the rate of 5% per annum from October 14, 1999 through October 11, 2011 in the amount of $156,813.98 for a total award of $354,026.21 which shall bear post judgment interest at the rate of 0.11%, compounded annually, beginning October 12, 2011 until paid in full.

9.     **Atlantic Midwest, Atlantic XIII and Clapper have judgment** against ART and ART Midwest, jointly and severally, in the amount of $2,500,104.31 for attorneys fees and $73,466.51 for taxable and non-taxable costs, for a total award of $2,573,570.82 which shall bear post judgment interest at the rate of 0.11%, compounded annually, beginning November 15, 2014 until paid in full.

8.     As the Court can see, Atlantic XIII is a judgment creditor—by itself, separate and apart from any other creditor—**in only the one instance**, paragraph 8 of the Final Judgment. (*Id.* at 000102-000103). In paragraph 3 of the Final Judgment, both **Atlantic XIII and Clapper have judgment together**; in paragraph 7, **Atlantic Midwest and Atlantic XIII are together**; and in paragraph 9, **Atlantic Midwest, Atlantic XIII and Clapper are together**. (Id. at 000101).This clear and explicit language makes Atlantic XIII an indispensable party in this case as all but one of the judgments awarded to it cannot be separated from its joint creditors, Clapper and Atlantic Midwest. Thus, any disposition of claims owned by joint creditors, without the presence of Atlantic XIII, would subject the Defendants to a potential double liability, inconsistent determinations and/or obligations contrary to Rule 19.

9.     This precise conclusion was reached by the Fifth Circuit in *Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.*, 546 F.2d 1227 (5th Cir. 1977), when it stated that "[t]he rule generally applied by federal courts is where two or more parties are joint obligees, they are indispensable parties in an action for enforcement of that obligation." *Id.* at 1228-29 (citing *Bry-Man's Inc. v. Stute,* 312 F.2d 585, 587 (5th Cir. 1963) (wherein the plaintiff's case was dismissed for failure to join a joint obligee as an indispensable party); *see* 3A Moore's Federal Practice P 1911 at 2361 (1974).

10.     Further, the final prayer pleaded by Plaintiffs in the FAC at P. 30 (Ex. 2, App. 000033) emphatically rebuts Plaintiffs' assertion that all Atlantic XIII amounts sought to be recovered have been removed from the FAC. In the aforementioned final prayer, Atlantic Midwest seeks to recover $42,339,039.13,[3] **which amount, as shown above, includes amounts jointly awarded to Atlantic XIII**. (*Id.*). Therefore, it is patently false to assert, as Plaintiffs did in the Motion to Confirm and for Leave to Remove Atlantic XIII (DE 652) (hereinafter referred to as the "Motion to Remove Atlantic XIII"), that "judgment amounts claimed by Atlantic XIII have been removed from the relief requested in the [FAC]." (Ex. 3, App. 000040-000041).

11.     Therefore, and contrary to Plaintiffs' assertion, Atlantic XIII is not a dispensable party, nor may it be dropped, nor were separate judgments "entered as to each Plaintiff in the 1999 Judgment, and nor would Atlantic XIII's removal from this lawsuit protect the Defendants from prejudice. As a consequence of the foregoing, this case must be dismissed in its entirety for lack of subject-matter jurisdiction.

**B.      This case should be dismissed because complete diversity was not established at the commencement of this action**

12.     In the original Complaint filed by Plaintiffs in this action, Plaintiffs pleaded that **"This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction)** and based upon a Federal question being raised pursuant to RICO" (emphasis added). (Ex. 5, App. 000046). It is important to reiterate that Plaintiffs judicially admit in their Motion to Remove Atlantic XIII that complete diversity under 28 U.S.C. §

---

[3] The actual breakdown and/or components of the $42M consists of the following:

$35,730,652.70 awarded to the Partnership
$ 3,794,265.05 awarded to Atlantic XIII and Atlantic Midwest
$ 2,573,570.82 awarded to all Plaintiffs for attorney's fees
$   240,550.56 awarded to Atlantic XIII and David Clapper per the Damages Election (defined infra)
$42,339,039.13

1332(a) does not exist, **and has never existed**, because Atlantic XIII is a non-diverse party. (Ex. 3, App. 000038). In an effort to extricate themselves from this fundamental gaffe, Plaintiffs attempted to drop Atlantic XIII from the FAC, which this Court rebuked. Now, the Plaintiffs move this Court for leave to drop Atlantic XIII as a party, and argue that they can fix their failure to establish complete diversity at the time of the commencement of this action under some conjured up relation-back theory, which appears to be the product only of Plaintiffs' ruminations. Defendants would show, however, that Plaintiffs' failure to establish complete diversity upon the commencement of this action is fatal to this action, and requires this case to be dismissed.

13.     It is well-established law that the existence of jurisdiction is determined by the facts existing at the time the lawsuit was filed. *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (applying "time-of-filing rule" to determining diversity of citizenship). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 511-12 (1868)). As such, if this Court determines diversity jurisdiction is lacking, the "only function remaining to the court" is to dismiss the case. *See id.* "[T]he district court cannot retroactively create diversity jurisdiction if it did not exist when the complaint was filed. Instead, the district court must dismiss the action." *Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc.*, 149 F.3d 794, 796–97 (8th Cir. 1998) (internal citations omitted) (citing *Sta–Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 285 (7th Cir. 1996); *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775–76 (5th Cir. 1986)).

14.     However, the time-of-filing rule has two exceptions which permit a Court to dismiss a non-diverse party in order to cure a jurisdictional defect. *See Newman–Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836–37 (1989). As the Supreme Court stated in *Newman*, "[l]ike most general principles, however, this one is susceptible to exceptions, and the two that are potentially applicable here are reflected in 28 U.S.C. § 1653 and Rule 21 of the Federal Rules of Civil Procedure." *Id.* In their Motion to Remove Atlantic XIII, Plaintiffs seemingly attempt to present these two exceptions as arguments that Atlantic XIII can be dropped as a party. However, neither apply; and subsequently, Defendants' Motion to Dismiss should be granted.

15.     First, 28 U.S.C. § 1653 does not permit Plaintiffs to drop Atlantic XIII as a party. 28 U.S.C. § 1653, in its entirety, states: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Yet, while 28 U.S.C. § 1653 permits the amendment of "[d]efective allegations of jurisdiction," the United States Supreme Court has explicitly held that the long-standing interpretation of 28 U.S.C. § 1653 is that the statute only applies to "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman*, 490 U.S. at 831. As such, 28 U.S.C. § 1653 cannot and "does not apply to the instant situation, where diversity jurisdiction does not, in fact, exist." *Id.*

16.     Second, Rule 21 does not permit Plaintiffs to drop Atlantic XIII as a party. Rule 21 permits that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. However, and as argued *supra*, it is "well settled that Rule 21 invests district courts with authority to allow a **dispensable** non-diverse party to be dropped at any time." *Newman-Green*, 490 U.S. at 832 (emphasis added). Here, however, Atlantic XIII is an indispensable party and cannot be dropped from this lawsuit.

17.     As such, no exception to the time-of-filing rule applies, and the Court, as a consequence of never having diversity jurisdiction at any point in this lawsuit, must dismiss this action.

### C.     The Partnership is not a party to this action, nor have claims been asserted for and/or on its behalf

18.     The Partnership is not a party to this action. Further, no other party in this action has pleaded any right or authority to assert claims or recover damages for the Partnership in any pleadings on file herein. Nor do the pleadings reflect the capacity and/or standing by any other named party to assert claims or recover damages for the Partnership.[4]

19.     In all four (4) complaints filed by Plaintiffs in this cause, including the most recent FAC, Atlantic Midwest pursues claims and damages **singularly, only in its own name, and not in any representative capacity**. (*See e.g.* Ex. 5, App. 000056-000068) (Plaintiffs' original Complaint) and (Ex. 6, App. 000086-000098) (Plaintiffs' Third Amended Complaint). Atlantic Midwest never pleads, pursues and/or prosecutes any right or recovery of damages on behalf of, or in the name of, the Partnership. *Id*. The pleadings are stone-cold silent in this regard.

20.     Additionally, Plaintiffs have never disclosed in any Rule 26 Disclosures served in this cause that the Partnership sought damages by or through Atlantic Midwest. Further, Atlantic Midwest never computed each category of damages that it sought, either for itself, or for any other entity, including the Partnership, as required by Rule 26(a)(1)(A)(iii) until **January 11, 2018**, in Plaintiffs **Fifth Amended** Rule 26 Disclosures (hereinafter "the Fifth Amended Disclosures"). This recent disclosure of computed damages,

---

[4] Defendants incorporate by reference the Section IV of Defendant Gene Phillip's Motion to Dismiss regarding the lack of standing of Atlantic Midwest to recover damages for the Partnership, only in its name.

served one week ago, was provided ONLY because Defendants made a specific written request for the same on **January 5, 2018**. This specific request was made by the Defendants because the Plaintiffs failed to provide the computation of damages disclosures in their **Fourth Amended Rule 26 Disclosures**, which was served on **January 5, 2018**. Despite all of that, **there is still no pleading or statement, whatsoever, in the Fifth Amended Disclosures that reveals that Atlantic Midwest computes or seeks damages for and in behalf of the Partnership.**

21.     It now seems, however— **FOR THE FIRST TIME IN THIS CASE**—that Atlantic Midwest appears to seek damages for claims belonging to the Partnership through cunning and sleight-of-hand, not in the broad light of honest pleadings, as required by Rule 11 FRCP. Plaintiffs' tactic of trying to hide the ball was only first revealed in the Plaintiffs' final prayer, on the next to last page of the FAC filed on **December 26, 2017**. (Ex. 2, App. 000033).

24.     On P. 30 of the 31-page FAC, Atlantic Midwest prays to recover $42M. *Id.* However, a review of the 1999 Judgment reveals that Atlantic Midwest, singularly, and jointly with other creditors, is only entitled to recover $6,367,835.87, and that $35M of the $42M is an amount recovered by and awarded to the Partnership. (Ex. 7, App. 000101-000103). Thus, **by inference and implication only**, Atlantic Midwest—for the first time in any written pleading in this litigation—appears to be attempting to recover damages owned by the Partnership.

22.     It is clear, under well-settled authority, that in order to prosecute a claim for and on behalf of the Partnership, that the Partnership would be the real party in interest, and thus, an indispensable party to this litigation. In that instance, the citizenship of the partners of the Partnership must be disclosed/pleaded in order to establish diversity.

23.     Since the Partnership is not a party, and Atlantic Midwest has not sought to recover in behalf and/or in the name of the Partnership, Atlantic Midwest—in this action—cannot pursue or recover any claim or amount for and on behalf of the Partnership. Since the Partnership is the real party in interest regarding the $35M claim, in order to prosecute Partnership claims in this action, **the Partnership would have to be a named party to this action, and Atlantic Midwest would be required to plead/seek Partnership claims for and in behalf, and in the name of, the Partnership.**

24.     Rule 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001). A real party in interest is defined as "the person holding the substantive right sought to be enforced and not necessarily the person who will ultimately benefit from the recovery." *In re Signal Intern., LLC*, 579 F.3d 478, 487 (5th Cir. 2009) (citing *Farrell Constr. Co. v. Jefferson Parish La.*, 896 F.2d 136, 140 (5th Cir. 1990)). The purpose of this provision "is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right." *Wieburg*, 272 F.3d at 306.

25.     The determination of whether one is the real party in interest with respect to a particular claim is based on the controlling state or federal substantive laws. *In re Davis*, 194 F.3d 570, 578 (5th Cir. 1999). That is, while the question of whether a claimant is the real party in interest is a procedural one, "that question must be answered with reference to the *substantive* state law." *BAC Home Loans Servicing v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 907-08 (S.D. Tex. 2012).

26.     Under Texas law and the entity theory of ownership, partnerships are entities separate and distinct from their partners. *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 463 (Tex. 2011). Here, the judgment awarded to the Partnership is Partnership property—not property of any partners individually. The Partnership is still winding up its affairs. Therefore, any claim of the Partnership must be brought by the Partnership—the real party in interest. As a consequence, if Atlantic Midwest sought to recover such claims, then it is clear that the Partnership would be **an indispensable party.**

27.     Although indispensability under Rule 19 is a question of federal law, state law determines the nature of the interests of the parties. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968); *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1548 (5th Cir. 1985). Here, the Partnership was organized in Texas, and is controlled and governed by Texas law. (Ex. 8, App. 000154). Thus, Texas law will also inform how the rights of the Partnership must be pursued.

28.     The Texas Supreme Court has made clear that Texas adheres to the entity theory of partnership law, whereby "a partnership is an entity separate and distinct from its partners." *In re Allcat Claims*, 356 S.W.3d at 463. The Texas Business Organizations Code also makes clear that as a separate and distinct entity, "[a] partner is not a co-owner of partnership property." TEX. BUS. ORGS. CODE § 154.001(c); TEX. BUS. ORGS. CODE § 152.101 ("Partnership property is not property of the partners."); TEX. BUS. ORGS. CODE § 152.056 ("A partnership is an entity distinct from its partners."); *see also* TEX. BUS. ORGS. CODE § 153.003(a) (stating that rules governing general partnerships also apply to limited partnerships absent conflict).

29.     The case law also agrees as to how partnership claims must be pursued. *See MacLean v. McCarroll*, No. 4:08-CV-059, 2009 WL 1882838, at *2 (E.D. Tex. June 30, 2009)

("[A] partnership cause of action belongs to and is the specific property of the partnership, and . . . one merely owning an interest in the partnership may not, absent exceptional circumstances, bring suit either on such a cause of action as a whole, whether in the name of the partnership or in his own name . . . .") (citing *Cates v. Int'l Tel. & Telegraph Corp.*, 756 F.2d 1161, 1176 (5th Cir. 1985)); *Data Discovery, Inc. v. HiEnergy Technologies, Inc.*, No. 3:05-CV-0949, 2005 WL 1544791 (N.D. Tex. July 1, 2005) (holding the plaintiff did not have right to sue in its name only on a contract between the defendant and partnership); *Lakhani v. Switzer Petroleum Prod., Inc.*, No. 05-97-01621-CV, 2001 WL 840781, at *3 (Tex. App.—Dallas July 26, 2001, no pet.) (finding that partner did not have standing to bring an action because the claim belonged to the partnership, the pleadings did not allege partner was bringing suit on behalf of partnership, and "[a] partner has no interest in specific limited partnership property").

30.     The Partnership Agreement itself is consistent with the foregoing pronouncements in that it requires its general partner to bring a suit in the Partnership's name. (Ex. 8, App. 000133-000136). Pursuant to Section 6.01(a) of the Partnership Agreement, the general partner's power to prosecute claims in favor of the Partnership is subject to the restriction that it be brought "on behalf and in the name of the Partnership." (*Id.* at 000133).

31.     Atlantic Midwest, as the general partner, does not possess any sort of ownership right or claim over the judgment awarded to the Partnership. A partnership's property is its own and does not belong to the partner. *See* TEX. BUS. ORGS. CODE § 154.001 ("A partner is not a co-owner of partnership property."). Here, Atlantic Midwest's role, as the appointed general partner, is to bring the Partnership's claims—on its behalf and in the name of the Partnership. If Atlantic Midwest had sought to bring Partnership claims in this litigation, the real party in interest would be the Partnership, as an indispensable party.

32.     Next, the 1999 Judgment provides the same guidance, that: "Atlantic Midwest has declaratory judgment that it is the managing general partner of [the Partnership] as of December 9, 1999, and **is entitled to assert legal claims on behalf of the Partnership and wind up the Partnership's affairs** . . . ." (Ex. 7, App. 000101). Thus, the 1999 Judgment required Atlantic Midwest to prosecute the Partnership's claims "on behalf of the Partnership," not in its own name.

33.     Further, Atlantic Midwest's obligation to wind up the Partnership requires it to act "in the name of and for and on behalf of the partnership." Tex. Bus. Orgs. Code § 152.703. (TBOC). The TBOC specifically notes that "during the winding up process, the domestic entity may prosecute or defend a civil, criminal, or administrative action." Tex. Bus. Orgs. Code § 11.052. Under the Partnership Agreement and the 1999 Judgment, Atlantic Midwest has the obligation to wind up the Partnership's affairs, including pursuing legal claims. Therefore, Atlantic Midwest must file such claims for and on behalf of the Partnership. The judge in the 1999 case also clearly recognized and intended that the Partnership's $35M award against ART be Partnership property, when he ordered that any payment by ART under the judgment would be distributed by the Partnership during the winding up process, which would make its way back to ART. (Ex. 9, App. 000165-000166).

34.     **However, Atlantic Midwest did none of the above**. It appears that it is now attempting to back-door into recovering Partnership claims. Plaintiffs' legerdemain is made more egregious and dishonest, because such sophistry is also clearly an attempt to deceive this Court on the issue of diversity.

35.     One is left to query why Plaintiffs have attempted this clandestine approach instead of being open and honest in their pleadings. The true answer is that the Plaintiffs

obfuscate the current pleadings because they know that if, the Partnership's interests were openly pursued in this case, that (1) the Partnership would have to be a named party, (2) the Partnership would be an indispensable party, (3) the citizenship of its partners would have to be pleaded in order to establish diversity, and (4) Atlantic XIII's status, as a Class B Limited Partner of the Partnership, would be fatal to diversity, due to the same diversity warts that prevent Atlantic XIII as a stand-alone Plaintiff.[5] As a consequence, since the Partnership could not be joined, because such joinder would defeat diversity, this entire case would have to be dismissed. It is clear that the Plaintiffs intended to hide these issues from the Court and hoped that the Defendants would litigate these Partnership claims by consent.

36.     These pleading failures are not the product of an honest mistake, a simple oversight or lack of diligence. Nor was the non-diverse status and citizenship of Atlantic XIII something that Plaintiffs only recently "**researched**" and "**for the first time . . . became aware,**" as Plaintiffs claimed in the Motion to Remove Atlantic XIII. (Ex. 3, App. 000038). Clapper is not an interloper or a disinterested party to the Atlantic entities. Clapper is the manager, or at least a member, of all of the Atlantic entities, and has been managing their affairs throughout the 1999 case and this litigation. Further, Plaintiffs' counsel herein, Andrew W. Mychalowych (hereinafter "AWM"), also represented Atlantic XIII, Atlantic Midwest, and other Atlantic entities, including Atlantic Limited Partnership XII (the members of which causes Atlantic XIII to defeat diversity), in the 1999 case—which representation of those entities is entering its eighteenth (18th) year. Therefore, it is extremely difficult to believe that Plaintiffs and AWM were not acutely aware of the

---

[5] Diversity would be further defeated because Defendant ART is also a limited partner of the Partnership and, thus, as a party defendant, ART would defeat diversity on its own.

membership and citizenship status of all of the partners or members of Atlantic XIII, ART and the Partnership at the time of filing this action.

### D.      A Rule 19(b) analysis requires that this entire case be dismissed

37.      Since Atlantic XIII is an indispensable party, and cannot be joined, Rule 19(b) requires that this Court "determine whether, in equity and in good conscience," this action should proceed by considering, among other things, the factors reflected in Rule 19(b). In *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305 (5th Cir. 1986), the Fifth Circuit conducted a cogent analysis under Rule 19(b). In that action, a diverse plaintiff filed a claim in federal court seeking damages against a trustee for improprieties and to overturn a voting trust. Having determined that indispensable parties existed, and that their joinder would defeat diversity, the court considered the nature and extent of harm that may be occasioned by/to all of the parties, if the case were permitted to continue in federal court.

38.      Many of the same factors exist in this case, to wit: (i) whether the Defendants might be exposed to a substantial risk of multiple or insistent obligations and/or double liability, (ii) the harms that the absentee parties might suffer, (iii) the establishment of a negative precedent in the instant and/or collateral action, (iv) issues of *res judicata* and collateral estoppel, (v) the potential for state and/or federal courts to respect or recognize the other's prior findings, and (vi) the interests of the courts, and the public, to avoid multiple litigation and to promote the efficient settlement of controversies. *See id.* at 1310.

39.      Here, Atlantic XIII has its own interests/judgment it can pursue elsewhere in state court. And since Atlantic XIII's judgment claims cannot be separated from or between

the joint creditors, any action by Atlantic XIII in state court, while other joint creditors continue to pursue the same recovery in federal court, will undoubtedly subject the Defendants to a substantial risk of double liability and multiple or inconsistent obligations. These two different judgments could also subject the Defendants or the Plaintiffs to negative precedent, and will surely give rise to allegations of collateral estoppel, which always seem to follow, whether meritorious or not.

40.     Additionally, since the Partnership is not a party to this action, and could not be joined, the Partnership will also have to pursue its claims elsewhere. As a consequence, it makes little sense, particularly regarding any desired interest to avoid multiple litigation, to permit diverse Plaintiffs in this case to continue pursuit of their claims, while the non-diverse pursue their claims in state court. It would clearly be more efficient if the non-diverse Plaintiffs joined with Atlantic XIII and the Partnership in a state court action, which action surely will be pursued.

41.     Finally, the Fifth Circuit in *Pulitzer* pronounced that Rule 19's emphasis on the careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be. *Id*. at 1309. Consequently, a district court's decision to dismiss for failure to join an indispensable party is properly reviewed under an abuse of discretion standard. *Id*. (citing *Broussard v. Columbia Gulf Transmission Co*., 398 F.2d 885, 889 (5th Cir. 1968)).

**E.      The Court should strike all pleadings in the Fourth Amended Complaint wherein Plaintiffs exceeded the scope of prior court orders**

42.     In the alternative, and subject to and without waiving their Motion to Dismiss Pursuant to Rules 12(b)(1) and Rule 19(b), Defendants move to dismiss Plaintiffs' FAC or,

alternatively, to strike the noncompliant portions of same, pursuant to Rules 15(a) and 41(b) of the FRCP.[6]

43.     In Plaintiffs' FAC, Plaintiffs added new factual allegations that are unrelated to the citizenship of the parties, *see* FAC p. 6, ¶ 39, including but not limited to the following:

    a.   Plaintiffs added prayers for prejudgment interest. *See* FAC p. 20 (prayer for fraudulent transfer claim), *id*. p. 25 (prayer for alter ego claim against ARI), *id*. pp. 27-28 (prayer for alter ego claim against Gene Phillips), *id*. p. 28 (prayer for punitive damages), *id*. p. 30 (concluding prayer).

    b.   Plaintiffs made substantial changes to their final prayer on P. 30 of the FAC, which now states:

> WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter a preliminary injunction for the relief requested above and render a judgment against the Defendants in favor of David Clapper in the amount of $19,138,453.75 plus post-judgment interest, render a judgment in favor of Atlantic Midwest, LLC in the amount of $42,339,039.13 plus post-judgment interest, and award all other damages that Plaintiffs are entitled to, including pre-judgment interest, punitive damages, costs, attorneys' fees and any other relief the Court deems just under the circumstances.

    c.   Plaintiffs pleaded that Phillips has varying disclosed interests in the Defendant entities. FAC p. 3, ¶ 16.

    d.   Plaintiffs omitted the following allegations regarding Atlantic XIII, LLC:

       i.   The "District Court largely granted summary judgment to" Atlantic XIII, LLC. *Compare* FAC p. 4, ¶ 20, *with* TAC p. 3, ¶ 29.

      ii.   The "Jury reached a verdict in favor of" Atlantic XIII, LLC. *Compare* FAC p. 4, ¶ 26, *with* TAC p. 4, ¶ 35.

     iii.   "Gene Phillips has expressly stated that it [is] his intent to never permit that" Atlantic XIII, LLC "ever collect upon any judgment entered against ART in favor of the Plaintiffs." *Compare* FAC p. 13, ¶ 98, *with* TAC p. 12, ¶ 106.

---

[6] Defendants incorporate by reference Defendants' Motion to Dismiss or Strike Plaintiffs' Third Amended Complaint, Motion for Sanctions, and Brief in Support filed at DE 398, which is equally applicable to Plaintiffs' FAC.

44.     Regarding the TAC, the Court granted Plaintiffs leave solely to add an alter ego claim against ARI and factual allegations to support same (DE 367) and to plead the citizenship of the parties. DE 643. Plaintiffs were not granted leave to assert any other additional claims or factual allegations.[7] Nonetheless, Plaintiffs have alleged numerous additional fraudulent transfers,[8] pleaded facts to support claims that have been -dismissed,[9] purported to allege and seek recovery on the basis that ARI is the alter ego of EQK,[10] and added additional prayers for relief,[11] among other things.[12]

45.     When an amended complaint is filed without written consent or leave of the Court, it is to be stricken. *See Riley v. Goodblatt*, No. 6:09-CV-646-ORL-28GJK, 2009 WL

---

[7] In Plaintiffs' Motion to Remove Atlantic XIII, Plaintiffs mischaracterize the Court's order, stating: "Plaintiffs sought leave to file a Third Amended Complaint to re-add an alter ego claim against ARI (based on new facts and discovery learned during this case), along with ***additional* factual allegations**, which the Court granted in part on March 14, 2017." DE 652 at p. 3 (emphasis added). The proposed Third Amended Complaint attached to Plaintiffs' motion for leave [DE 343] did contain "additional factual allegations"; however, the Court's grant of leave was expressly limited to allegations that support the alter ego claim against ARI, *see* DE 367 at pp. 1, 11, 12, and all other relief was expressly denied. *See id*. at p. 12.

[8] *See* FAC ¶ 117 (assets "taken and not paid for"); *id*. ¶ 116 ("$105 million in cash or assets"); *id*. ¶ 163 ("all of ART's subsidiaries, cash, and other assets"); *id*. ¶ 111(p) ("ART's cash and interest in properties and at least 218 subsidiaries"); *id*. ¶ 163 ("all assets of ART"); *id*. ¶ 134 (stock held in TCI, IOT, EQK, BCM, "and their subsidiaries, as well as the stock held by ART in all of its subsidiaries in the transactions specifically referenced in Paragraph 111").

[9] *See* FAC ¶¶ 63, 79 (single business enterprise claim); *id*. ¶¶ 47, 49, 118 (claim under the Racketeer Influenced and Corrupt Organizations Act); *id*. ¶¶ 44, 118, 122-24 (claim for conspiracy to commit a fraudulent transfer).

[10] *See* FAC p. 25. The Court did not permit Plaintiffs to amend to allege ARI is the alter ego of EQK. To the contrary, in Plaintiffs' motion for leave to add the alter ego claim, Plaintiffs contended ARI and EQK acted as the alter ego of ART. Motion for Leave p. 10 [DE 342]. In their motion for leave, Plaintiffs contended the amendment would assert a "valid claim that could be pursued against ARI and EQK." *Id*. at p. 18. Plaintiffs' motion made no reference to a claim that ARI is the alter ego of EQK.

[11] *See* FAC p. 22 (seeking a constructive trust over "the cash and assets transferred or taken by ARI and EQK from ART and its subsidiaries since 2000. . . ."); *id*. pp. 18-20 (requesting a judgment against Gene Phillips for fraudulent transfer). The Court's order on Plaintiffs' first motion for leave specifically states that the Court "denies plaintiffs' motion for leave to the extent they seek to replead their TUFTA claim against . . . Gene [Phillips]." Mem. Op. & Order p. 6 [DE 367].

[12] *See* FAC ¶¶ 101-02, 104 (alleging that certain transactions were at ARI and Gene Phillips's direction and/or knowledge); *id*. ¶ 121 (stating Defendants have taken positions in pleadings filed under oath with various courts that are contrary to positions they previously took under oath with the IRS and various state agencies); *id*. ¶ 123 (pleading ARI submitted false and untrue documentation regarding transfers of its shares and modified its books and records to reflect the alleged fraudulent transfers of stock); *id*. ¶ 126 (adding that Gene Phillips is the beneficiary of ART's alleged fraudulently transferred assets).

---

1531012, at *1 (M.D. Fla. May 29, 2009); *see also* FED. R. CIV. P. 15(a)(2). As the U.S. District

Court for the Southern District of Texas has explained:

> By filing an amended pleading not in conformity with the parameters established by the Court's Order, the Evans Parties have created **confusion and unnecessary delay** in a case that is **already overly litigious**. Moreover, the Evans Parties have **ignored a Court order** and the Federal Rules of Civil Procedure. Ultimately, the Evans Parties have succeeded **in wasting the Court's limited time and resources** by not adhering to the well-established procedure for amending pleadings or the Court's own orders.
> . . .
> The HEI Parties['] motion for sanctions against the Evans Parties' attorneys will be granted because of the Evans Parties' dogged efforts to waste the resources of this Court. . . . The Evans Parties' wasted the time and judicial resources of this Court and needlessly increased the legal fees of both parties by filing an amended pleading in violation of the Court's Order.

*HEI Res. E. OMG Joint Venture v. S. Lavon Evans, Jr. Operating Co*., No. 5:07-CV-62, 2009

WL 1942538, at *3 (S.D. Tex. July 6, 2009) (emphasis added).

47.     Plaintiffs unilaterally and vexatiously changed the nature of this lawsuit by their

untimely and unauthorized pleadings. Because Plaintiffs' FAC is not in conformity with the

parameters established by the Court's orders, dismissal of the FAC is appropriate. Moreover,

Plaintiffs have acted unreasonably and vexatiously and are therefore subject to sanctions

pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. *See* 28 U.S.C. § 1927 ("Any

attorney or other person admitted to conduct cases in any court of the United States or any

Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously

may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct."); *see also HEI Res. E. OMG Joint Venture*, 2009

WL 1942538, at *3. Accordingly, Defendants move the Court to dismiss the FAC in its entirety,

or, alternatively, to strike the noncompliant portions of the FAC,[13] and to award Defendants their attorneys' fees and costs incurred in responding to Plaintiffs' Third and Fourth Amended Complaints.[14]

# V.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that this Court enter the following orders:

1. That Atlantic XIII is an indispensable party which defeats diversity;

2. That the Partnership is not a party to this action, nor have any claims been asserted for and/or on its behalf;

3. That all pleadings which exceed the scope and leave granted for the TAC and FAC be stricken, and/or alternatively that the said complaints be dismissed;

4. That Defendants be awarded their attorneys' fees and costs incurred in responding to the TAC and FAC; and

5. That this case be dismissed in its entirety due to Plaintiffs failure to establish diversity and under Rule 19(b) FRCP.

Defendants pray for such other and further relief, both general and special, at law and in equity, and for such other relief as they may show themselves to be entitled.

---

[13] Including Paragraphs 16, 39, 44, 47, 49, 63-65, 72, 76, 79, 97, 101-02, 104, 107, 111(p) (and all references to Paragraph 111), 116-18, 121-26, 130-34, 140-41, and 163 of the FAC, and the unnumbered paragraphs immediately following Paragraphs 141, 151, 169, 187, 192, and 202 of the FAC.
[14] This request for attorneys' fees and costs is separate and independent from, and in addition to, any other motions for sanctions Defendants may make in this matter.

Respectfully submitted,


**KELSOE, KHOURY, ROGERS & CLARK, P.C.**

*/s/ Stephen A. Khoury*
STEPHEN A. KHOURY, # 11377500
5323 Spring Valley Rd., Suite 350
Dallas, Texas 75254
Telephone: (972) 661-2227
Fax: (972) 233-4971
Email: sakhoury@kelsoe-law.com

ATTORNEYS FOR ARI and EQK


**THE KENDALL LAW GROUP**

*/s/ Jamie J. McKey*
Jamie J. McKey, # 24045262
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Fax: (214) 744-3015
Email: jmckey@kendalllawgroup.com

ATTORNEYS FOR ART




<u>**CERTIFICATE OF SERVICE**</u>

I certify a copy of this document was forwarded to all counsel of record through the

Court's ECF system on January 16, 2018.

/s/ Stephen A. Khoury
STEPHEN A. KHOURY