IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID M. CLAPPER, Individually, et al., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:14-CV-2970-D |
| VS. | § § | |
| AMERICAN REALTY INVESTORS, INC., et al., | § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction present the principal question whether, in determining diversity jurisdiction, the court should consider the citizenship of a nonparty limited partnership—ART Midwest, L.P. ("ART Midwest")—or only the citizenship of ART Midwest's managing general partner—plaintiff Atlantic Midwest LLC ("Atlantic Midwest")—who brings suit on behalf of the partnership. Concluding that the court should consider the citizenship of ART Midwest, the court grants defendants' motions to dismiss for lack of subject matter jurisdiction because two members of ART Midwest—Atlantic XIII LLC ("Atlantic XIII") and American Realty Trust, Inc. ("ART")—are citizens of Georgia, which makes ART Midwest a Georgia citizen, and ART, a citizen of Georgia, is also a

defendant in the lawsuit.[1]

I

Because this case is the subject of three prior memorandum opinions and orders, *see, e.g., Clapper v. American Realty Investors, Inc.*, 2016 WL 302313 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.) ("*Clapper III*"), the court will recount only the background facts pertinent to this decision.

On August 19, 2014 plaintiffs David M. Clapper ("Clapper"), Atlantic Midwest, and Atlantic XIII filed this lawsuit against numerous defendants. They invoked this court's diversity jurisdiction and also its federal question jurisdiction based on the assertion of a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. *See* Compl. ¶ 1 ("This Court has jurisdiction over this action pursuant to 28 USC §1332, (diversity jurisdiction) and based on a federal question being raised pursuant to RICO."). In *Clapper III*, however, the court dismissed the civil RICO claim. Plaintiffs unsuccessfully sought leave of court to replead that claim.[2] Plaintiffs then filed on March 24, 2017 a third amended complaint that omitted any federal-law claims, including a civil RICO claim.

In December 2017 the court had under consideration various pending motions. As

---

[1]Even if the court assumes *arguendo* that it should disregard ART's citizenship on the plaintiffs' side of the controversy since it is a defendant, the Georgia citizenship of Atlantic XIII is sufficient to destroy complete diversity.

[2]The court denied plaintiffs' motion for leave to file a third complaint to the extent they sought to replead their civil RICO claim.

part of the decisional process, it reviewed the third amended complaint. In doing so, it noted that plaintiffs predicated subject matter jurisdiction on diversity of citizenship, 28 U.S.C. § 1332, but it concluded that the third amended complaint failed to allege properly the citizenship of plaintiffs Clapper, Atlantic XIII, and Atlantic Midwest, and defendants Prime Income Asset Management, LLC, and Gene Phillips ("Phillips"). Because diversity jurisdiction was then the sole basis for the court's subject matter jurisdiction, the court ordered plaintiffs to amend their complaint to properly plead the citizenship of the parties specified in the order. In response, plaintiffs filed the instant fourth amended complaint ("FAC").[3]

In the FAC, plaintiffs allege claims against defendants American Realty Investors Inc., ART, and EQK Holdings Inc. (collectively, the "Entity Defendants") and Phillips for fraudulent conveyance, in violation of the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001 et seq. (West 2015); unjust enrichment/constructive trust; and alter ego. Plaintiffs' claims all center on the theory that defendants are attempting to evade a final judgment entered by Judge Godbey in 2016 (the "Final Judgment") at the culmination of an extensive litigation process, including an appeal to the Fifth Circuit.

The Final Judgment awards various sums to individual parties and combinations of parties by paragraph. One such party, relevant to the instant motion, is ART Midwest. As

---

[3]The FAC omits Atlantic XIII as a plaintiff. Under the court's reasoning, however, it does not matter that Atlantic XIII is not a plaintiff because its citizenship still determines ART Midwest's citizenship, and it is ART Midwest's citizenship that controls when determining the citizenship of plaintiffs' side of the suit. *See infra* § II(C).

of the 1998 First Amended and Restated Agreement of Limited Partnership of ART Midwest, L.P. (the "Partnership Agreement"), the known members of ART Midwest are "ART Midwest, Inc., as the Managing General Partner, Atlantic Midwest, LLC, a Michigan limited liability company . . . as the Non-Managing General Partner . . . and American Realty Trust, Inc., as the Class B Limited Partner." D. App. 110. Exhibit A of the Partnership Agreement also lists Atlantic XIII as a Class A Limited Partner of ART Midwest. *Id*. at 156.

The paragraph of the Final Judgment relevant to ART Midwest states:

> Atlantic Midwest, *on behalf of the Partnership*, has judgment against ART for its breach of section 4.02(d) of the Partnership Agreement in the amount of $10,554,914, together with prejudgment interest from the date of breach, March 22, 1999 through October 11, 2011, at the rate of 19% simple interest per annum in the amount of $25,175,738.70, for a total amount through October 11, 2011 of $35,730,652.70.

Final Judgment ¶ 5 (emphasis added). The Final Judgment also specifies:

> Atlantic Midwest has declaratory judgment that it is the managing general partner of the ART Midwest L.P. (the "Partnership") as of December 9, 1999, and *is entitled to assert legal claims on behalf of the Partnership* and wind up the Partnership's affairs[.]

Final Judgment ¶ 4 (emphasis added).

In connection with their filing of the FAC, plaintiffs filed amended Rule 26(a)(1) disclosures regarding the damages they seek. Relevant, in part, to Atlantic Midwest and ART Midwest, plaintiffs' Fifth Amended and Restated Rule 26 disclosures ("Fifth Rule 26

- 4 -

disclosures")[4] state:

> In addition to the turnover relief requested in Count I of Plaintiffs' Fourth Amended Complaint, Atlantic Midwest, LLC seeks damages in the amount of $10,554,914, together with prejudgment interest from March 22, 1999 through October 11, 2011, at the rate of 19% simple interest per annum in the amount of $25,175,738.70, for a total amount through October 11, 2011 of $35,730,652.70, plus post-judgment interest at the rate of 0.11%, compounded annually, beginning October 12, 2011 until paid in full, *as set forth in paragraph 5* of the Final Judgment, plus punitive damages in an amount exceeding $10,000,000.00, prejudgment interest, post-judgment interest, attorneys fees, and costs in this matter.

P. App. 22 (emphasis added).

After plaintiffs filed the FAC, the Entity Defendants moved to dismiss pursuant to Rule 12(b)(1) and Rule 19 for lack of subject matter jurisdiction and to strike the FAC pursuant to Rule 41. Phillips also moved to dismiss the case under Rule 12(b)(1) for lack of subject matter jurisdiction and for want of standing, or, alternatively, to strike the FAC.

Phillips and the Entity Defendants maintain that, because ART Midwest, not Atlantic Midwest, is the real party to the controversy, the court must look to the citizenship of ART Midwest when determining whether the parties are diverse citizens. They contend that the Georgia citizenship of two members of ART Midwest—Atlantic XIII and ART—destroys diversity because ART is also a defendant in the lawsuit. Plaintiffs rely on the Final Judgment's designation of Atlantic Midwest as a party with the authority to bring suit on

---

[4]The court considers the Fifth Rule 26 disclosures in interpreting what Atlantic Midwest is seeking in this suit.

- 5 -

behalf of the partnership as evidence that ART Midwest is not the real party to the controversy. Plaintiffs oppose the motions of Phillips and the Entity Defendants.[5]

II

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

A Rule 12(b)(1) motion challenging the court's subject matter jurisdiction can mount either a facial or factual challenge. *See, e.g.*, *Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb.19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id*. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations

---

[5]In the process of filing the FAC, plaintiffs discovered that a member of Atlantic XIII is a citizen of Georgia, the same state of which defendant ART, a Georgia corporation, is a citizen. The Entity Defendants and Phillips also move to dismiss for lack of subject matter jurisdiction on the basis that the citizenship of Atlantic XIII, an indispensable party, destroys diversity. Because the court is deciding the motions to dismiss on other grounds, it need not address whether this case should be dismissed on this basis.

are sufficient to allege jurisdiction, the court must deny the motion." *Id.* at *2 (citations omitted). "If, however, the defendant supports the motion with affidavits, testimony, or other evidentiary materials, then the attack is 'factual' and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence." *MacKenzie v. Castro*, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (Fitzwater, J.).

"[C]omplete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) (alteration in original) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). The party seeking the federal forum has the burden of establishing diversity jurisdiction. *Id.*

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). "The 'real party to the controversy' test does not require a federal court to consider the citizenship of non-parties who have an interest in the litigation or might be affected by the judgment." *KeyBank Nat. Ass'n v. Perkins Rowe Assocs., L.L.C.*, 539 Fed. Appx. 414, 416 (5th Cir. 2013) (per curiam) (citing *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 855 (5th Cir. 2003)). "The 'real party to the controversy' test requires consideration of the citizenship of non-parties when a party already before the court is found to be a non-stake holder/agent suing only on behalf of another." *Id.* The court relies on a variety of factors, including who has legal title, manages the assets, and controls the litigation, when determining the real party to the controversy. *Navarro*, 446 U.S. at 465.

B

While the determination of citizenship for the purpose of diversity jurisdiction is a matter of federal law, *see Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004), the court looks to Texas law of partnerships to "define the substantive rights of the parties and the interests concerned." *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1548 n.3 (5th Cir. 1985) (Rule 19 case). Under Texas law, "a partner may individually sue for the benefit of the partnership and other partners." *ART Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206, 217 (5th Cir. 2014) (citing *R & R White Family Ltd. P'ship v. Jones*, 182 S.W.3d 454, 458 (Tex. App. 2006, no pet.). In this lawsuit, Atlantic Midwest is a plaintiff. ART Midwest has not participated as a party at any time during the litigation, nor is it referenced in the FAC or in the Fifth Rule 26 Disclosures. The evidence before the court indicates, however, that Atlantic Midwest is bringing its claims on behalf of the partnership: ART Midwest. Plaintiffs' Fifth Rule 26 Disclosures specify that Atlantic Midwest seeks damages based on ¶ 5 of the Final Judgment, which awards money to "Atlantic Midwest, *on behalf of the Partnership*." *Id.* (emphasis added). The Final Judgment designates Atlantic Midwest as the Managing General Partner with the power to assert such legal claims on behalf of ART Midwest. And the Partnership Agreement grants the Managing General Partner the authority "to prosecute, defend, arbitrate, or compromise any and all claims or liabilities in favor of or against the Partnership[.]" D. App. 133.

Thus although Atlantic Midwest is bringing this suit in its individual capacity, it is asserting a partnership cause of action that "belongs to and is the specific property of the

partnership[.]" *MacLean v. McCarroll*, 2009 WL 1882838, at *2 (E.D. Tex. June 30, 2009). Under Texas law, a partner cannot bring suit for a fractional share of a partnership cause of action. *See Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1176 (5th Cir. 1985). In this case, then, any funds recovered by Atlantic Midwest from defendants ultimately inure to the benefit of the partnership—ART Midwest—not to Atlantic Midwest individually. *See RMP Consulting Grp., Inc. v. Datronic Rental Corp.*, 179 F.R.D. 614, 620 (N.D. Okla. 1998), *aff'd on these grounds*, 189 F.3d 478 (10th Cir. 1999) (holding that evidence that limited partnership was "the actual owner of the assets and the claims central to this litigation" indicated it was real party to the controversy).

Plaintiffs have not demonstrated that ART Midwest is not involved in this litigation. *Cf. id.* (finding that deposition testimony indicated that limited partnership was actively participating in litigation). Plaintiffs merely point to various procedural moves throughout the litigation, which they maintain indicate that ART Midwest's status is that of a nominal party.[6] They fail, however, to offer evidence that any of these decisions rested on *Navarro* precedent. Thus plaintiffs have not shown that they are relevant to the status of the ART Midwest as a real party to the controversy for the purposes of diversity jurisdiction.

Because it is clear that Atlantic Midwest seeks to recover damages on behalf of the

---

[6]Plaintiffs refer to the parties' decision to dismiss ART Midwest from the original 1999 lawsuit. They also state that Judge Godbey and the Fifth Circuit referred to ART Midwest as a "nominal" party in later orders. Finally, plaintiffs refer to counsel's decision to voluntarily dismiss the complaint on behalf of ART Midwest alleging breach of fiduciary duty.

ART Midwest partnership, the court follows the precedent of several other circuits and holds that ART Midwest is the real party to the controversy whose citizenship is determinative of diversity jurisdiction. *See Halleran v. Hoffman*, 966 F.2d 45, 48 (1st Cir. 1992) (holding where "there can be no doubt that suit was brought for and on behalf of [the limited partnership] . . . the citizenship of [the limited partnership]—which is that of all of its general and limited partners—must be considered in determining whether there is diversity jurisdiction"); *Stouffer Corp. v. Breckenridge*, 859 F.2d 75, 76 (8th Cir. 1988) (holding that when general partner brought action on behalf of limited partnership against a Missouri citizen, court was also required to consider limited partners for purposes of diversity); *RMP Consulting*, 179 F.R.D. at 620 (holding limited partnership was real party to the controversy whose citizenship must be considered even when suit was brought in individual name of general partner); *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1261 (3d Cir. 1977) (holding where general partner sues on behalf of partnership, court must consider citizenship of all partners); *cf. Chapman v. Barney*, 129 U.S. 677 (1889) (holding citizenship of all members of joint stock company acting as partnership must be considered, even though suit brought on behalf of company by president). This rule accords with the principle that parties may not manufacture diversity jurisdiction.[7] Holding to the contrary would allow a limited partnership plaintiff to "generate or avoid federal jurisdiction by filing

---

[7] 28 U.S.C. § 1359 states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

in its own name or the name of its general partner as it chooses." *RMP Consulting*, 179 F.R.D. at 621. And plaintiffs have provided no persuasive authority to the contrary.

Citing *Maiden v. N.A. Stainless, L.P.*, 125 Fed. Appx. 1 (6th Cir. 2004), plaintiffs maintain that Atlantic Midwest is the real party in interest because it holds a judgment issued in its own name. *See id*. at 3 ("[T]he real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law."). This definition, however, applies to Rule 17(a), which is independent of "real party to the controversy" test in *Navarro*. Rule 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." The Supreme Court noted in *Navarro*:

> There is a "rough symmetry" between the "real party in interest" standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases. In appropriate circumstances, for example, a labor union may file suit in its own name as a real party in interest under Rule 17(a). To establish diversity, however, the union must rely upon the citizenship of each of its members.

*Navarro*, 446 U.S. at 463 (internal citations omitted).

Thus, even assuming *arguendo* that Atlantic Midwest is a real party in interest under Rule 17(a), the court would not be precluded from concluding under *Navarro* that it should look to the citizenship of the partnership in determining diversity jurisdiction. Plaintiffs thus have not carried their burden to establish that ART Midwest is not the real party to the controversy.

C

Accordingly, the court looks to the citizenship of ART Midwest, not Atlantic Midwest, when determining whether there is complete diversity of citizenship.

As noted above, diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). "This means that no plaintiff can be a citizen of the same state as even one defendant." *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 WL 1627922, at *1 (N.D. Tex. June 8, 2006) (Fitzwater, J.).

For the reasons explained, on the plaintiffs' side of the suit, ART Midwest's citizenship controls, even though it is not a named party-plaintiff. Because ART Midwest is a limited partnership, its citizenship is based on the citizenship of each of its members. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that citizenship of unincorporated association is based on citizenship of each member). Two members of ART Midwest—Atlantic XIII and ART—are citizens of Georgia. Atlantic XIII is a citizen of Georgia based on the Georgia citizenship of one of its members.[8] ART is a citizen of Georgia based on its state of incorporation. *See* FAC ¶ 7 (alleging that ART is citizen, *inter alia*, of Georgia). Accordingly, ART Midwest is deemed a Georgia citizen. ART, a citizen of Georgia, is also a party on defendants' side of the suit. Because there are Georgia citizens

---

[8]Atlantic XII, L.P. ("Atlantic XII") is a member of Atlantic XIII. Atlantic XII comprises partners who are citizens of a number of states, including Georgia.

on both sides of the controversy, the court cannot exercise diversity jurisdiction.[9] Accordingly, the Entity Defendants' and Phillips' motions to dismiss are granted.[10]

III

A

Although plaintiffs can now pursue this litigation against defendants in state court, because this case has been pending in this court since August 19, 2014, the court will give plaintiffs 21 days from the date this memorandum opinion and order is filed to move for any available relief that would enable this court to exercise subject matter jurisdiction.[11] This may include demonstrating sufficient grounds for this court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), considering that the court had federal-question

---

[9]Because the court concludes that it lacks diversity jurisdiction, it does not reach defendants' arguments for the premise that ART Midwest is the real party in interest under Rule 17(a). The court also does not reach defendants' motions to dismiss for lack of standing.

[10]This holding is consistent with the Fifth Circuit's decision in *Corfield*. *Corfield* addressed the question whether the citizenship of a Lloyd's of London underwriter suing on his own behalf, or the citizenship of every underwriter subscribing to a Lloyd's policy must be considered when determining diversity jurisdiction. *Corfield*, 355 F.3d at 855. The court held that only the citizenship of the underwriter suing on his own behalf need be considered. *Id*. at 864. The court pointed to a number of factors, inapplicable in this case, that compelled such a result. The court stated that "the very essence of a Lloyd's policy is that it is a collection of individual contracts running between the insured and each [underwriter]." *Id*. The court also explained, "[t]he severability of each Name's liability to the insured lends further support to the conclusion that a Name can be sued individually." *Id*. These unique qualities of a Lloyd's of London policy, which dictated the outcome in *Corfield*, do not apply to a limited partnership.

[11]The court does not suggest that there is such relief. But it concludes that plaintiffs should be afforded the opportunity, if they so desire, to attempt to establish that relief is available.

jurisdiction at the time the lawsuit was filed. Of course, "when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc). In the present case, no federal claim remains, and the suit is still at the pretrial stage. Accordingly, it would appear that the general rule should apply, that this court should decline to exercise supplemental jurisdiction, and that plaintiffs should now re-file their lawsuit in state court. Nevertheless, to ensure that the court reaches a just result, it will permit plaintiffs to move for any available relief that would result in retaining this case in this court, assuming, of course, that this is their preference.

B

Except for any motion that plaintiffs file under the terms of § III(A) of this memorandum opinion and order, no party may file any prejudgment motion of any kind in this civil action without first moving for and obtaining leave of court.

* * *

The Entity Defendants' January 16, 2018 motion to dismiss pursuant to Rule 12(b)(1) and defendant Phillips' January 16, 2018 motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction are granted. Because the court does not have subject matter jurisdiction and may dismiss this action in due course, all pending motions other than

these two motions to dismiss are denied without prejudice.[12]

**SO ORDERED**.

February 28, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[12]If the court later determines that this suit should not be dismissed, it can statistically reopen any pending motions and address them based on the briefing already on file.