```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF TEXAS
           DALLAS DIVISION
```

DAVID M. CLAPPER, Individually, §
et al., §
 §
 Plaintiffs, §
 § Civil Action No. 3:14-CV-2970-D
VS. §
 §
AMERICAN REALTY INVESTORS, §
INC., et al., §
 §
 Defendants. §

## MEMORANDUM OPINION
## AND ORDER

In *Clapper v. American Realty Investors, Inc.*, 2018 WL 1083609, at \*1 (N.D. Tex. Feb. 28, 2018) (Fitzwater, J.) ("*Clapper IV*"), the court granted defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, but granted plaintiffs leave to move for any available relief that would enable the court to exercise subject matter jurisdiction. In response, plaintiffs filed a motion for leave to file a fifth amended complaint, or, alternatively, to remove plaintiffs Atlantic XIII, LLC ("Atlantic XIII") and Atlantic Midwest, LLC ("Atlantic Midwest") (collectively, the "Atlantic entities") as parties in their fifth amended complaint under Rule 21. Concluding in its discretion that it should exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), the court denies plaintiffs' motion for leave to file a fifth amended complaint and their motion to remove the Atlantic entities from the lawsuit.

I

Because this case is the subject of four prior memorandum opinions and orders, *see, e.g., Clapper v. American Realty Investors, Inc.*, 2016 WL 302313 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.) ("*Clapper III*"), the court will recount only the background facts pertinent to this decision.

On August 19, 2014 plaintiffs David M. Clapper ("Clapper"), Atlantic Midwest, and Atlantic XIII filed this lawsuit against numerous defendants. They invoked this court's diversity jurisdiction and also its federal question jurisdiction based on the assertion of a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. *See* Compl. ¶ 1 ("This Court has jurisdiction over this action pursuant to 28 USC § 1332, (diversity jurisdiction) and based on a federal question being raised pursuant to RICO."). In *Clapper III*, however, the court dismissed the civil RICO claim. Plaintiffs unsuccessfully sought leave of court to replead that claim.[1] They then filed on March 24, 2017 a third amended complaint that omitted any federal-law claims, including a civil RICO claim.

In December 2017 the court had under consideration various pending motions. As part of the decisional process, it reviewed the third amended complaint. In doing so, it noted that plaintiffs predicated subject matter jurisdiction on diversity of citizenship, 28 U.S.C. § 1332, but it concluded that the third amended complaint failed to allege properly the

---

[1] The court denied plaintiffs' motion for leave to file a third complaint to the extent they sought to replead their civil RICO claim.

citizenship of plaintiffs Clapper, Atlantic XIII, and Atlantic Midwest, and defendants Prime Income Asset Management, LLC, and Gene Phillips ("Phillips").  Because diversity jurisdiction was then the sole basis for the court's subject matter jurisdiction, the court ordered plaintiffs to amend their complaint to properly plead the citizenship of the parties specified in the order.  In response, plaintiffs filed a fourth amended complaint ("fourth complaint").[2]

In the fourth complaint, plaintiffs allege claims against defendants American Realty Investors Inc., American Realty Trust, Inc. ("ART"), and EQK Holdings Inc. (collectively, the "Entity Defendants") and Phillips for fraudulent conveyance, in violation of the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2015) ("TUFTA"); unjust enrichment/constructive trust; and alter ego.  Plaintiffs' claims all center on the theory that defendants are attempting to evade a final judgment entered by Judge Godbey at the culmination of extensive litigation, including an appeal to the Fifth Circuit.

After plaintiffs filed the fourth complaint, the Entity Defendants moved to dismiss pursuant to Rule 12(b)(1) and Rule 19 for lack of subject matter jurisdiction and to strike the fourth complaint pursuant to Rule 41.  Phillips also moved to dismiss the case under Rule 12(b)(1) for lack of subject matter jurisdiction and for want of standing, or, alternatively, to

---

[2]The fourth complaint omitted Atlantic XIII as a plaintiff.  Under the court's reasoning, however, it did not matter that Atlantic XIII was not a plaintiff because its citizenship still determined ART Midwest's citizenship, and it was ART Midwest's citizenship that controlled when determining the citizenship of plaintiffs' side of the suit.

strike the fourth complaint. Phillips and the Entity Defendants maintained that, because ART Midwest, not Atlantic Midwest, was the real party to the controversy, the court was required to look to the citizenship of ART Midwest when determining whether the parties were diverse citizens. They contended that the Georgia citizenship of two members of ART Midwest—Atlantic XIII and ART—destroyed diversity because ART was also a defendant in the lawsuit. The court agreed and granted defendants' motion to dismiss in *Clapper IV*. But the court also concluded that, although plaintiffs could pursue litigation against defendants in state court, because this case had been pending in this court since August 19, 2014, it would grant plaintiffs leave to move for any available relief that would enable the court to exercise subject matter jurisdiction. Plaintiffs then moved for leave to file an amended complaint pleading supplemental jurisdiction, or, in the alternative, to remove the Atlantic entities from the lawsuit. Plaintiffs' motion, which defendants oppose, is now before the court for decision.

II

Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), "when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc). To determine whether to exercise jurisdiction, the court balances "the

statutory factors set forth by 28 U.S.C. § 1367(c)," "the common law factors of judicial economy, convenience, fairness, and comity," and the threat of "improper forum manipulation." *Burnett v. Petroleum Geo-Servs., Inc.*, 2013 WL 1723011, at *5 (N.D. Tex. Apr. 22, 2013) (Fitzwater, C.J.) (citing *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011)). The statutory factors are "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction." *Enochs*, 641 F.3d at 159 (citing 28 U.S.C. § 1367(c)). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (internal citation omitted). While forum manipulation should be considered, the courts have repeatedly held that amending a complaint to delete all federal claims is not a pernicious forum manipulation. *See, e.g., Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 335 (5th Cir. 1999) (stating it is not improper forum manipulation to delete federal claims). This is because "plaintiffs get to pick their forum and pick the claims they want to make unless they are blatantly forum shopping." *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999).

III

A

The second and third statutory factors favor declining to exercise supplemental jurisdiction and dismissing the case. The court has dismissed the claim over which it had

federal-question jurisdiction (civil RICO claim), and state-law claims not only *substantially* predominate, they *completely* predominate because there are no federal-law claims remaining. These factors, however, are counterbalanced by the common law factors, particularly judicial economy. *See Mendoza*, 532 F.3d at 346 (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (affirming decision to exercise supplemental jurisdiction after dismissal of all federal claims)).

"[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)). It is not clear, however, what counts as an "early stage" in the litigation. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586 (5th Cir. 1992) (noting that earlier case law had left the phrase undefined). In determining whether the district court abused its discretion when deciding whether to exercise supplemental jurisdiction, the Fifth Circuit has considered the amount of time elapsed in the litigation, the length of time remaining until trial, and the amount of discovery completed. *Compare Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991) (finding abuse of discretion where court dismissed case on eve of trial after four years of litigation, thousands of pages of record and discovery, and preparation of pretrial order exceeding 200 pages), *and Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (finding abuse of discretion where case was dismissed less than one month before trial after two years of litigation, over 300 pleadings, and extensive

discovery taken under federal rules) *with Parker & Parsley*, 972 F.2d at 587 (finding abuse of discretion where case was retained after nine months of litigation and a few weeks remained before trial but parties were "not ready for trial"), *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 373 Fed. Appx. 438, 443 (5th Cir. Apr.12, 2010) (per curiam) (finding no abuse of discretion where district court dismissed case based on complexity of state-law issues, even after over 7,000 pages of discovery and 29 depositions), *and Brim v. ExxonMobil Pipeline Co.*, 213 Fed. Appx. 303, 306 (5th Cir. 2007) (per curiam) (affirming dismissal where, at the time of summary judgment, parties were approximately one year into litigation, two months remained until trial, and, although parties had completed some discovery, two discovery disputes had not been settled by court, and parties could use any trial preparation, legal research, and discovery in state court proceedings).

This case has been pending in this court for almost 46 months. When the court ruled on defendants' motions to dismiss for lack of subject matter jurisdiction in late February 2018,[3] the trial setting order, which set the trial date for late February 2018, had only recently been vacated so that the court could rule on several pending motions. *See Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (finding abuse of discretion when district court declined to exercise supplemental jurisdiction in case pending for almost three years

---

[3]Defendants maintain that the court should consider only the judicial resources that were expended until the time the federal claim was dismissed. The court disagrees. The Fifth Circuit considers the state of the litigation at a later time. *See D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 207 (5th Cir. 2018) (considering federal judicial resources expended up to time motion to dismiss for lack of subject matter jurisdiction was filed).

and scheduled to begin trial one month later). An extensive amount of, if not all, discovery had already been completed, and multiple depositions had been taken. *See Smith*, 298 F.3d at 447 (common law factors favor exercising supplemental jurisdiction where "instant case has been pending for almost three years, the parties have taken numerous depositions, and the matter had progressed to the advanced stages of litigation with little left to do before trial"). Although defendants point out that a majority of the opinions in this case were issued by the magistrate judge, the undersigned district judge is familiar with the merits of the case. The court has issued multiple opinions on motions to dismiss and is well-versed in the lengthy history of the case in this court. *See Batiste*, 179 F.3d at 227 (holding that judicial economy supported exercising supplemental jurisdiction where there were numerous depositions and discovery disputes in federal court and district court had given significant consideration to multiple motions to dismiss claims or grant summary judgment). Were this case to begin anew in state court, the state court judge would face the burdensome task of becoming acquainted with the multi-year federal-court history of the parties' dispute in multiple lawsuits.

B

Moreover, even if the court assumes *arguendo* that it should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), it would grant plaintiffs' alternative motion to sever the Atlantic entities under Rule 21[4] in order to preserve diversity jurisdiction

---

[4]The court would do so on the basis that the Atlantic entities are not parties required to be joined under Rule 19.

over the balance of the suit. Clapper's claims would remain pending in this court, and the Atlantic entities would likely seek relief for the same claims in state court.[5] Judicial resources would be better conserved by avoiding such simultaneous, duplicative litigation and instead disposing of the claims of all plaintiffs in one forum. The court thus concludes that judicial economy weighs in favor of exercising supplemental jurisdiction.

C

The remaining *Gibbs* factors do not support dismissal. Defendants point to no unfairness that would result should the court exercise supplemental jurisdiction, and considering that the remaining issues are not particularly complex,[6] comity concerns are minimal. While improper forum manipulation factors into the court's decision whether to exercise supplemental jurisdiction, *see Enochs*, 641 F.3d at 159 (citing *Carnegie-Mellon*, 484 U.S. at 357) ("[w]e are also instructed to guard against improper forum manipulation"),

---

[5]The court notes that plaintiffs filed a lawsuit in state court on April 27, 2018. This action appears to be in response to the court's April 4, 2018 order. In that order the court stated that plaintiffs could ameliorate their concern that the statute of repose would extinguish their fraudulent transfers claims on April 28, 2018 by filing a suit in state court prior to that date and then dismissing that suit if the court decided to exercise supplemental jurisdiction in this case. Because it seems apparent that plaintiffs filed the state-court suit to protect their interests in accordance with the court's suggestion, the pendency of the state court case does not bear upon the factor of judicial economy.

[6]Defendants maintain that plaintiffs' lawsuit implicates a number of novel and complex legal issues, including whether ART's transfer of its shares to EQK and ARI was made for reasonably equivalent value, whether special purpose entities qualify as debtors under TUFTA, and whether the statute of repose under TUFTA can be tolled. Defendants fail to explain why such issues would not involve a straightforward application of law or why they are particularly complex.

defendants fail to present compelling evidence or argument that such manipulation occurred here. In any case, forum manipulation "is not so serious of a concern that it can become a trump card which overrides all of the other factors we are instructed to consider and balance." *Enochs*, 641 F.3d at 161.

D

The court thus concludes that the statutory and common law factors collectively weigh in favor of exercising supplemental jurisdiction over plaintiffs' remaining state-law claims.[7]

IV

The court will consider whether to statistically reopen any motions that were pending at the time the court dismissed this case. Within 14 days of the date this memorandum opinion and order is filed, a party requesting that a motion be statistically reopened must file a request that identifies the motion by the ECF document number and the motion's title. No motions may be filed in this case without leave of court until the court lifts the ban on motions that it previously imposed.

---

[7]The court denies plaintiffs' motion for leave to amend their complaint under Rule 16(b)(4) to plead supplemental jurisdiction. A formal amendment of the complaint is unnecessary because the court has determined in its discretion that it will exercise supplemental jurisdiction. And because the court's subject matter jurisdiction is now based on supplemental jurisdiction under 28 U.S.C. § 1367(a), not diversity jurisdiction, the court also denies plaintiffs' alternative motion to remove Atlantic XIII and Atlantic Midwest as plaintiffs from the fifth amended complaint.

\* \* \*

For the reasons explained, the court in its discretion chooses to exercise supplemental jurisdiction over the remaining state-law claims in this lawsuit. Plaintiffs' motion for leave to file fifth amended complaint pursuant to the court's order dated February 28, 2018, or in the alternative, motion to remove plaintiff Atlantic XIII and Atlantic Midwest as parties in plaintiff's fifth amended complaint pursuant to Fed. R. Civ. P. 21 is denied without prejudice.

**SO ORDERED**.

June 6, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE