IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAVID M. CLAPPER, Individually, §
et al., §
 §
        Plaintiffs, §
 § Civil Action No. 3:14-CV-2970-D
VS. §
 §
AMERICAN REALTY INVESTORS, §
INC., et al., §
 §
        Defendants. §

MEMORANDUM OPINION
AND ORDER

In this memorandum opinion and order,[1] the court addresses the following motions and objection to a magistrate judge order: (1) defendants' September 12, 2018 motion to amend the scheduling order and extend expert discovery;[2] (2) plaintiffs' October 8, 2018 objection to footnote 1 of the magistrate judge's September 24, 2018 order; (3) plaintiffs' October 10, 2018 motion to clarify or correct the court's statement as to the operative complaint in the court's August 14, 2018 summary judgment ruling pursuant to Fed. R. Civ. P. 60(a) or Fed. R. Civ. P. 54(b), or in the alternative, motion to file fifth amended complaint,

---

[1]Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

[2]This motion requests other relief, such as expedited briefing and an expedited ruling. The court has declined to order expedited briefing, and it is deciding this motion under the usual schedule contemplated by the local civil rules.

or in the alternative, motion for entry of default; and (4) defendant Gene Phillips' ("Phillips'") October 10, 2018 motion to reconsider in part the court's denial of his motion for summary judgment in the August 14, 2018 memorandum opinion and order. Except as pertinent to the decisions in this memorandum opinion and order, the court will not set out the background facts and procedural history because they can be found in the court's prior opinions in this case.³

I

The court turns first to plaintiffs' motion to clarify or correct the court's statement as to the operative complaint in the summary judgment ruling, or, in the alternative, motion to file fifth amended complaint, or, in the alternative, for entry of default. This motion concerns Atlantic XIII, LLC's ("Atlantic XIII's") party status.

---

³For the assistance of the parties and the successor judge, the court notes that the following memorandum opinions and orders have been filed in this case and have been, or can be, identified by the shorthand reference shown for each: *Clapper v. American Realty Investors, Inc.*, 2015 WL 264711 (N.D. Tex. Jan. 21, 2015) (Fitzwater, J.) ("*Clapper I*"); *Clapper v. American Realty Investors, Inc.*, 2015 WL 3504856 (N.D. Tex. June 3, 2015) (Fitzwater, J.) ("*Clapper II*"); *Clapper v. American Realty Investors, Inc.*, 2016 WL 302313 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.) ("*Clapper III*"); *Clapper v. American Realty Investors, Inc.*, 2017 WL 978098 (N.D. Tex. Mar. 14, 2017) (Fitzwater, J.) ("*Clapper IV*"); *Clapper v. American Realty Investors, Inc.*, 2018 WL 1083609 (N.D. Tex. Feb. 28, 2018) (Fitzwater, J.) ("*Clapper V*"); *Clapper v. American Realty Investors, Inc.*, 2018 WL 2739014 (N.D. Tex. June 6, 2018) (Fitzwater, J.) ("*Clapper VI*"); *Clapper v. American Realty Investors, Inc.*, 2018 WL 3769831 (N.D. Tex. Aug. 9, 2018) (Fitzwater, J.) ("*Clapper VII*"); and *Clapper v. American Realty Investors, Inc.*, 2018 WL 3868703 (N.D. Tex. Aug. 14, 2018) (Fitzwater, J.) ("*Clapper VIII*").

A

For the reasons that follow, the court grants plaintiffs' alternative motion to file a fifth amended complaint.

1

On December 5, 2017, when the court ordered that plaintiffs file an amended complaint to properly allege the citizenship of certain parties, plaintiffs' operative pleading was their third amended complaint ("3AC"), filed March 24, 2017. When in response to the court's order plaintiffs filed their fourth amended complaint ("4AC") on December 26, 2017, they dropped Atlantic XIII as a plaintiff. When plaintiffs moved on December 27, 2017 to confirm the court's December 5, 2017 order, or, in the alternative, for leave to remove plaintiff Atlantic XIII as a party in plaintiffs' 4AC pursuant to Fed. R. Civ. P. 21, the court denied the motion. In its order it stated that it did not intend by its December 5, 2017 order to permit plaintiffs to remove a party; it intended to require that they properly plead the citizenship of certain parties to this lawsuit so that the court could ensure that it had subject matter jurisdiction based on complete diversity of citizenship. The court also stated that a ruling on plaintiffs' alternative motion for leave to remove Atlantic XIII as a party in plaintiffs' 4AC pursuant to Rule 21 would be made in due course, after receiving briefing under the usual rules and time limits. Dec. 27, 2017 Order at 1.

The court never explicitly addressed plaintiffs' alternative motion, however, due to the course that the litigation took thereafter. On February 28, 2018 the court granted defendants' motions to dismiss for lack of subject matter jurisdiction. *See Clapper v. Am.*

*Realty Inv'rs, Inc.*, 2018 WL 1083609, at *5 (N.D. Tex. Feb. 28, 2018) (Fitzwater, J.) ("*Clapper V*").[4]  Because the case had been pending since August 19, 2014, however, the court gave plaintiffs an opportunity to move for any available relief that would enable the court to exercise subject matter jurisdiction, including demonstrating sufficient grounds for the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a).  *Id.* at *6.

On March 21, 2018 plaintiffs filed a motion for leave to file a fifth amended complaint ("5AC"), or, in the alternative, to remove Atlantic XIII and Atlantic Midwest, LLC as parties in plaintiffs' 5AC pursuant to Rule 21.  When on June 6, 2018 the court issued its decision in *Clapper VI* concluding that it would exercise supplemental jurisdiction, it denied that motion without prejudice.  *Clapper v. Am. Realty Inv'rs, Inc.*, 2018 WL 2739014, at *5 (N.D. Tex. June 6, 2018) (Fitzwater, J.) ("*Clapper VI*").  Although the court did not elaborate on its reasoning for doing so, its intent is reflected in the following introductory statement in *Clapper VI*: "Concluding in its discretion that it should exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), the court denies plaintiffs' motion for leave to file a fifth amended complaint and their motion to remove the Atlantic entities from the lawsuit."  *Id.* at *1.  In other words, the court was expressing the view that, because it had decided to exercise supplemental jurisdiction over the case as it stood—with non-diverse parties—it saw no need for plaintiffs to file a 5AC or to remove the Atlantic entities from the lawsuit.

When the court in *Clapper VIII* referred to the 4AC as the operative complaint, it did

---

[4]In *Clapper VI* the court inadvertently referred to *Clapper V* as *Clapper IV*.  *See, e.g.*, *Clapper VI*, 2018 WL 2739014, at *1.

not, as plaintiffs now maintain, do so mistakenly or erroneously. The 4AC *was* plaintiffs' operative complaint at that time, as it is now. But the effect of denying in *Clapper VI* plaintiffs' motion for leave to file the 5AC was to retain the 4AC in place. And leaving the 4AC in place as the operative pleading was ultimately incongruent with the court's intention to exercise supplemental jurisdiction despite the presence of all the parties who were plaintiffs at the time the 3AC was filed. That the court contemplated that these same three plaintiffs would continue to prosecute this case is apparent from the very first sentence of the court's opinion in *Clapper VIII*, in which it treated Atlantic XIII as one of the three plaintiffs: "This is an action by plaintiffs David M. Clapper ('Clapper'), Atlantic Midwest, LLC ('Atlantic Midwest'), and *Atlantic XIII, LLC ('Atlantic XIII')* against defendants . . . seeking to collect a multi-million judgment based on state-law claims for fraudulent transfer, unjust enrichment/constructive trust, and alter ego." *Clapper VIII*, 2018 WL 3868703, at *1 (emphasis added)). In sum, having decided to exercise supplemental jurisdiction despite the presence of non-diverse parties, the court did not intend by its rulings to prevent Atlantic XIII from participating as a plaintiff.

Having explained why Atlantic XIII should be allowed to participate as a plaintiff, the question becomes what relief should be granted in response to plaintiffs' motion. The court concludes that its opinion in *Clapper VIII* should not be clarified or corrected because the opinion is correct insofar as relevant here: the 4AC *was* (and *is*) plaintiffs' operative complaint. But because Atlantic XIII was dropped as a plaintiff before the court decided that it would exercise supplemental jurisdiction, and it is the court's intention that all three

plaintiffs named in the 3AC be allowed to participate as plaintiffs, the court concludes that it should permit the filing of a 5AC that includes Atlantic XIII as a plaintiff. The court therefore grants plaintiffs' alternative motion to file a fifth amended complaint. *See, e.g.,* Ps. Mot. to Clarify or Correct at 15 ("In the alternative, if this Court determines that the 4AC is currently the operative complaint in this matter, Plaintiffs seek leave to file a Fifth Amended Complaint to ensure that Atlantic XIII continues to remain a party in this litigation."); *see also id*. at 9 ("Plaintiffs respectfully request that this Court confirm that the operative complaint in this matter is the 3AC, or, in the alternative, permit Plaintiffs to file a Fifth Amended Complaint, including Atlantic XIII as a party."). The 5AC must be filed within 21 days of the date this memorandum opinion and order is filed.

2

In their motion to clarify or correct, plaintiffs request that the court "permit Plaintiffs to file their proposed Fifth Amended Complaint, which is identical to the 3AC and is attached to this Motion as Ex. 2." Ps. Mot. to Clarify or Correct at 11. The court grants plaintiffs leave to add Atlantic XIII as a plaintiff, but they may not include any claims that have not been previously pleaded in plaintiffs' complaint or in one of their amended complaints, nor may they include any claims (or parts thereof) that the court has already dismissed. *See, e.g., Clapper VIII*, 2018 WL 3868703 (granting in part motions to dismiss and for summary judgment).

The court prospectively grants defendants leave to file responsive pleadings to the 5AC. *See infra* § V (addressing continuation of ban on filing prejudgment motions without first moving for and obtaining leave of court).[5]

B

In their motion to clarify or correct, plaintiffs contend that defendants' argument that Atlantic Midwest does not plead claims on behalf of ART Midwest, L.P. ("ART Midwest") is contrary to this court's and the Fifth Circuit's rulings. This contention appears to be advanced in response to defendants' answers to the 4AC, which plaintiffs maintain inexplicably argue that Atlantic Midwest has never pleaded that it was suing defendants for and/or on behalf of ART Midwest. Plaintiffs maintain that defendants' persistence in making this argument is "improper and sanctionable." Ps. Mot. to Clarify or Correct at 12.

In defendants' response to plaintiffs' motion, they devote most of their attention to this argument.[6] Among the arguments they offer are the contentions that plaintiffs' complaints, including the 4AC, fail to satisfy Rule 8, or, alternatively, that any alleged

---

[5]Because responsive pleadings include motions, the court clarifies that motions, as well as answers, may be filed.

[6]At one point in defendants' response, they request leave to file motions related to this dispute. *See* D. Resp. to Mot. to Clarify or Correct at 2-3 ("Defendants request leave to file Motions to Dismiss, to Strike, to Clarify/Correct and/or for Summary Judgment, under regular briefing rules, against any claims NOW alleged by Atlantic Midwest in this case to seek the recovery of Partnership damages."). Such requests must be made by separate motion for leave rather than as a sentence within a response brief.

partnership claim should be dismissed because Atlantic Midwest has failed to comply with Rule 17(a).

The bulk of plaintiffs' reply brief is devoted to the question whether Atlantic Midwest can recover on behalf of ART Midwest, and to defendants' Rule 8 and Rule17(a) challenges, rather than to the question whether the court should clarify or correct its references in *Clapper VIII* to the 4AC as the operative complaint.

Despite the extensive briefing on this issue in defendants' response brief and plaintiffs' reply brief, the court cannot adequately connect this part of plaintiffs' motion to their request to clarify or correct the 4AC references. If anything, this argument appears to serve as the predicate for what follows in plaintiffs' motion: an alternative request that the court enter a default against all defendants for their failure to answer the allegations regarding Atlantic Midwest's claims on behalf of ART Midwest. The court's understanding of the purpose for this argument appears to be confirmed by plaintiffs' reply brief. *See* Ps. Mot. to Clarify or Correct Reply Br. at 20.[7]

---

[7]Plaintiffs argue in this respect:

> Finally, Plaintiffs' Motion argued that this Court should enter a default in favor of Atlantic Midwest for Defendants' intentional failure to answer the allegations that assert a cause of action for Atlantic Midwest's claim on behalf of the Partnership. Plaintiffs' Motion argued that this Court should view Defendants' intentional failure to respond to allegations regarding *Atlantic Midwest* on behalf of the Partnership as a willful default. Defendants' Response, instead of addressing this

The court declines to enter a default for at least two reasons: first, this request is made in the alternative and lacks a sufficient connection to the principal request to clarify or correct, which relates to Atlantic XIII's party status and which the court is addressing by allowing a 5AC that adds Atlantic XIII as a plaintiff; and, second, plaintiffs' arguments are tied to the contents of defendants' answers, but defendants will be entitled to file new responsive pleadings after the 5AC is filed.[8]

As for defendants' contentions concerning deficiencies in plaintiffs' complaint and their challenges based on Rules 8 and 17(a), the court declines to address these arguments in the context of an alternative request for relief included in a motion to clarify or correct.

> argument, in a slight of hand, argues that Defendants did not intentionally fail to file an answer to claims asserted by *Atlantic XIII*. Defendants' Response intentionally does not respond to Plaintiffs' argument regarding the willful default of Defendants' failure to respond to allegations regarding *Atlantic Midwest*. As a result, this Court should enter a default for failure to answer the allegations in the 4AC regarding Atlantic Midwest's claims on behalf of the Partnership.

Ps. Mot. to Clarify or Correct Reply Br. at 20

[8]In addition to their "failure to answer" predicate for entering a default, plaintiffs also request that the court enter a default as a sanction. *See* Ps. Mot. to Clarify or Correct at 16 (asserting that because defendants have intentionally ignored the courts' prior rulings, have continued to insist that Atlantic Midwest has not pleaded that it is enforcing claims on behalf of ART Midwest, and have insisted on relitigating this issue, defendants should be defaulted and sanctioned). Even if the court assumes that plaintiffs can move for sanctions without first obtaining leave, the court declines to address this request because plaintiffs have not sufficiently developed it (they have not, for example, stated whether they are relying on the court's inherent power, Rule 11, or some other authority).

Moreover, because the court is granting plaintiffs leave to file a 5AC, and defendants will be able to file responsive pleadings, defendants can raise arguments by motion or other pleading that is procedurally proper.

Accordingly, despite the extensive briefing, the court declines to address this dispute in the context of plaintiffs' motion to correct or clarify.

II

The court turns next to plaintiffs' October 8, 2018 objection to footnote 1 of the magistrate judge's September 24, 2018 order, and it overrules the objection as moot.

In footnote 1 the magistrate judge stated: "To the extent Atlantic XIII, LLC joined in bringing the Motions for Protective Order, Plaintiffs have nonsuited and dismissed all claims by Atlantic XIII, LLC, and Atlantic XIII, LLC is no longer a party Plaintiff to this action." Sept. 24, 2018 Order at 1 n.1. For the reasons the court explains above, *see supra* § I(A)(1), this statement was essentially correct when the magistrate judge wrote her order. But considering that plaintiffs have been granted leave to file a 5AC that includes Atlantic XIII as a plaintiff, the objection to the footnote is now moot, and it is therefore overruled on that basis.

III

Defendant Phillips moves the court to reconsider in part its decision in *Clapper VIII* denying his motion for summary judgment as it relates to whether he can be held liable under Nevada law as the alter ego of American Realty Investors, Inc. ("ARI") or EQK Holdings, Inc. ("EQK").

A

Phillips advances two arguments in support of his motion: first, under Nevada law, a reasonable jury could not find that Phillips is the alter ego of ARI or EQK because it could not find that he was at any relevant time a stockholder, director, or officer of ARI or EQK; and, second, if he could be the alter ego of ARI or EQK, the evidence the court cited in *Clapper VIII* would not enable a reasonable jury to find that he is the alter ego of either.

B

"Because the court's interlocutory . . . decision did not result in a final judgment, [Rule] 54(b) governs whether the court reconsiders its ruling." *SEC v. Cuban*, 2013 WL 1091233, at *2 (N.D. Tex. Mar. 15, 2013) (Fitzwater, C.J.) (citing *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F.Supp.2d 550, 553 (N.D. Tex. 2009) (Means, J.) (addressing discovery ruling)). The court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Colli v. S. Methodist Univ.*, 2011 WL 3524403, at *1 (N.D. Tex. Feb. 14, 2011) (Solis, J.) (quoting

*Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)) (internal quotation marks omitted). "Such a motion requires the court to determine 'whether reconsideration is necessary under the relevant circumstances.'" *Brown v. Wichita Cty., Tex.*, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011) (O'Connor, J.) (quoting *Judicial Watch v. Dep't of the Army*, 466 F.Supp.2d 112, 123 (D.D.C. 2006)).

C

1

The court declines to hold that only a stockholder, director, or officer of a corporation can be subjected to alter ego liability under Nevada law.

Phillips relies on a Nevada statute (Nev. Rev. Stat. Ann. § 78.747), the legislative history of that statute, and Nevada federal- and state-court cases to contend that alter ego liability under Nevada law is confined to corporate stockholders, directors, or officers.

Section 78.747, entitled "Liability of stockholder, director or officer for debt or liability of corporation," provides:

> 1. Except as otherwise provided by specific statute, no stockholder, director or officer of a corporation is individually liable for a debt or liability of the corporation, unless the stockholder, director or officer acts as the alter ego of the corporation.
> 2. A stockholder, director or officer acts as the alter ego of a corporation if:
>    (a) The corporation is influenced and governed by the stockholder, director or officer;
>    (b) There is such unity of interest and ownership

> that the corporation and the stockholder, director or officer are inseparable from each other; and
> (c) Adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice.
>
> 3. The question of whether a stockholder, director or officer acts as the alter ego of a corporation must be determined by the court as a matter of law.

Nev. Rev. Stat. Ann. § 78.747.

On its face, this statute can reasonably be interpreted to limit individual liability of corporate stockholders, directors, or officers for a debt or liability of a corporation only to alter ego liability, except as otherwise provided by specific statute. *See Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 284 (Tex. 2015) ("On its face, the statute does nothing more than confine shareholder, director, and officer liability for corporate debts to the common law alter ego doctrine . . . ."). This is different from construing the statute as limiting alter ego liability for corporate debts or liabilities *only* to corporate shareholders, directors, and officers. *See id.* at 284-85 ("The statute would preclude a common law expansion of the doctrine as applied to corporate shareholders, directors, and officers. The statute says nothing about other persons' common law alter ego liability.").

Phillips' reliance on legislative history is also insufficient. When the Supreme Court of Nevada "review[s] a statute, [it] look[s] first to the language of the statute and, if the language is plain and unambiguous, [it] give[s] effect to that language and do[es] not look beyond it." *Montage Mktg., LLC v. Washoe Cty. ex rel. Washoe Cty. Bd. of Equalization*,

419 P.3d 129, 133 (Nev. 2018). "Otherwise [it] will look to legislative history and rules of construction to determine the meaning of the statute." *Id.* Because the language of Nev. Rev. Stat. Ann. § 78.747 can be viewed as plain and unambiguous, the legislative history should not be consulted.

Nor do the federal- and state-court cases on which Phillips relies establish that only a stockholder, director, or officer of a corporation can be subjected to alter ego liability under Nevada law. To be sure, each of the cases cited by plaintiffs and Phillips involves a stockholder, director, or officer, and some cases describe the statutory alter ego liability as applying to stockholders, directors, or officers. But so far as the court can determine, no cited Nevada case definitively answers the question either way because no case addresses the question whether *only* a stockholder, director, or officer of a corporation can be subjected to alter ego liability under Nevada law.

Although not binding on this court (or in Nevada), the unanimous decision of the Supreme Court of Texas in *Phillips*, authored by Chief Justice Hecht, actually *does* address this question. *See Phillips*, 475 S.W.3d at 284 ("CabelTel and Syntek West contend that Section 78.747, by prescribing the requirements for alter ego liability of a shareholder, director, or officer for a corporate debt, preempts alter ego liability for any other person under Nevada common law. Therefore, they argue, because they were not shareholders in EurEnergy, they cannot be liable as its alter egos."). The *Phillips* court persuasively explains

why alter ego liability can still be imposed under Nevada common law on someone other than a shareholder, director, or officer. *See id.* at 284-85; *see also id.* at 285 ("Nevada common law does not limit alter ego liability to shareholders, officers, and directors.").

Accordingly, while subsequent developments in Nevada law may confirm Phillips' position, the court is unable to grant summary judgment at this time based on Phillips' contention that one must be a stockholder, director, or officer of a corporation in order to be subjected to alter ego liability.

2

Nor does Phillips' second argument warrant reconsideration of the court's summary judgment ruling. As the court noted in *Clapper VIII*, "[w]hen this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Clapper VIII*, 2018 WL 3868703, at *16 n.50 (citing *Valcho v. Dall. Cty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.)). In *Clapper VIII* the court discussed evidence that defeated Phillips' argument that plaintiffs had failed to show that he is an alter ego of ARI and EQK under Nevada law. *See id.* at *21-22. Consistent with its typical practice, however, the court did not set out in detail all the evidence that created a genuine issue of material fact. But the court did view the summary judgment record favorably to plaintiffs as the nonmovants, and draw all reasonable inferences in their favor, as it was obligated to do. *See, e.g.*, *Owens v. Mercedes-Benz USA,*

*LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)). And in doing so, it concluded that summary judgment was not warranted. Accordingly, the court adheres to its conclusion that Phillips is not entitled to summary judgment on this basis.

The court therefore denies Phillips' motion to reconsider.

IV

Finally, the court turns to defendants' September 12, 2018 motion to amend the scheduling order and extend expert discovery. The court denies the motion without prejudice.

The undersigned has taken senior status and is today requesting that this case be reassigned to a judge who is accepting the assignment of civil cases in the Dallas Division.[9] The successor judge should be able to exercise complete discretion concerning all aspects of scheduling in this case, including, if warranted, with respect to any ground for amending the scheduling order contained in defendants' motion.

Accordingly, the court denies without prejudice defendants' motion to amend the scheduling order and extend expert discovery.

---

[9]To the extent the court's electronic case filing system reflects such a reassignment as a recusal, the undersigned notes that this reassignment is being made at his request, and is the result of having taken senior status. He is not recused on any basis from hearing this case.

V

In *Clapper V* the court stated that, with a specific exception that pertained to that opinion alone, "no party may file any prejudgment motion of any kind in this civil action without first moving for and obtaining leave of court." *Clapper V*, 2018 WL 1083609, at *6. In *Clapper VI* the court reiterated this restriction, stating that "[n]o motions may be filed in this case without leave of court until the court lifts the ban on motions that it previously imposed." *Clapper VI*, 2018 WL 2739014, at *4. This ban remains in place unless and until lifted or modified by the successor judge.

**SO ORDERED**.

November 16, 2018.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE