IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID M. CLAPPER; ATLANTIC MIDWEST LLC; and ATLANTIC XIII, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:14-CV-2970-L** |
| AMERICAN REALTY INVESTORS, INC.; AMERICAN REALTY TRUST, INC.; TRANSCONTINENTAL REALTY INVESTORS, INC.; PILLAR INCOME ASSET MANAGEMENT, INC.; PRIME INCOME ASSET MANAGEMENT, INC.; PRIME INCOME ASSET MANAGEMENT, LLC; EQK HOLDINGS, INC.; BASIC CAPITAL MANAGEMENT, INC.; GENE E. PHILIPS, | § § § § § § § § § § § § § § § | |
| Defendants.[1] | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion to Dismiss Supplemental Claims Under 28 U.S.C. § 1367(c) and Memorandum in Support (Doc. 852), filed October 11, 2019. After reviewing the motion, response, reply, record, and applicable law, the court **denies** Defendants' Motion to Dismiss Supplemental Claims Under 28 U.S.C. § 1367(c).

**I.      Factual Background and Procedural History**

On August 19, 2014, Plaintiffs David M. Clapper ("Clapper"), Atlantic Midwest, L.L.C. ("Atlantic Midwest"), and Atlantic XIII, L.L.C. ("Atlantic XIII")—judgment creditors of

---
[1] The sole remaining Defendants are American Realty Investors, Inc.; American Realty Trust, Inc.; EQK Holdings, Inc.; and Gene Phillips.

**Memorandum Opinion and Order – Page 1**

Defendant American Realty Trust, Inc. ("ART")—filed this lawsuit against ART and numerous other defendants. Plaintiffs allege that ART unlawfully transferred assets to its parent, Defendant American Realty Investors, Inc. ("ARI"), and other entities and persons in an attempt to evade a final judgment entered in their favor by the Honorable David C. Godbey on October 11, 2011, in *ART Midwest, Inc. v. Clapper*, No. 3-99-cv-2355-N.[2]

In the Original Complaint, Plaintiffs alleged the following claims: fraudulent conveyance in violation of the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001 et seq. (West 2015) ("TUFTA"); unjust enrichment/constructive trust; alter ego; civil conspiracy to commit fraudulent conveyances; and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. As the basis for federal subject matter jurisdiction, Plaintiffs invoked this court's diversity jurisdiction and also its federal question jurisdiction based on the assertion of their civil RICO claim. *See* Compl. ¶ 1 ("This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, (diversity jurisdiction) and based on a federal question being raised pursuant to RICO."). On October 31, 2014, following the recusal of the Honorable Jorge A. Solis, the matter was reassigned to the Honorable Sidney A. Fitzwater. After allowing Plaintiffs leave to amend the pleadings twice, he granted in part Defendants' motion to dismiss Plaintiffs'

---

[2] The United States Court of Appeals for the Fifth Circuit, by opinion dated February 3, 2014, affirmed the October 11, 2014 judgment in part and vacated and remanded it in part. On July 31, 2014, Judge Godbey entered a second final judgment. By opinion dated November 9, 2015, the Fifth Circuit affirmed in part and vacated and remanded in part. Based on the mandate, Judge Godbey entered a third final judgment on February 10, 2016. *See* Doc. 962 in *ART Midwest, Inc. v. Clapper*, No. 3-99-cv-2355-N. The complex background facts and procedural history in that case, ultimately leading to this lawsuit, are detailed in numerous prior opinions by Judge Fitzwater, with which the court assumes the parties' familiarity. *See Clapper v. American Realty Investors, Inc.*, 2015 WL 264711 (N.D. Tex. Jan. 21, 2015) ("*Clapper I*"); *Clapper v. American Realty Investors, Inc.*, 2015 WL 3504856 (N.D. Tex. June 3, 2015) ("*Clapper II*"); *Clapper v. American Realty Investors, Inc.*, 2016 WL 302313 (N.D. Tex. Jan. 25, 2016) ("*Clapper III*"); *Clapper v. American Realty Investors, Inc.*, 2017 WL 978098 (N.D. Tex. Mar. 14, 2017) ("*Clapper IV*"); *Clapper v. American Realty Investors, Inc.*, 2018 WL 1083609 (N.D. Tex. Feb. 28, 2018) ("*Clapper V*"); *Clapper v. American Realty Investors, Inc.*, 2018 WL 2739014 (N.D. Tex. June 6, 2018) ("*Clapper VI*"); *Clapper v. American Realty Investors, Inc.*, 2018 WL 3769831 (N.D. Tex. Aug. 9, 2018) ("*Clapper VII*"); *Clapper v. American Realty Investors, Inc.*, 2018 WL 3868703 (N.D. Tex. Aug. 14, 2018) ("*Clapper VIII*"); and *Clapper v. American Realty Investors, Inc.*, 2018 WL 6011182 (N.D. Tex. Nov. 16, 2018) ("*Clapper IX*").

Second Amended Complaint, dismissing, among other claims, the civil RICO claim, the sole source of federal question jurisdiction, finding it "speculative, conclusory, and insufficient to state a claim on which relief can be granted." *Clapper v. American Realty Investors, Inc.*, 2016 WL 302313, at *10 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.) ("*Clapper III*") ("[T]he court dismisses plaintiffs' civil RICO claim because the allegations in the second amended complaint do not allow the court to draw the reasonable inference that defendants engaged in a pattern of racketeering activity.").

On March 24, 2017, with leave of court, *see Clapper v. American Realty Investors, Inc.*, 2017 WL 978098 (N.D. Tex. Mar. 14, 2017) (Fitzwater, J.) ("*Clapper IV*"), Plaintiffs filed a Third Amended Complaint that added alter ego claims against ARI. Following the court's rulings in *Clapper III* and *Clapper IV*, the following state law claims remained: fraudulent conveyance in violation of TUFTA against ART, ARI, and EKQ Holdings, Inc. ("EKQ"); unjust enrichment/constructive trust against ARI and EKQ; and alter ego against Gene Phillips ("Phillips") and ARI.

In December 2017, the court, in reviewing Plaintiffs' Third Amended Complaint, noted that Plaintiffs predicated subject matter jurisdiction on diversity of citizenship under 28 U.S.C. § 1332, and that they failed to allege properly the various parties' citizenship. In compliance with Judge Fitzwater's order to replead correctly the citizenship of the parties, Plaintiffs Clapper and Atlantic Midwest (but not Atlantic XIII) filed a Fourth Amended Complaint. Defendants moved to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, maintaining that, because ART Midwest, not Atlantic Midwest, was the real party to the controversy, the court was required to look to the citizenship of ART Midwest when determining whether the parties were diverse citizens, and the Georgia

**Memorandum Opinion and Order – Page 3**

citizenship of two members of ART Midwest—Atlantic XIII and ART—destroyed diversity (as ART was also a Defendant in the lawsuit). The court agreed and granted Defendants' motion to dismiss. *Clapper v. American Realty Investors, Inc.*, 2018 WL 1083609, at *5 (N.D. Tex. Feb. 28, 2018) (Fitzwater, J.) ("*Clapper V*") ("Because there are Georgia citizens on both sides of the controversy, the court cannot exercise diversity jurisdiction. Accordingly, the Entity Defendants' and Phillips' motion to dismiss are granted."). Rather than dismiss the case for want of federal subject matter jurisdiction, however, the court stated:

> Although plaintiffs can now pursue this litigation against defendants in state court, because this case has been pending in this court since August 19, 2014, the court will give plaintiffs 21 days from the date this memorandum opinion and order is filed to move for any available relief that would enable this court to exercise subject matter jurisdiction. *This may include demonstrating sufficient grounds for this court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), considering that the court had federal-question jurisdiction at the time the lawsuit was filed.*

*Id.* at *6 (footnote omitted) (emphasis added).

In response to *Clapper V*, Plaintiffs moved for leave to file their Fifth Amended Complaint pleading supplemental jurisdiction for the first time, or, in the alternative, to remove the Atlantic entities from the lawsuit. On June 6, 2018, Judge Fitzwater determined that, in his discretion, he would exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a), and denied Plaintiffs' motion without prejudice after concluding a formal amendment of the pleadings was not necessary. *See Clapper v. American Realty Investors, Inc.*, 2018 WL 2739014, at *1 (N.D. Tex. June 6, 2018) (Fitzwater, J.) ("*Clapper VI*") ("Supplemental Jurisdiction Order").

On August 14, 2018, the court addressed multiple outstanding motions, including then-pending motions to dismiss the Fourth Amended Complaint and motions for summary judgment. *Clapper v. American Realty Investors, Inc.*, 2018 WL 3868703 (N.D. Tex. Aug. 14, 2018)

**Memorandum Opinion and Order – Page 4**

(Fitzwater, J.) ("*Clapper VIII*"). The court granted in part the pending motions, *sua sponte* raised whether ARI and EKQ are entitled to summary judgment on Plaintiffs' unjust enrichment claims, and set out a briefing schedule pertaining to the unjust enrichment claims. *See id.* at *23-24. Following *Clapper VIII*, a dispute arose concerning Judge Fitzwater's reference to the Fourth Amended Complaint as the operative pleading and whether, as Plaintiffs argued, he intended Atlantic XIII to remain a plaintiff in this lawsuit, notwithstanding that Atlantic XIII was not a party to the Fourth Amended Complaint. On November 16, 2018, Judge Fitzwater agreed with Plaintiffs and directed them to file their Fifth Amended Complaint to reinclude Atlantic XIII as a party:

> [B]ecause Atlantic XIII was dropped as a plaintiff before the court decided it would exercise supplemental jurisdiction, and it is the court's intention that all three plaintiffs named in the 3AC be allowed to participate as plaintiffs, the court concludes that it should permit the filing of a 5AC that includes Atlantic XIII as a plaintiff.

*Clapper v. American Realty Investors, Inc.*, 2018 WL 6011182, at *3 (N.D. Tex. Nov. 16, 2018) ("*Clapper IX*")

On November 16, 2018, after presiding over this matter for over four years, Judge Fitzwater—who had taken senior status—recused himself, and the matter was reassigned to the Honorable Sam R. Cummings. On December 7, 2018, as permitted by *Clapper IX*, Plaintiffs filed their Fifth Amended Complaint. The next day, December 11, 2018, Judge Cummings recused himself and the matter was reassigned to the Honorable Karen G. Scholer, who recused herself on December 12, 2018, after which it was reassigned to this court.

On January 11, 2019, in addition to filing a joint motion to strike, Defendants separately filed motions to dismiss the Fifth Amended Complaint. On January 16, 2019, given the complex nature of the case and court's busy docket, the court vacated the March 2019 trial setting and advised the parties that it would reset the trial, pretrial conference, and pretrial material deadlines

**Memorandum Opinion and Order – Page 5**

by separate order once it addressed all pending motions. On January 23, 2019, the court denied Defendants' Motion for Leave to File Defendants' Emergency Motion to Amend Scheduling Order and to Extend Expert Discovery and Motion for Continuance (filed before Judge Cummings), in which Defendants sought to extend the expert witness designation deadline by at least 90 days, to extend discovery on the alter ego claims for at least 120 days, and to extend the summary judgment deadline by 120 days. *See* Mem. Op. & Order (Doc. 797). Plaintiffs have since filed a motion for leave to file a motion for sanctions against Defendants, contending they are seeking in bad faith to relitigate matters already decided, and a motion for leave to file a motion to strike one of Defendants' experts or alternative motion in limine. Both motions for leave are pending.

On August 16, 2019, Defendant Phillips passed away. On August 28, 2019, Plaintiffs filed a Suggestion of Death Upon the Record (Doc. 848). On September 10, 2019, Plaintiffs filed a Motion for Leave to File Motion for Substitution of Party Pursuant to Fed. R. Civ. P. 25(a)(1) (Doc. 849). This motion is pending.

It is against this backdrop, after the matter has been pending in this court for over five years, that on October 11, 2019, with leave of court, Defendants filed their Motion to Dismiss Supplemental Claims for Lack of Jurisdiction Under 28 U.S.C. § 1367, urging the court to reverse *Clapper VI*, decline to exercise supplemental jurisdiction over the remaining state law claims, and dismiss this lawsuit. The motion has been fully briefed and is ripe for disposition.

## II. The Parties' Contentions

Defendants contend that the court should reexamine and reverse Judge Fitzwater's decision in *Clapper VI* to exercise supplemental jurisdiction and, almost fifteen months later, decline to exercise supplemental jurisdiction and dismiss the remaining state law claims. In support, Defendants assert that the "reassignment of this case to a new judge . . . is a monumental event

that entirely changes the analysis and conclusion concerning the Court's retention of jurisdiction over the state law claims in this litigation." Defs.' Mot. 2 (Doc. 852). According to Defendants, judicial economy is no longer served by exercising supplemental jurisdiction since, "[u]nlike Judge Fitzwater, the district judge now assigned to this matter has no familiarity with the long history of the litigation or the state law claims remaining in the case." *Id.*

In response, Plaintiffs urge the court to deny Defendants' motion, characterizing their request as "outrageous." Pls.' Resp. 2 (Doc. 853). Plaintiffs argue that "Defendants' Motion is yet another attempt to relitigate what has already been decided by this Court and presents another bad faith procedural strategy concocted by Defendants to attempt to evade Plaintiffs' claims and delay these proceedings, without citing any binding precedent in support." *Id.* Plaintiffs also point to the court's decision denying Defendants' emergency request to extend the expert witness designation deadline by at least 90 days, to extend discovery on the alter ego claims for at least 120 days, and to extend the summary judgment deadline by 120 days. Plaintiffs assert that "Judge Lindsay demonstrated his familiarity with the facts of this case when he explained the reasons for [his] denial of Defendants' Motion." *Id.* at 10. Plaintiffs also contend they would be severely and irreparably prejudiced were the court to dismiss the state law claims at this late juncture because, among other reasons, upon refiling in state court, their TUFTA claims would likely be barred by the statute of repose. *Id.* at 12-13.[3]

---

[3] TUFTA's statute of repose reads, in relevant part:

> [A] cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought . . . within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant. . . .

Tex. Bus. & Com. Code § 24.010(a)(1); *see also In re Margaux Texas Ventures, Inc.*, 545 B.R. 506, 526 (Bankr. N.D. Tex. 2014) ("[S]ection 24.010 of TUFTA operates as a statute of repose. Statutes of repose are jurisdictional in nature. They operate as an absolute bar on a plaintiff's ability to bring suit when the time thereunder has expired.").

**Memorandum Opinion and Order – Page 7**

### III. Analysis

#### A. Legal Standard

In the case of an interlocutory order, "Federal Rule of Civil Procedure 54(b) governs whether the court reconsiders its ruling." *Mead v. Lattimore Materials Co.*, 2018 WL 2971128, at *1 (N.D. Tex. Mar. 6, 2018) (Lindsay, J.) (quoting *S.E.C. v. Cuban*, 2013 WL 1091233, at *2 (N.D. Tex. Mar. 15, 2013) (Fitzwater, C.J.) (in turn citing *Dos Santos v. Bell Helicopter Textron, Inc. District*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (Means, J.)); *see also Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2016) (holding that "[b]ecause the order granting partial summary judgment was interlocutory, the court should have analyzed the motion for reconsideration under Rule 54(b) instead of Rule 59(e), which applies to final judgment."). Pursuant to Rule 54(b): "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). There is no dispute that Judge Fitzwater's interlocutory memorandum opinion and order in *Clapper VI* was an "order or decision" that "adjudicate[d] fewer than all the claims and all the parties' rights and liabilities." "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court." *Dos Santos*, 651 F. Supp. 2d at 553 (citation omitted). The court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Cuban*, 2013 WL 1091233, at *2 (citations omitted).

Rule 54 "does not distinguish between, on the one hand, a situation where a trial judge revises his own order, and, on the other hand, a situation where a second judge revises the earlier order of a previous judge." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726-27 (5th Cir. 2012). While the court is cognizant of the principles underlying the law-of-the-case doctrine, such doctrine does not bar it from reconsidering previous rulings in the case. Under the law-of-the-case doctrine, courts will show deference to decisions already made in the case over which they are presiding. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). The law-of-the-case doctrine, however, "does not operate to prevent a district court from reconsidering prior rulings." *Id.* Further, when a successor judge replaces another judge, "[t]he successor judge has the same discretion as the first judge to reconsider [the first judge's] order." *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 837-38 (5th Cir. 1982). A successor judge may overrule a previous judge's order as long as the successor judge has a "reason [he or she] deems sufficient." *Zarnow*, 614 F.3d at 171.

### B. Supplemental Jurisdiction

A federal court may exercise supplemental jurisdiction over all claims, including state law claims, if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if a court has supplemental jurisdiction, however, it may still decline to exercise it over some claims after considering four statutory factors and four common law factors, set forth more fully below. *Id.* § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). For the reasons that follow, the court concludes that: (i) as a threshold matter raised *sua sponte*, it does have supplemental jurisdiction over Plaintiffs' remaining state law claims; and (ii)

reconsideration of Judge Fitzwater's decision in *Clapper VI* to exercise supplemental jurisdiction over the state law claims—issued approximately fifteen months ago—is unwarranted.

### 1. Does Supplemental Jurisdiction Exist Here Under 28 U.S.C. § 1367(a)?

Although neither party raises this issue, as part of its ongoing duty to assess its subject matter jurisdiction, the court first must decide whether supplemental jurisdiction over Plaintiffs' state law claims existed at the time Judge Fitzwater declined to exercise it in *Clapper VI*.[4] As previously stated, in *Clapper III*, the court dismissed Plaintiffs' civil RICO claim, the sole basis for federal question jurisdiction. Not surprisingly, because Plaintiffs had also alleged federal subject matter jurisdiction on the basis of diversity of citizenship—later found lacking in *Clapper V*—Judge Fitzwater did not consider in *Clapper III* whether supplemental jurisdiction could be exercised over the remaining state law claims.

Title 28 U.S.C. § 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

"The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

---

[4] A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction sua sponte.") (citation omitted).

Additionally, if they are "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers of Am.*, 383 U.S. at 725; s*ee also* 13D The Late Charles Alan Wright et al., Federal Practice and Procedure § 3567 (3d ed. 2008) ("Supplemental jurisdiction can be justified only if the supplemental claim is so closely related to the jurisdiction-invoking claim that they are part of the same constitutional 'case' or 'controversy.'").

Initially, the court notes that Plaintiffs failed to affirmatively plead supplemental jurisdiction in the Original Complaint, First Amended Complaint, and Second Amended Complaint, which was the live pleading at the time Plaintiffs' civil RICO claim was dismissed. The Fifth Circuit has held, however, that in a case originally filed in federal court, "the failure to expressly plead supplemental jurisdiction will not defeat it if the facts alleged in the complaint satisfy the jurisdictional requirements." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 232 (5th Cir. 2016); *Stross v. Centerra Homes of Texas, LLC*, 2019 WL 1102378, at *3 (W.D. Tex. Mar. 8, 2019) (Sparks, J.) (quoting *Heinsohn*, 832 F.3d at 232) (Failure to explicitly invoke supplemental jurisdiction under § 1367 in pleadings does not prevent a court from exercising supplemental jurisdiction "if the facts alleged in the complaint satisfy the jurisdictional requirements.").

From a review of the facts underlying Plaintiffs' remaining state law claims of fraudulent conveyance under TUFTA, unjust enrichment/constructive trust, and alter ego, the court concludes that they are derived from the same "common nucleus of operative fact" as the civil RICO claim such that Plaintiffs "would ordinarily be expected to try them all in one proceeding." *United Mine Workers of Am.*, 383 U.S. at 725. The underlying facts common to all claims include allegations

**Memorandum Opinion and Order – Page 11**

that Defendants made repeated fraudulent transfers, using multiple related holding companies, newly formed shell companies, and other instrumentalities over several years to avoid paying the 2016 final judgment entered by Judge Godbey in *ART Midwest, Inc. v. Clapper*, No. 3-99-cv-2355-N. Plaintiffs also allege that Defendants have obstructed enforcement of the judgment by engaging in bad faith bankruptcy filings and fraudulent transfers of stock, and by taking more than $400 million cash in "deemed dividends" from ART's subsidiaries without consideration, leaving ART without funds. For these reasons, the court concludes that the federal court has supplemental jurisdiction over the state law claims, as they share a "common nucleus of operative fact" with the now-dismissed civil RICO claim.

> 2. *Should the Court Reverse Judge Fitzwater's Supplemental Jurisdiction Order (Clapper VI) and Decline to Exercise Supplemental Jurisdiction over the State Law Claims?*

Even if the court has the power to assert supplemental jurisdiction over a party's state law claims, "[t]hat power need not be exercised in every case in which it is found to exist." *United Mine Workers of Am.*, 383 U.S. at 726. Supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right." *Id.* A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal law claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ.*, 484 U.S. at 350 (citing *United Mine Workers of Am.*, 383 U.S. at 726-27). "While that rule of law generally presents an appropriate course of action in many instances, it is neither absolute nor automatic." *Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991).

**Memorandum Opinion and Order – Page 12**

Section 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition, other factors a court is to consider in determining whether to exercise supplemental jurisdiction over a state law claim include judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ.*, 484 U.S. at 350; *Enochs v. Lampass Cty.*, 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie-Mellon Univ.* and referring to "judicial economy, convenience, fairness, and comity[]" as the "common law factors"). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Mendoza*, 532 F.3d at 346 (internal citation omitted).

In *Clapper VI*, Judge Fitzwater carefully examined the statutory and common law factors and concluded that they "collectively weigh in favor of exercising supplemental jurisdiction over plaintiffs' remaining state-law claims." *Clapper VI*, 2018 WL 2739014, at *4. With respect to the first factor, he rejected Defendants' argument that the lawsuit implicated novel and complex legal issues, concluding that the "remaining issues [of state law] are not particularly complex[.]" *Id.* Although he found that the second and third statutory factors favored declining to exercise supplemental jurisdiction, as the court had dismissed the claim over which it had federal-question jurisdiction (civil RICO claim), he found that these factors were "counterbalanced by the common law factors, particularly judicial economy." *Id.* at *3 (citations omitted). Judge Fitzwater elaborated as follows:

> This case has been pending in this court for almost 46 months. When the court ruled on defendants' motions to dismiss for lack of subject matter jurisdiction in late February 2018, the trial setting order, which set the trial date for late February 2018, had only recently been vacated so that the court could rule on several pending motions. *See Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (finding abuse of discretion when district court declined to exercise supplemental jurisdiction in case pending for almost three years and scheduled to begin trial one month later). An extensive amount of, if not all, discovery had already been completed, and multiple depositions had been taken. *See Smith* [*v. Amedisys*, 298 F.3d 434, 447 (5th Cir. 2002)] (common law factors favor exercising supplemental jurisdiction where "instant case has been pending for almost three years, the parties have taken numerous depositions, and the matter had progressed to the advanced stages of litigation with little left to do before trial"). Although defendants point out that a majority of the opinions in this case were issued by the magistrate judge, the undersigned district judge is familiar with the merits of the case. The court has issued multiple opinions on motions to dismiss and is well-versed in the lengthy history of the case in this court. *See Batiste*, 179 F.3d at 227 (holding that judicial economy supported exercising supplemental jurisdiction where there were numerous depositions and discovery disputes in federal court and district court had given significant consideration to multiple motions to dismiss claims or grant summary judgment). Were this case to begin anew in state court, the state court judge would face the burdensome task of becoming acquainted with the multi-year federal-court history of the parties' dispute in multiple lawsuits.

*Id.* (footnote omitted). He further noted that, even assuming *arguendo* that he had declined to exercise supplemental jurisdiction, he would grant "plaintiffs' alternative motion to sever the Atlantic entities under Rule 21 in order to preserve diversity jurisdiction over the balance of the suit. Clapper's claims would remain pending [in federal court], and the Atlantic entities would likely seek relief for the same claims in state court." *Id.* at *4 (footnote omitted). He concluded that "[j]udicial resources would be better conserved by avoiding such simultaneous duplicative litigation disposing of the claims of all plaintiffs in one forum." *Id.*

Finally, Judge Fitzwater concluded that the remaining common law factors did not support dismissal, as "Defendants point to no unfairness that would result should the court exercise supplemental jurisdiction, and considering that the remaining issues are not particularly complex, comity concerns are minimal." *Id.* While Judge Fitzwater noted that improper forum manipulation

**Memorandum Opinion and Order – Page 14**

factors into the court's decision whether to exercise supplemental jurisdiction, he concluded that Defendants "fail[ed] to present compelling evidence or argument that such manipulation occurred here." *Id.*

In this case, consideration of the statutory factors, and of judicial economy, convenience, fairness, and comity, lead the court to conclude that the exercise of supplemental jurisdiction by Judge Fitzwater was proper in this case and *continues to be so*. Further, the court rejects Defendants' primary argument that it lacks familiarity with the case and would have the same learning curve as a state judge newly confronted with this matter. The court has presided over this matter since December 12, 2018 and, on January 23, 2018, issued a detailed order denying Defendants' request for an extension of the expert witness designation deadline, discovery deadline, and summary judgment deadline. In assessing the motion and requested extensions, the court had no alternative but to familiarize itself with the case. In addition, as previously noted, the court has reviewed the remaining pending motions.

Finally, Plaintiffs make a compelling argument that declining to exercise supplemental jurisdiction would be unduly prejudicial:

> If this Court were to take the extraordinary step of reversing its prior decision to exercise supplemental jurisdiction over the remaining claims in this matter, Plaintiffs would suffer extreme prejudice. As mentioned earlier, at the direction of Judge Fitzwater, in an abundance of caution, Plaintiffs filed a Texas state court case (95th Judicial District Cause No. DC-18-05586) in April of 2018 in order to preserve Plaintiffs' claims from being terminated by the TUFTA statute of repose while this Court reviewed the jurisdictional issues that were then pending in this case. The Texas state court case alleged the same claims as this case— fraudulent transfer, alter ego, and unjust enrichment. If this Court had not decided to exercise supplemental jurisdiction in this case, the state court case would have been the only available venue for Plaintiffs to obtain relief.
>
> After this Court determined it was proper for the Court to exercise supplemental jurisdiction in this case, Plaintiffs sought a stay of the Texas state court case, arguing that a later reversal of this Court's decision to exercise

supplemental jurisdiction would prejudice Plaintiffs (Ex. 2, App. 5-53). Plaintiffs requested that the state court stay that case in its entirety until this case was completely resolved. Defendants vigorously contested Plaintiffs' request for a stay in the State Court (Ex. 3, App. 54-59). The state court denied Plaintiffs' Motion to Stay on July 12, 2018 (Ex. 4, App. 60-61). The state court held, in relevant part:

> This state case was filed merely as a protective measure, to ensure that plaintiffs' claims would not be barred by limitations or statutes of repose in the event the federal court denied plaintiffs' request that the federal court exercise supplemental jurisdiction over their claims after the running of limitations….Ultimately, the federal court decided to exercise supplemental jurisdiction, ruling in the plaintiffs' favor.
>
> . . .
>
> There is no question that filing this case prior to the federal court's decision on the question of supplemental jurisdiction was wise strategy. But for the plaintiffs to continue to maintain it as insurance at this point, after they received a green light in federal court, is a different question. Plaintiffs' failure to take "yes" for an answer, their unwillingness to travel the road chosen, and their anticipatory want of prosecution—no doubt for years—is not acceptable to this Court.
>
> . . . Accordingly, the Court denies the Plaintiffs' Motion to Stay.

Given the state court's denial of the Motion to Stay based on Defendants' vigorous opposition thereto, and the fact that multiple motions to dismiss had been filed by Defendants in that case, which appeared likely to be granted by the Court given the then-concurrent action in federal court, Plaintiffs filed their Notice of Non-Suit Without Prejudice in the State Court (Ex. 5, App. 62-63).

As a result, if this Court were to dismiss the supplemental claims in this case, Plaintiffs would again have to seek relief in state court, at which time Defendants would undoubtedly argue that all of Plaintiffs' claims have now been extinguished by the TUFTA statute of repose and Texas statutes of limitations. *Defendants should be estopped from arguing that Plaintiffs would not be prejudiced if this Court were to reverse its earlier decision to exercise supplemental jurisdiction, as Defendants previously argued in Texas state court that Plaintiffs could obtain relief in this case, which Defendants now seek to dismiss. The substantial likelihood that Plaintiffs' claims would be extinguished by the statute of repose and statutes of limitations presents a compelling, if not determinative, reason for this Court to continue to exercise supplemental jurisdiction over this case.*

Pls.' Resp. 12-13 (Doc. 853) (emphasis added). The court has reviewed the state court filings provided by Plaintiffs in support of their argument and concludes that, not only would Plaintiffs run the risk of having their TUFTA claims barred under Texas's statute of repose were they compelled to refile them in state court, *see supra* note 3, but Defendants' contention that Plaintiffs would not be prejudiced by a reversal of *Clapper VI* is dubious and borders on being disingenuous, in light of their litigation strategy in the 95th Judicial District, Cause No. DC-18-05586.

Given the complexity of this case, its long, tortuous and torturous path, and its accompanying gamesmanship, the temptation to reject the exercise of supplemental jurisdiction is considerable; however, for the reasons stated, the court determines that the refusal to exercise supplemental jurisdiction is legally unacceptable. The court, therefore, declines Defendants' invitation to reconsider Judge Fitzwater's decision in *Clapper VI* to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

## IV.  Conclusion

The decision to exercise or decline supplemental jurisdiction is within the discretion of the district court. In the instant case, after four years of litigation, Judge Fitzwater carefully considered the statutory and common law factors and concluded that they "collectively weigh in favor of exercising supplemental jurisdiction over plaintiffs' remaining state-law claims." *Clapper VI*, 2018 WL 2739014, at *4. Approximately fifteen months later, arguing that reassignment of the matter to this court is a "monumental event that entirely changes" the analysis and conclusion in *Clapper VI*, Defs.' Mot. 2 (Doc. 852), Defendants move the court to decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them, raising many of

**Memorandum Opinion and Order – Page 17**

the same arguments previously rejected in *Clapper VI*. The court is not persuaded by Defendants' argument.

Discovery is complete (including the completion of multiple expert depositions and preliminary and final reports). Depositions have been taken, multiple document requests and third-party subpoenas have been served, numerous motions to compel have been filed and ruled upon, over 400,000 documents have been produced and examined, and the court has ruled on multiple rounds of motions to dismiss and motions for summary judgment. Although Plaintiffs filed their Fifth Amended Complaint on December 10, 2018, Judge Fitzwater made clear in *Clapper IX*, *supra*, that the amendment was solely for the purpose of reincluding Atlantic XIII as a plaintiff. This matter has been set for trial on three occasions: October 30, 2017; February 20, 2018; and March 28, 2019. Other than the court's decision on whether to dismiss Plaintiffs' unjust enrichment claim, an issue fully briefed per an order of Judge Fitzwater prior to his recusal, and a smattering of procedural motions, this matter is, for all practical purposes, ready for trial. None of the common law factors—judicial economy, convenience, fairness, and comity—would be offended by the exercise of supplemental jurisdiction after dismissal of the federal claim; indeed, judicial economy and convenience, state and federal, and a conscious regard for the interests of the litigants, point strongly in favor of the retaining supplemental jurisdiction and denying Defendants' motion. Finally, while the matters remaining in this lawsuit are solely questions of state law, they present no novel or especially unusual questions which cannot be readily and routinely resolved by the court.

For the foregoing reasons, and those articulated by Judge Fitzwater in *Clapper VI*, 2018 WL 2739014, the court **denies** Defendants' Motion to Dismiss Supplemental Claims Under 28 U.S.C. § 1367(c) (Doc. 852).

**It is so ordered** this 31st day of October, 2019.

_____
Sam A. Lindsay
United States District Judge