IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID M. CLAPPER, et al., | § § § | |
| *Plaintiffs*, | § | |
| v. | § | CASE NO. 3:14-CV-02970-X |
| | § | |
| AMERICAN REALTY TRUST, INC., et al., | § § | |
| *Defendants*. | § § | |

## DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Defendants have incurred significant expenses after spending seven years litigating against Plaintiffs who refuse to acknowledge objective facts and black-letter law. *See, e.g.*, ECF 1048; ECF 1070. To this day, Plaintiffs are still misstating undeniable matters of the record. In their most recent filing to this Court, Plaintiffs tried to excuse their impermissible trial tactics by blaming a lawyer who "was not as involved with this case as in-depth as Mr. Mychalowych was until recently," claiming that "[s]he was unaware that Plaintiffs were not seeking punitive damages against Mr. Phillips." ECF 1088 at 4. But that is not at all what happened. It was, in fact, Plaintiffs' lead counsel who tried to ignore his earlier stipulation regarding punitive damages, as is clear from the transcript that Defendants originally cited:

> 14    MR. MYCHALOWYCH: I disagree. I believe
> 15    our claim is also for punitive damages as to Mr.
> 16    Phillips.

Trial Tr. 3523:14-16. Such egregious tactics started seven years ago, when Plaintiffs filed a lawsuit alleging seven different claims against twenty-six different defendants. They continued through burdensome discovery and multiple rounds of dispositive motions in response to five amended complaints, leaving Plaintiffs with just three claims against four defendants. And they continued through trial, even after Plaintiffs' claims were refuted by their very first witness.

1

Now that the Court has dismissed Plaintiffs' claims with prejudice, Defendants are entitled to recover reasonable attorneys' fees that are equitable and just. TEX. BUS. & COMM. CODE § 24.013.

## PROCEDURAL HISTORY

When Plaintiffs first filed this lawsuit in 2014, they originally brought seven claims against twenty-six different defendants. ECF 1. Over the next seven years, Defendants were forced to spend tens of thousands of hours fighting to dismiss Plaintiffs' spurious claims. Defendants had to file thirty-two motions to dismiss and four motions for summary judgment because of Plaintiffs' over-pleading. Defendants had to defend ten depositions and respond to thirty requests for written discovery. To protect their own rights, Defendants had to depose witnesses, serve no less than seventy requests for written discovery, and review over a million pages of document production.

Ultimately, after seven years of litigation and three orders from this Court dismissing Plaintiffs' legally flawed claims against non-liable parties, Plaintiffs were left with just three claims against only four defendants. ECF 773 (Pls.' Fifth Am. Compl.). The remaining claims all depended on Plaintiffs successfully proving the required elements under the Texas Uniform Fraudulent Transfers Act ("TUFTA"), as their claims of alter ego and punitive damages hinged on a finding of liability under TUFTA.

With just a fraction of their original case remaining, Plaintiffs still failed to put on legally competent evidence of multiple required elements. *See* ECF 1035; ECF 1039; ECF 1041. Plaintiffs instead tried to rely on impermissible implications based on attorney-client communications and near-constant misrepresentations of law and fact. *See* ECF 1048. Their

conduct during trial was so egregious that the Court invited Defendants to file a motion for sanctions against Plaintiffs, *id.*, which is still pending before the Court.

Plaintiffs' impermissible tactics did not sway the jury. Instead, after merely a few hours of deliberation, the jury returned a unanimous verdict for Defendants on each of the questions it answered. ECF 1044. And the Court dismissed Plaintiffs' claims with prejudice, granting a take-nothing judgment in favor of Defendants after seven years of litigation. ECF 1069.

Defending against Plaintiffs' fatally flawed claims required tens of thousands of hours over the better part of a decade. Unsurprisingly, Defendants incurred millions of dollars in legal fees and expenses.

As such, and within 14 days of entry of the Court's final judgment, Defendants put Plaintiffs on notice that they were seeking attorneys' fees and provided a fair estimation as is allowed under Federal Rule of Civil Procedure 54(d)(2)(B)(iii).[1] *See* ECF 1070. The Court denied Defendants' request without prejudice, ordering that they refile their motion with additional evidence to substantiate their claim. ECF 1090.

Defendants have attached that additional evidence to this refiled motion to support their request for $5,850,293.25 in attorneys' fees incurred in the trial court. Ex. 1, Declaration of Scott A. Keller in Support of Defendants' Refiled Motion for Attorneys' Fees and Costs ("Keller Dec.") ¶ 10; Ex. 2, Declaration of Don Swaim in Support of Defendants' Motion for Attorneys' Fees and Costs ("Swaim Dec.") ¶ 16; Ex. 3, Declaration of Stephen A. Khoury in Support of Defendants' Motion for Attorneys' Fees and Costs ("Khoury Dec.") ¶ 8; Ex. 4, Declaration of

---

[1] *See also* Advisory Committee Notes to 1993 Amendment to Fed. R. Civ. P. 54 ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).").

Brian K. Norman ("Norman Dec.") ¶ 8. Additionally, Defendants request that the Court grant them a conditional award of $500,000 for fees contingent on a successful appeal to the U.S. Court of Appeals for the Fifth Circuit.[2] *See* Ex. 1, Keller Dec. ¶ 11; *see also* Ex. 3, Khoury Dec. ¶ 30; Ex. 4, Norman Dec. ¶ 23.

## ANALYSIS

TUFTA states that the Court "may award costs and reasonable attorney's fees as are equitable and just." TEX. BUS. & COMM. CODE § 24.013. This gives the trial court "sound discretion to award attorney's fees based on the evidence the trial court heard." *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 392 (5th Cir. 2017) (quoting *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App.—Dallas 2007, no pet.)). The Court's discretion is limited only in that "any fees awarded must be reasonable and necessary, and must also be equitable and just." *Id.* (internal quotation marks and citations omitted).

### I.    Defendants' fee request is reasonable and necessary.

The Fifth Circuit and Texas courts "generally use the lodestar method for calculating reasonable attorney's fees." *Thomas v. Hughes*, No. SA-16-CV-00951, 2020 WL 3425118, at *3 (W.D. Tex. 2020) (citations omitted). Under the lodestar method, the "lodestar" is first calculated by multiplying the number of hours expended by the hourly rates for participating lawyers. *Id.* Defendants seek $5,850,293.25 in attorneys' fees, which is substantially less than the amount of fees incurred by Defendants. Defendants calculated this amount by multiplying the estimated recoverable hours worked by their attorneys by the hourly fees charged to Defendants.

---

[2] Defendants expressly reserve the right to ask the Court for another award of fees in the unlikely event that Plaintiffs attempt to take this case to the U.S. Supreme Court. Given that there is no issue of federal law still pending in this case, such an attempt would be a complete waste of resources and undoubtedly unsuccessful.

4

Then, the Court determines whether this amount should be adjusted depending on additional factors. *Id.* The eight factors identified by the Texas Supreme Court as relevant to determining the reasonableness of a fee include:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

2. the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Defendants are not seeking any upward adjustment of their lodestar calculation. In fact, their request is a significant discount from the actual costs incurred to defend against Plaintiffs' claims. And their discounted request is entirely consistent with the *Arthur Andersen* factors. Factors 1, 3, 4, and 7 show that Defendants' request is "reasonable and necessary" without any further adjustment from the Court. Factors 2, 5, 6, and 8 are not particularly pertinent to this case and do not suggest the Court should adjust Defendants' request.

<u>Factor 1</u>: The time and labor involved in this case was particularly intensive, especially owing to Plaintiffs' over-pleading. The sheer breadth of the case contributed to its difficulty. As mentioned, this case began seven years ago with seven claims against twenty-six different defendants. The claims were brought in federal court first under the auspices of a baseless RICO

claim. ECF 1. Then, the claims continued in federal court under knowingly frivolous claims of diversity jurisdiction. ECF 712. Years of litigation were expensed on fighting over jurisdiction alone because of Plaintiffs' forum shopping.

Additionally, discovery lasted years and was particularly contentious. For example, Defendants defended ten depositions and took two depositions—one of which the Court agreed was a waste of Defendants' resources and granted seven additional hours to depose Plaintiff David Clapper. ECF 626.

Plaintiffs attempted to bury Defendants in baseless claims and unwarranted motions from the start of the litigation to trial. The record includes thirty-six dispositive motions, each of which required substantial time and effort to brief and argue. The Court ultimately dismissed all but four Defendants and three interrelated claims. The Court's record includes over 1,000 entries from motions and orders over seven years.

For trial, Plaintiffs' goal was to admit as much flagrantly inadmissible and unfairly prejudicial evidence as possible. ECF 1048. Plaintiffs disclosed 699 exhibits, 63 witnesses, and 10 depositions that they supposedly planned to use during 24 allotted trial hours. This forced Defendants to entertain 699 exhibits, 63 witnesses, and 10 depositions. Defendants objected and counter-designated when necessary and prepared for all exhibits, witnesses, and depositions. *See id*. In the end, Plaintiffs admitted only a tiny fraction of the exhibits, witnesses, and depositions. *See id*. Plaintiffs' conduct during trial caused Defendants to incur additional and unnecessary expenses to slow Plaintiffs' constant misstatements of fact and law and improper questioning of witnesses. Plaintiffs' conduct was so reprehensible that the Court invited Defendants to file a motion for sanctions. ECF 1048.

Factor 3: Defendants' attorneys charged fees that are customary for similar legal services in Dallas, Texas. *See* Declarations submitted herewith.

Factor 4: The amount involved and the results obtained in this case provide an especially stark result. Plaintiffs sought to recover over $60 million in actual damages and another $120 million in punitive damages. Trial Tr. 644:18–20. Plaintiffs recovered nothing based on a unanimous verdict against them.

Factor 7: Defendants' attorneys are highly skilled and experienced in high-stakes litigation like the instant case. Lawyers who have worked on this case include experienced senior partners, junior lawyers, and legal assistants as appropriate to the task. *See* Declarations submitted herewith.

Defendants' request is reasonable given the duration and complexity of the case and necessary given the burdens Plaintiffs imposed on Defendants by this completely unsuccessful lawsuit.

## II.     Defendants' fee request is equitable and just.

"Whether it is equitable and just to award attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case." *Janvey v. Romero*, 2015 WL 11017950, at *2 (N.D. Tex. Sept. 22, 2015) (cleaned up). The Fifth Circuit has enumerated four factors as "relevant to determining whether a fee award is 'equitable and just' under TUFTA." *Janvey*, 856 F.3d at 392. These include: (1) whether the case involved egregious conduct, (2) whether an award of fees accomplishes the goals of TUFTA, (3) the evidence heard by the trial court, and (4) "evidence of bad faith, vexation, wantonness, oppression, or harassment relating to the filing or the maintenance of this action." *Id.* at 392–93 (internal

7

quotation marks and citations omitted). All four of those factors support Defendants' request in this case.

Factor 1: This first factor focuses on whether the parties acted egregiously in their conduct leading up to the litigation. Plaintiffs are sophisticated real estate investors who chose with whom they wanted to do business. Plaintiffs' own witness proved that ART transferred the properties to "streamlin[e] the organizational representation of the companies." Trial Tr. 946:9–12. Defendants' unrebutted expert witness proved that Defendants' business practices were customary in the real estate industry. Trial Tr. 2984:8–2987:24. And yet, in the face of those customary and normal business practices, Plaintiffs took the egregious step of suing twenty-six defendants over seven different claims.

Factor 2: Awarding attorneys' fees in this case would also help accomplish the goals of TUFTA. In *In re Edwards*, the court noted that "it would be an injustice to force creditors to pay for the right to be treated equally under the law." 537 B.R. 797, 806 (Bankr. S.D. Tex. 2015). Similarly, here, it would be an injustice to force Defendants to pay for the right to conduct business in the normal and customary way of the real-estate industry. Defendants should not be penalized for standard business practices, especially when Plaintiffs failed to prove any single claim.

Factor 3: After a three-week trial, the jury returned a take-nothing verdict in favor of Defendants, ECF 1044, and the Court entered final judgment based on that verdict, ECF 1069. Defendants' decisive victory underscores the deficiency of the evidence Plaintiffs presented at trial. For example, Plaintiffs never offered competent evidence of the value of the properties that they claim were fraudulently transferred. And Plaintiffs never rebutted Defendants' expert

8

testimony that Defendants' practices had legitimate business purposes and were standard procedures in the real estate industry.

Factor 4: Finally, Plaintiffs' filing and maintenance of this action has been the very definition of "bad faith, vexation, wantonness, oppression, or harassment." Their conduct was so outrageous that the Court invited Defendants to file a motion for sanctions against them. *See* ECF 1048. That motion is still pending, and it was only the culmination of seven years of bad conduct. The fact that the suit began with twenty-six defendants and ended with four shows Plaintiffs' disregard for the time and cost of litigation. *See* ECF 1048; ECF 1067 (both of which are incorporated herein by reference).

Here, all four factors show that awarding Defendants attorneys' fees and costs would be equitable and just.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion for Attorneys' Fees in the amount of $5,850,293.25 with another $500,000 contingent on a successful appeal to the Fifth Circuit Court of Appeals.

Respectfully submitted,

*/s/ Gregory Shamoun*
**GREGORY SHAMOUN**
State Bar No. 18089650
Email: g@snlegal.com
**BRIAN K. NORMAN**
State Bar No. 00797161
Email: bkn@snlegal.com
**J. BLAIR NORRIS**
State Bar No. 24014515
Email: bn@snlegal.com
**SHAMOUN & NORMAN, LLP**
1800 Valley View Lane, Suite 200
Farmers Branch, Texas 75234
Telephone: (214) 987-1745
Facsimile: (214) 521-9033
**ATTORNEYS FOR DEFENDANT BRADFORD PHILLIPS AS EXECUTOR OF THE ESTATE OF GENE E. PHILLIPS**


*/s/ Stephen Khoury*
**STEPHEN A. KHOURY**
Texas Bar No. 11377500
Email: sakhoury@kelsoe-law.com
**RYAN T. SEAY**
Texas Bar No. 24098950
Email: rseay@kelsoe-law.com
**KELSOE KHOURY ROGERS CAUGHFIELD & CLARK**
5323 Spring Valley Road, Suite 350
Dallas, Texas 75254
Telephone: (972) 661-2227
Facsimile: (972) 233-4971
**ATTORNEY FOR DEFENDANTS AMERICAN REALTY INVESTORS, INC. & EQK HOLDINGS, INC.**

/s/ Don Swaim
**G. DON SWAIM**
Texas Bar No. 19545200
Email: dswaim@cunninghamswaim.com
**CUNNINGHAM SWAIM, LLP**
4015 Main Street, Suite 200
Dallas, Texas 75226
Telephone: (214) 646-1495
**ATTORNEYS FOR DEFENDANT AMERICAN REALTY TRUST, INC.**


/s/ Scott A. Keller
**SCOTT A. KELLER**
Texas Bar No. 24062822
scott@lehotskykeller.com

**TODD DISHER**
Texas Bar No. 24081854
todd@lehotskykeller.com

LEHOTSKY KELLER L.L.P.
919 Congress Ave., Ste. 1100
Austin, TX 78701
T: (512) 693-8350
F: (833) 233-2202
**ATTORNEYS FOR DEFENDANTS**


## CERTIFICATE OF SERVICE

This document was served on counsel for the plaintiffs on September 27, 2021, using the Court's CM/ECF file and service system.

/s/ J. Blair Norris
J. BLAIR NORRIS