UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID M. CLAPPER et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:14-cv-2970-x |
| AMERICAN REALTY INVESTORS, | § | |
| INC. et al., | § | |
| | § | |
| *Defendants*. | § | |

## **MEMORANDUM OPINION AND ORDER**

David Clapper, Atlantic Midwest, LLC, and Atlantic XIII, LLC (collectively, "Plaintiffs") sued American Realty Investors, Inc.; American Realty Trust, Inc.; EQK Holdings, Inc.; and Bradford Phillips (collectively, "Defendants"), alleging violations of the Texas Uniform Fraudulent Transfers Act ("TUFTA").  A jury found that Defendants did not violate TUFTA.  Because Defendants prevailed, the Court Clerk taxed Defendants' costs against Plaintiffs.  Plaintiffs now move to re-tax costs.  [Doc. 1080].  Defendants move for attorney fees.  [Doc. 1093].  And Defendants move for sanctions.  [Doc. 1048].  For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion to re-tax costs.  The Court also **GRANTS IN PART AND DENIES IN PART** Defendants' motion for attorney fees.  The Court **DENIES** Defendants' motion for sanctions.  The Court **ORDERS** Plaintiffs to pay Defendants $2,569,940.06 in attorney fees and $71,925.60 in costs.[1]

---

[1] Because the Court has previously recounted the factual background of this case, it omits that background here.  *E.g.*, Doc. 725 at 2.

1

## I. Legal Standard

"Once [a] district court concludes that a party is entitled to attorneys' fees, it must utilize the lodestar method to determine the amount to be awarded."[2]  The lodestar method requires the Court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the 'lodestar.'"[3]  After arriving at the lodestar, the Court may adjust that number "upward or downward, depending on the circumstances of the case."[4]

## II. Analysis

The Court considers (A) attorney fees, (B) costs, and (C) sanctions.

### A. Attorney Fees

Defendants seek the following attorney fees, sorted by firm:

Cunningham Swaim, LLP (total of $163,016):
- Don Swaim billed 349.4 hours at an hourly rate of $400.
- Alex Whitman billed 39 hours at an hourly rate of $300.
- Bryan David billed 10.6 hours at an hourly rate of $300.
- Jonathan Hembree billed 9.5 hours at an hourly rate of $240.
- Cindy Tijerina billed 38.1 hours at an hourly rate of $160.

Kelsoe, Khoury, Rogers & Clark, PC (total of $1,614,471 plus $100,000 for appeal):
- Stephen Khoury billed 2,963.75 hours at an hourly rate of $400.
- Ryan Seay billed 1,302.5 hours at an hourly rate of $350.
- Karen Houillion billed 76.5 hours at an hourly rate of $350.
- Lance Caughfield billed 64.85 hours at an hourly rate of $300.

Shamoun & Norman, LLP (total of $3,767,581.25 plus $100,000 for appeal):
- LeDouglas Johnson billed an uncalculated number of hours at an hourly rate of $200.

---

[2] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).

[3] *Id.* (cleaned up).

[4] *Id.*

- Trevor Young billed an uncalculated number of hours at an hourly rate of $275.
- Steve Bolner billed an uncalculated number of hours at an hourly rate of $275.
- Ashley Oakes billed an uncalculated number of hours at an hourly rate of $275.
- Meaghan Goldner billed an uncalculated number of hours at an hourly rate of $275.
- Jason Goldsmith billed an uncalculated number of hours at an hourly rate of $275.
- Bryan Tharp billed an uncalculated number of hours at an hourly rate of $275.
- Brandy Hoge billed an uncalculated number of hours at an hourly rate of $275.
- Lauren Griffin billed an uncalculated number of hours at an hourly rate of $275.
- Philip Simpkins billed an uncalculated number of hours at an hourly rate of $275.
- Jonathan Cunningham billed an uncalculated number of hours at an hourly rate of $300.
- Lucas Diaz billed an uncalculated number of hours at an hourly rate of $375.
- Dean Drew billed an uncalculated number of hours at an hourly rate of $375.
- Matthew Bone billed an uncalculated number of hours at an hourly rate of $375.
- James Peacock billed an uncalculated number of hours at an hourly rate of $375.
- Blake Glatstein billed an uncalculated number of hours at an hourly rate of $125 and later $375.
- Kayla Wells billed an uncalculated number of hours at an hourly rate of $275 and later $375.
- Blair Norris billed an uncalculated number of hours at an hourly rate of $275 and later $425.
- Kenneth Lambert billed an uncalculated number of hours at an hourly rate of $300 and later $425.
- Brian Norman billed an uncalculated number of hours at an hourly rate of $375 and later $575.
- Gregory Shamoun billed an uncalculated number of hours at an hourly rate of $375 and later $575.

Lehotsky Keller LLP (total of $300,000 plus $300,000 for appeal):
- Scott Keller billed an uncalculated number of hours at an undisclosed rate.
- Todd Disher billed an uncalculated number of hours at an undisclosed rate.
- Gabriela Gonzalez-Araiza billed an uncalculated number of hours at an undisclosed rate.

Adding those numbers together, the Court gets $5,845,068.25 plus $500,000

for any appeal.  Defendants come to a slightly different number, $5,850,293.25.  Even

though Defendants seek over six million dollars in attorney fees, they didn't bother showing their work on the lodestar calculation. Accordingly, the Court will not second guess its calculation, and it starts from that slightly lower number. Plaintiffs challenge that number in ten respects.

### 1. Availability of Attorney Fees under TUFTA

Courts have repeatedly held that, in TUFTA cases in federal court, "Texas law [] governs determination of [] attorneys' fees" because "Texas state law supplie[s] the rule of decision for the substantive dispute in [such] case[s]."[5] Under TUFTA, a court "may award costs and reasonable attorney's fees as are equitable and just."[6] Accordingly, the Court may award Defendants attorney fees.

Plaintiffs provide one counterargument. They note that "state procedural rules do not apply in federal diversity cases."[7] They then cite a Fifth Circuit case denying attorney fees under the Texas Declaratory Judgment Act ("TDJA") because that act "is procedural."[8] But that's inapposite. Unlike TUFTA, the TDJA "functions solely as a procedural mechanism for resolving substantive controversies which are already

---

[5] *Janvey v. Alguire*, No. 3:09-CV-0724-N, 2018 WL 11362595, at *1 (N.D. Tex. July 18, 2018) (Godbey, J.); *see also Janvey v. Romero*, No. 3:11-CV-0297-N, 2015 WL 11017950, at *1 (N.D. Tex. Sept. 22, 2015) (Godbey, J.); *Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-076-H, 2021 WL 1399296, at *8–9 (N.D. Tex. Feb. 1, 2021) (Hendrix, J.); *see also Thomas, Tr. of Performance Prod., Inc. v. Hughes*, No. 5:16-CV-00951, 2020 WL 10055655, at *3 (W.D. Tex. July 17, 2020).

[6] TEX. BUS. & COMM. CODE § 24.013.

[7] *Veroblue Farms USA, Inc. v. Wulf*, No. 3:19-CV-0764-X, 2021 WL 2414852, at *3 (N.D. Tex. Jun. 11, 2021) (Starr, J.).

[8] *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006).

within the jurisdiction of the courts."[9]   The Court cannot treat a substantive statute like a procedural statute.

## 2.  Equitable and Just

A court may award costs and attorney fees under TUFTA only when doing so is "equitable and just."[10]   To determine whether an award would be "equitable and just," courts consider "(1) whether the case involved egregious conduct; (2) whether an award of fees accomplishes the goals of TUFTA; (3) the evidence heard by the trial court; and (4) evidence of bad faith, vexation, wantonness, oppression, or harassment relating to the filing or the maintenance of this action[.]"[11]   The Court considers each in turn.

First, the lead up to this case involved somewhat egregious conduct by Plaintiffs.   Nearly a decade ago, Plaintiffs brought a baseless RICO claim against twenty-seven defendants.   The Court has long since dismissed that claim.   Yet Plaintiffs now admit that they brought that claim merely "due to the statute of limitation/statute of repose."[12]   Bringing a baseless claim is sufficiently egregious to support attorney fees for the prevailing Defendants.

---

[9] *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).

[10] TEX. BUS. & COMM. CODE § 24.013.

[11] *Janvey v. Dillon Gage, Inc.*, 856 F.3d 377, 385 (5th Cir. 2017) (cleaned up).

[12] Doc. 1095 at 14.

Second, "TUFTA pursues one overriding goal: to protect creditors from being defrauded or left without recourse due to the actions of unscrupulous debtors."[13] Attorney fees in this case neither further nor undermine that goal.

Third, Defendants secured a take-nothing judgment after a jury trial.  And that result isn't surprising because Plaintiffs failed to present the jury with evidence concerning the value of the properties that, they allege, were fraudulently transferred.

Fourth, Plaintiffs' bad-faith conduct permeated this suit.  For instance, at trial, after the Court ruled against Plaintiffs on a privilege issue, Plaintiffs' counsel continued to explore the issue with a witness, such that the Court had to admonish that "Plaintiffs' Counsel kept coming back to it, and that's not okay."[14]  Even so, Plaintiffs' counsel continued to approach the issue with witnesses.[15]  And when Plaintiffs' counsel again approached the issue in closing arguments, in contravention of the Court's jury charge, the Court again noted that Plaintiffs' counsel violated its prior ruling "where I said, it's off limits on the attorney-client privilege . . . . you walked right back into it, and I'm not happy."[16]

Further, Plaintiffs' counsel repeatedly testified for witnesses, forcing the Court to repeatedly reprimand Plaintiffs' counsel, saying, "You can't testify for him,"

---

[13] *Janvey*, 856 F.3d at 385 (cleaned up).

[14] Tr. Trans. 970:24–971:1.

[15] Tr. Trans. 993:12–13, 17–18; 1253:19–1254:4; 1254:23–1255:4.

[16] Tr. Trans. 3709:20–25.

"[e]vidence comes in through them, not through you," and "you can't testify.  You just can't do it."[17]

Oppressive conduct also typified Plaintiffs' case.  Although the Court gave each side 24 hours to present its case, Plaintiffs designated 699 exhibits and 63 witnesses for trial.  Unsurprisingly, only a small fraction of those documents and witnesses played any role in the trial.  Yet Defendants had to analyze and respond to each witness and exhibit.  That flagrant over-designation served only to oppress Defendants (and the Court).

Further, Plaintiffs' bad faith is evidenced by their handling of witnesses.  For instance, Plaintiffs subpoenaed an adverse witness, Louis Corna, who had health issues.  Plaintiffs repeatedly demanded that Corna travel to the courthouse and remain in the hallway outside the courtroom, but they never called him.  Eventually, the Court had to step in and order that Corna be released from the subpoena.

All that evidence shows the "bad faith, vexation, wantonness, oppression, or harassment relating to . . . [Plaintiffs'] maintenance of this action[.]"[18]  This factor strongly favors awarding attorney fees.

Overall, three factors favor awarding attorney fees, and one is neutral.  Accordingly, the Court awards Defendants attorney fees.

---

[17] Tr. Trans. 722:25; 817:19–818:5; 916:6–7; 970:17–18.

[18] *Janvey*, 856 F.3d at 385 (cleaned up).

### 3. Claim Segregation

A party seeking attorney fees must "segregate fees between claims for which [fees] are recoverable and claims for which they are not."[19]  "The party seeking fees bears the burden of properly segregating them."[20]  But a party need not segregate fees where "the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible."[21]

Plaintiffs contend that Defendants failed to segregate fees for an alter-ego claim.  Although Defendants assure the Court that they have properly segregated fees, their only support is one attorney's conclusory statement that "I made appropriate write-offs."[22]  That doesn't cut it.  And from the Court's own inspection, several entries involve that alter-ego theory.  On those arguments, the Court must exclude fees relating to the alter-ego theory.

But Plaintiffs don't identify which time entries they would like excluded. Accordingly, the Court applies a 1% reduction to the total time sought after other exclusions.

Next, Plaintiffs contend that the Court should exclude Shamoun & Norman, LLP's time after January 25, 2016.  The rationale is that that law firm represented only Gene Phillips (and his estate), and the only claim pending against Phillips as of

---

[19] *Transverse, L.L.C. v. Iowa Wireless Sers., L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021) (cleaned up).

[20] *Id.*

[21] *Id.* (cleaned up).

[22] Doc. 1094-4 at 4.  Defendants also contend that the alter-ego claim is sufficiently intertwined with the TUFTA claim, but they don't explain how.

that date was an alter-ego claim, for which there's no attorney-fee recovery.  But Defendants point out that the alter-ego claim was merely a way to hold Phillips derivatively liable for the TUFTA claim, and, consequently, Defendants cite examples of Shamoun & Norman, LLP attorneys litigating against the TUFTA claim.  On that evidence, the Court cannot categorically delete Shamoun & Norman, LLP's time after January 25, 2016.

### 4.  Hourly Rates

Defendants must show that the rates their attorneys charged are "reasonable hourly rates."[23]  For rates to be reasonable, they must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[24]  For senior attorneys, Defendants seek $375 to $600. Plaintiffs provide two objections, seeking to cap those rates at $400.

First, they note that a 2015 fact sheet from the Texas Bar suggests lower rates. The Court has previously declined to find that "survey persuasive" because "[t]he Fifth Circuit has acknowledged the 2015 Fact Sheet's age, provision of median rates only, and reflection of low response rates and has thus warned of the Fact Sheet's probative limitations."[25]  Accordingly, the Court declines to follow the Texas Bar's data.

---

[23] *SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-CV-0957-O, 2016 WL 8223206, at *7 (N.D. Tex. Nov. 21, 2016) (Ramirez, M.J.), *report and recommendation adopted*, No. 3:14-CV-0957-O, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017) (O'Connor, J.), *aff'd*, No. 17-10239, 2017 WL 11689639 (5th Cir. Nov. 7, 2017) (per curiam).

[24] *Id.* (cleaned up).

[25] *Salinas v. Sw. Bell Tel. LP*, No. 3:20-CV-1453-X, 2023 WL 1478504, at *3 (N.D. Tex. Feb. 2, 2023) (Starr, J.) (cleaned up).

Second, Plaintiffs note that the reasonable hourly rate "must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate."[26]  But here, Defendants provide only conclusory statements about the reasonableness of the hourly rates.  Because Defendants don't point to any evidence in the record justifying their rates, the Court reduces their rates.

The Court makes the following reductions.  During this case, Blair Norris's hourly rate increased from $275 to $425, Kenneth Lambert's hourly rate increased from $300 to $425, Brian Norman's hourly rate increased from $375 to $575, and Gregory Shamoun's hourly rate increased from $375 to $575.  The Court will hold each attorney to his or her prior hourly rate.

Next, Plaintiffs object to some of the lower hourly rates on two grounds.  First, Plaintiffs object to numerous hourly rates on the ground that some of those rates increased "inexplicably."[27]  But, as the Court has previously noted, increases in hourly rates are normal when an attorney increases in "experience" and when recent "rampant inflation" impacts attorney rates.[28]  In a case that's been pending almost a decade, such increases are unsurprising.

Second, Plaintiffs request that many inexperienced attorneys only be able to recoup for an hourly rate of $125.  That's unreasonable.  The Court has awarded

---

[26] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 383 (5th Cir. 2011) (cleaned up).

[27] Doc. 1095 at 19.

[28] *Salinas*, 2023 WL 1478504, at *2.

10

similar rates for paralegals, so a reasonable rate for young attorneys is significantly more than $125 per hour.[29]

### 5. Lehotsky Keller LLP's Hours

Plaintiffs assert that Lehotsky Keller LLP "was brought in on the eve of trial in April of 2021 to provide strategic advice and appellate work."[30]  Plaintiffs claim that Lehotsky Keller LLP's hours are excessive and duplicative because Defendants already had competent trial counsel at that point and didn't need to be preparing for an appeal ahead of time.  But the attorneys for Lehotsky Keller LLP made a significant impact as appellate counsel at trial.  They argued the motion for directed verdict and a very lengthy jury charge conference.  While the Court declined to direct a verdict on the argument that the plaintiffs failed to produce evidence of the value of the fraudulently transferred assets, that argument took center stage at closing and the jury agreed.

The issue for Lehotsky Keller LLP is not its impact on trial but the billable rates and hours worked.  The lodestar calculation is (almost) everything, but the Court cannot make a lodestar calculation without rates, hours, and what the hours were for.  Accordingly, the Court **DENIES WITHOUT PREJUDICE** the request for Lehotsky Keller LLP's fees and gives it 28 days to file a fee motion with the above information if it continues to seek fees.

---

[29] *Id.* at *3 (awarding $100 per hour for a paralegal's time).

[30] Doc. 1095 at 22.

### 6. Mock Trial

Plaintiffs object to fees incurred conducting a mock trial. But the Northern District of Texas has previously held that "it was reasonable for [an attorney] to participate in one formal moot court session."[31] The Court cannot conclude that a mock trial was unnecessary or excessive.

### 7. Sanctionable Conduct

Plaintiffs object to fees for time on motions "[w]here sanctions were awarded [against Defendants] or motions to compel were granted [against Defendants]."[32] Defendants provide no response. On the arguments before it, the Court agrees with Plaintiffs and reduces Defendants' fees.

Plaintiffs have provided a chart of those time entries.[33] In accordance with that chart, the Court reduces Stephen Koury's hours by 223.25, Ryan Seay's hours by 9.25, Kayla Wells's hours by 166.75, Blair Norris's hours by 16.75, and Gregory Shamoun's hours by 14.75.

### 8. Billing Judgment

A party seeking fees must show that it exercised billing judgment. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[34] But "bald assertions regarding the

---

[31] *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *13 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

[32] Doc. 1095 at 23.

[33] Doc. 1095-1 at 56.

[34] *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011) (Fitzwater, J.).

exercise of billing judgment are insufficient."[35]  Here, Plaintiffs note that Defendants' affidavits each claim to exercise billing judgment, but they don't provide specifics about the time excluded.  Defendants provide no response.

"The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."[36]  Accordingly, the Court will apply an across-the-board 25% reduction.

### 9. Block Billing

Block billing occurs when a lawyer specifies the "total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[37]  "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation."[38]  Block billing is a problem when it prevents a court from "accurately . . . determining whether the hours billed are reasonable."[39]

Plaintiffs complain that many—perhaps 60%—of Defendants' requested fees are blocked billed.  Defendants only respond by noting that at least some of the entries Plaintiffs cite aren't, in fact, block billed and by saying, sans explanation, that "the records are sufficiently detailed for the Court to determine reasonable hours."[40]  The Court disagrees.  At least some of the block-billed entries, those involving the alter-

---

[35] *Id.*

[36] *Hopwood v. Texas*, 236 F.3d 256, 279 n.88 (5th Cir. 2000) (cleaned up).

[37] *Barrow*, 2005 WL 6789456, at *3 (cleaned up).

[38] *Id.* at *4.

[39] *Id.*

[40] Doc. 1097 at 10 (cleaned up).

13

ego theory, make it such that the Court cannot determine the time spent on the related tasks.

The remedy for improper block billing is a percentage reduction on the lodestar number.[41]  The Court reduces the lodestar by 25% given the amount of block billing.

### 10. Vague Entries

"The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review."[42]  "Vague entries are those that are not illuminating as to the subject matter or vague as to precisely what was done."[43]  Plaintiffs point to a litany of vague time entries. Defendants have no response.

On the arguments before it, the Court agrees that the vague entries warrant reductions from each firm's total fees in the following amounts: (1) 10% from Shamoun & Norman, LLP; (2) 16% from Cunningham Swaim, LLP; and (3) 3% from Kelsoe, Khoury, Rogers & Clark, PC.

### 11. Excessive Attorneys

"[T]he court should exclude all time that is duplicative."[44]  "The time of two or three lawyers in a courtroom or conference when one would do may be [] discounted."[45]  Plaintiffs contend that the Court should apply a 10% reduction

---

[41] *See, e.g.*, *Paris v. Dall. Airmotive, Inc.*, No. 3:97-CV-0208-, 2004 WL 2100227, at *5, 11 (N.D. Tex. Sept. 21, 2004) (Lindsay, J.).

[42] *Barrow*, 2005 WL 6789456, at *11 (cleaned up).

[43] *Id.* (cleaned up).

[44] *Wherley v. Schellsmidt*, No. 3:12-CV-0242-D, 2014 WL 3513028, at *3 (N.D. Tex. July 16, 2014) (Fitzwater, C.J.).

[45] *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 535 (5th Cir. 1986) (cleaned up).

14

because "multiple attorneys appeared for Defendants at every deposition, hearing, and during trial."[46]   Defendants give no response.   On those arguments, the Court reduces Defendants' attorney fees by 10%.

## 12.  Failure to Plead Fees

Generally, a party seeking attorney fees must "specifically plead[] for attorney[] fees" in order "to put its adversaries on notice that attorneys' fees are at issue."[47]   Plaintiffs contend that Defendants "failed to specifically plead that they were seeking an award of attorneys' fees."[48]   But that's wrong.   Each Defendant specifically requested attorney fees.[49]

## 13.  Conditional Fees

"An award of attorneys' fees may include conditional fees for an appeal."[50]   "But there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees."[51]   Here, Defendants have only stated in conclusory fashion that their proposed $500,000 conditional award is reasonable and necessary for a successful appeal.   Without more, the Court cannot award conditional appellate fees.

---

[46] Doc. 1095 at 29.

[47] *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996).

[48] Doc. 1095 at 29 (emphasis omitted).

[49] Docs. 875 at 33; 876 at 33; 886 at 33.

[50] *Tow v. Speer*, No. H-11-3700, 2015 WL 1058080, at *21 (S.D. Tex. Mar. 10, 2015), *judgment entered*, No. H-11-3700, 2015 WL 1470173 (S.D. Tex. Mar. 31, 2015), *vacated on other grounds*, No. H-11-3700, 2015 WL 13424532 (S.D. Tex. Nov. 3, 2015).

[51] *Id.* (cleaned up).

## 14. Lodestar Conclusion

Here's the updated lodestar calculation.   Defendants initially sought $5,845,068.25 plus $500,000 for an appeal.  The Court will not award that $500,000 for an appeal.  Next, the Court reduces the fees for Norris's work by $331,627.94,[52] Lambert's work by $5,093.75,[53] Norman's work by $204,582.61,[54] and Shamoun's work by $203,121.74.[55]  The Court excludes, for now, all the fees of Lehotsky Keller LLP, totaling $300,000.  The Court reduces fees for Koury's work by $89,300,[56] Seay's work by $3,237.50,[57] Wells's work by $62,531.25,[58] Norris's work by $7,118.75,[59] and Shamoun's work by $8,481.25.[60]  Subtracting those numbers from each attorney's law firm's total fee request, the Court gets the following new totals: (1) $2,895,023.96 for

---

[52] Defendants seek $939,612.50 for Blair Norris.  Because Defendants don't tell the Court how many hours Norris worked at each rate, the Court assumes a rate of $425.  In that scenario, Norris worked 2,210.85294 hours.  Multiplying that number times $275, the Court gets $607,984.56.  That's a $331,627.94 reduction.

[53] Defendants seek $17,318.75 for Kenneth Lambert.  Because Defendants don't tell the Court how many hours Lambert worked at each rate, the Court assumes a rate of $425. In that scenario, Lambert worked 40.75 hours.  Multiplying that number times $300, the Court gets $12,225.  That amounts to a $5,093.75 reduction.

[54] Defendants seek $588,175 for Brian Norman.  Because Defendants don't tell the Court how many hours Norman worked at each rate, the Court assumes a rate of $575. In that scenario, Norman worked 1,022.91 hours.  Multiplying that number times $375, the Court gets $383,592.39.  That amounts to a $204,582.61 reduction.

[55] Defendants seek $583,975 for Gregory Shamoun.  Because Defendants don't tell the Court how many hours Shamoun worked at each rate, the Court assumes a rate of $575.  In that scenario, Shamoun worked 1,015.61 hours.  Multiplying that number times $375, the Court gets $380,853.26. That amounts to a $203,121.74 reduction.

[56] That's $400 times 223.25 hours.

[57] That's $350 times 9.25 hours.

[58] That's $375 times 166.75 hours.

[59] That's $425 times 16.75 hours.

[60] That's $575 times 14.75 hours.

Shamoun & Norman LLP;[61] and (2) $1,521,933.50 for Kelsoe, Khoury, Rogers & Clark, PC.[62]

On top of that, the Court applies a 25% lodestar reduction for block billing, a 1% reduction for failure to segregate, and a 10% reduction for multiple attorneys. That's a 36% reduction in total. The Court further reduces each firm's total fees for vague entries as detailed above, resulting in the following total reduction percentages and total amounts:

- Shamoun & Norman, LLP
  - Reduction: 10% for vagueness plus 36% total reduction
  - Total: $1,563,312.94
- Cunningham Swaim, LLP
  - Reduction: 16% for vagueness plus 36% total reduction
  - Total: $78,247.68
- Kelsoe, Khoury, Rogers & Clark, PC
  - Reduction: 3% for vagueness plus 36% total reduction
  - Total: $928,379.44

That amounts to a total of $2,569,940.06 in attorney fees.

### B. Costs

"Costs . . . should be allowed to the prevailing party," and "[t]he clerk may tax costs on 14 days' notice."[63] There's "a strong presumption that the prevailing party will be awarded costs," and a court may "reduce a prevailing party's request for cost" only after "first articulating some good reason for doing so."[64] Here, the Court Clerk taxed costs of $107,740.10. Plaintiffs raise five objections to those costs.

---

[61] That's $3,767,581.25 minus $338,746.69 (Norris), $5,093.75 (Lambert), $204,582.61 (Norman), $211,602.99 (Shamoun), and $62,531.25 (Wells).

[62] That's $1,614,471 minus $89,300 (Koury) and $3,237.50 (Seay).

[63] FED. R. CIV. P. 54(d)(1).

[64] *Pacheco v. Mineta*, 448 F.3d 783, 793–94 (5th Cir. 2006) (cleaned up).

First, Plaintiffs note that some district courts have "refused to award costs . . . [when] the case involved close questions of law and [] the Court found that [the losing party] brought suit in good faith."[65]   Even assuming that were the test, Plaintiffs flunk the first prong.  The case didn't turn on close questions of law.  To prove liability, Plaintiffs needed to provide "[p]roof that the[] assets [at issue] were transferred and an assessment of their value."[66]   Those are factual questions—not legal questions. And although Plaintiffs claim to list four disputed issues of law, they don't assert— let alone show—that any of those issues was particularly close.

Second, Plaintiffs note the Fifth Circuit's statement that, in other circuits, courts have considered "the losing party's limited financial resources" in assessing costs.[67]   Because "Plaintiffs have limited financial resources in comparison to Defendants' enormous financial resources," Plaintiffs argue, the Court shouldn't shift costs to them.[68]   To begin, the Fifth Circuit expressly caveated its citation to out-of-circuit authority, saying "[w]e do not decide whether any of [the enumerated reasons to deny costs] is a sufficient reason to deny costs."[69]   But even setting that aside, the Fifth Circuit has now made clear that "reducing or eliminating a prevailing party's cost award based on its wealth—either relative or absolute—is impermissible as a

---

[65] *Moody Nat. Bank of Galveston v. GE Life & Annuity Assur. Co.*, 423 F. Supp. 2d 651, 652 (S.D. Tex. 2003).

[66] *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009).

[67] *Pacheco*, 448 F.3d at 794.

[68] Doc. 1080 at 3.

[69] *Pacheco*, 448 F.3d at 794 n.18.

matter of law."[70]  And it's "reversible error for [a] district court to reduce the cost award based on a finding of 'limited resources'" so long as the losing-party makes at least "in the neighborhood of $100,000 per year."[71]  Accordingly, the Court cannot reduce Defendants' costs based on the financial resources of either party.

Third, Plaintiffs assert that it would be inequitable for Defendants to recover costs because Defendants' own "discovery tactics unnecessarily delayed this case."[72] But Plaintiffs don't connect Defendants' discovery conduct with any specific costs they claim are excessive.  Accordingly, that undeveloped argument can't rebut the presumption of costs for the prevailing party.

Fourth, Plaintiffs challenge the costs Defendants incurred in making copies, claiming that Defendants "failed to demonstrate that any of the copying expenses, with the exception of selected trial exhibits, were necessary for trial preparation rather than for the convenience of their attorneys."[73]  "[R]eproductions necessarily obtained for use in the case are included within taxable costs, provided that the prevailing party demonstrates that necessity."[74]  But a losing party "should not be held responsible for multiple copies of documents, attorney correspondence, or any of

---

[70] *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 320 (5th Cir. 2013).

[71] *Id.*

[72] Doc. 1080 at 4.

[73] *Id.* at 8.

[74] *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991) (citation omitted).

the other multitude of papers that may pass through a law firm's xerox machines."[75] And usually an "itemized breakdown" helps sort the wheat from the chaff.[76]

Here, Defendants have provided a list of time-stamped print jobs.[77]  But that list doesn't identify the litigation task associated with each print job.  While it's true that a prevailing party need not "identify every xerox copy made for use in the course of legal proceedings," it still needs to make "some demonstration that reproduction costs necessarily result from that litigation."[78]  Because Defendants' list isn't itemized, the Court has no way of ascertaining the necessity of the printed documents for this litigation.  Accordingly, the Court cannot tax the costs of those copies, and it reduces the taxed costs by $35,814.50 (the number Defendants seek for their copies).

Fifth, Plaintiffs "object to the Clerk's taxing of costs related to . . . Mr. Clapper's deposition . . . and Mr. Frazee's deposition."[79]  "[P]revailing parties are entitled to recover the costs of original depositions and copies . . . provided they were necessarily obtained for use in the case."[80]  A deposition transcript is necessarily obtained where it "could reasonably be expected to be used for trial preparation."[81]  Here, the depositions at issue involved the Plaintiff and the Plaintiff's sole expert witness—two key witnesses.  Accordingly, Defendants could reasonably expect that those two

---

[75] *Id.*

[76] *Id.*

[77] Doc. 1073 at 24–170.

[78] *Fogleman*, 920 F.2d at 286.

[79] Doc. 1080 at 8.

[80] *Fogleman*, 920 F.2d at 285 (cleaned up).

[81] *Id.*

depositions would be necessary for trial preparation.  The Court will not reduce those costs.

Plaintiffs also complain about the costs of expedited trial transcripts, saying "the expedited transcripts were for the convenience of Defendants' attorneys; they were not necessary for use in the case."[82]  "[T]he extra cost of obtaining a trial transcript on an expedited basis is not taxable unless prior court approval of expedition has been obtained or the special character of the litigation necessitates expedited receipt of the transcript."[83]  Expedited transcripts cannot be taxed if they were "merely for the convenience of one party's counsel."[84]  The Court concludes that the expedited transcript was necessary in this case.  During the trial, the Court repeatedly needed the parties to reference page/line designations on the transcript for reasons related to impeachment or refreshing the recollection.[85]

Accordingly, the Court reduces the Clerk's award of costs to $71,925.60.

## C. Sanctions

Although the Court finds that Plaintiffs' conduct was sufficiently oppressive and in bad faith to warrant attorney fees under TUFTA, the Court concludes that over $2 million in attorney fees constitute a sufficient deterrent to Plaintiffs.  No

---

[82] Doc. 1080 at 10.

[83] *Fogleman*, 920 F.2d at 286.

[84] *Id.*

[85] *See, e.g.*, Tr. Trans. at 1718:5–7.

sanction is necessary to deter Plaintiffs or their counsel, so the Court will not award sanctions.[86]  The Court **DENIES** Defendants' motion for sanctions.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion to re-tax costs.  The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for attorney fees.  The Court **DENIES** Defendants' motion for sanctions.  The Court **ORDERS** Plaintiffs to pay Defendants $2,569,940.06 in attorney fees and $71,925.60 in costs.

**IT IS SO ORDERED** this 30th day of August, 2023.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[86] *See, e.g.*, *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150 (5th Cir. 1988) (recognizing that sanctions are "meant to deter attorneys" and that a court can only impose "the least severe sanction adequate to serve th[at] purpose" (cleaned up) (emphasis omitted)).